IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § | | |
| Plaintiff, § § | | |
| v. § | Case No. 03:09-CV-298-N | |
| § | | |
| STANFORD INTERNATIONAL BANK, LTD., § ET AL., § § | | |
| Defendants. § | | |

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS § COURT-APPOINTED RECEIVER FOR THE § STANFORD INTERNATIONAL BANK, LTD., § ET AL., § § | | |
| Plaintiff, § § | Case No. 03:09-CV-724-N | |
| v. § § | | |
| JAMES R. ALGUIRE, ET AL., § § | | |
| Relief Defendants. § | | |

**RECEIVER'S RESPONSE TO**

**PLAINTIFF'S EMERGENCY MOTION TO MODIFY RECEIVERSHIP ORDER
(CAUSE NO. 3:09-CV-298-N, DOC. NO. 613)**
*and*
**INVESTORS' EMERGENCY MOTION TO STAY DEADLINE TO ANSWER OR
OTHERWISE RESPOND TO RECEIVER'S CLAWBACK ACTION PENDING THE
COURT'S DETERMINATION OF THE SEC'S EMERGENCY MOTION TO MODIFY
THE RECEIVERSHIP ORDER (CAUSE NO. 3:09-CV-724-N, DOC. NO. 13)[1]**

---

[1] In the interests of judicial economy and receivership efficiency, the Receiver files this combined respond to these two motions. The Receiver also addresses arguments made in the Examiner's Response in Support of Plaintiff's Emergency Motion to Modify Receivership Order ("Examiner's Response," Cause No. 3:09-CV-298-N, Doc. 622) in this Response.

Receiver Ralph S. Janvey opposes Plaintiff's Emergency Motion to Modify Receivership Order ("SEC Motion"). This Court's orders clearly direct and authorize the Receiver to institute actions against all persons who received assets traceable to the Receivership Estate. Those orders operate to benefit all of the investors who were cheated, not just those lucky enough to have cashed-out their investments before the Ponzi scheme came crashing down. The SEC does not dispute that the investors against whom the Receiver has brought clawback claims received such Receivership assets. Rather, it asks this Court to strip the Receiver of his right to bring such claims solely because they are contrary to what the SEC claims is its ordinary practice. The end result of the position taken by the SEC (and the Examiner) would be to give an overwhelming preference to a group of investors based upon nothing more than the chance timing of when they redeemed their CDs.

Respectfully, the Receiver notes he does not work for the SEC. His charge is to gather assets that are properly part of the Receivership Estate in order to maximize the disbursement to *all* claimants, and he has determined that these clawback claims are necessary to achieve that objective. As a neutral party in this action who answers to the Court, the Receiver is not subject to the internal policies of the SEC (though he is certainly mindful of them and careful to consider them before taking action). Notably, none of the moving parties cites any case law for the proposition that the Receiver should be prohibited from carrying out his legal duties simply because the SEC or others disagree with what he is doing.[2]

---

[2] The Examiner's Response claims to incorporate Divo Milan Haddad and Singapore Puntamita Pte., Ltd.'s Motion to Dismiss Second Supplemental Complaint (Cause No. 3:09-CV-724-N, Doc. No. 10). That motion cites two cases which the relief defendants claim stand for the proposition that the receivership "exists only to facilitate the relief sought by the SEC." *Id*. at 16. They do not. They stand only for the proposition that a court of equity should not even appoint a receiver in the first place unless there already exists a separate right to equitable relief. *Kelleam v. Maryland Cas. Co. of Baltimore*, 312 U.S. 377, 381 (1941); *Kumar v. Kumar*, No. 1:07-CV-263, 2009 WL 902035,

The Receiver also opposes Investors' Emergency Motion to Stay Deadline to Answer Clawback Action Pending the Court's Determination of the SEC Motion ("Motion to Stay"). Because (1) the SEC Motion should be denied, (2) the SEC Motion has no impact on the Investors' need to respond to the already-filed Complaint, and (3) the Investors fail to show they will be subjected to hardship or inequity without the stay, the Motion to Stay should also be denied.

## I. ARGUMENT AND AUTHORITIES

A.     THE SEC MOTION SHOULD BE DENIED.

1.     **The Receiver is pursuing clawback claims pursuant to this Court's orders.**

The Receiver's pursuit of clawback claims is consistent with this Court's directives and with the Receiver's duty to maximize distributions to defrauded investors and other claimants. Amended Order Appointing Receiver ("Receivership Order") ¶¶ 5(g), (j) (Cause No. 3:09-CV-298-N, Doc. 157) (ordering the Receiver to "[p]reserve the Receivership Estate and minimize expenses in furtherance of maximum and timely distributions thereof to claimants"); *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995) (stating that the receiver's "only object is to maximize the value of the [estate assets] for the benefit of [the] investors and other creditors"). The Receivership Order specifically directs the Receiver to:

> Institute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to *persons* or entities *who received assets or records traceable to the Receivership Estate*.

Receivership Order ¶ 5(c) (emphasis added).

More recently, the Court invited the Receiver to "assert claims against individual investors . . . in a proceeding ancillary to the receivership action, together with claims for

---

at *11 (N.D. Miss. Mar. 31, 2009). Nothing in those cases even implies that, once appointed, a receiver is subordinate to any other party.

prejudgment attachment" by August 3, 2009. June 29, 2009 Order at 1, 2 (Cause No. 3:09-CV-298-N, Doc. 533).

The SEC — ignoring the Court's call in its June 29 Order that such claims be "tested" — now asks the Court to strip the Receiver's power to bring clawback claims on behalf of the Receivership Estate solely because the SEC claims it would not have chosen to pursue them. The Receiver has found no authority supporting the SEC's call for a restriction on the Receiver's ability to bring claims needed to marshal estate property. It would be highly unusual to grant the SEC's request, given the voluminous case law holding that a receiver on its own has standing to bring claims.[3] Even the Examiner, who supports the SEC Motion, describes it as "extraordinary," and likewise offers no case law to support the SEC's position. Examiner's Response at 1.

### 2.    The Court's Orders are the fair approach for the benefit of all investors.

The Court's Orders charge the Receiver with a duty — a duty that is based in fundamental equity and fairness — to pursue Receivership assets for the benefit of the thousands

---

[3] *E.g.*, *Wing v. Wharton*, No. 2:08-CV-00887, 2009 WL 1392679 (D. Utah May 15, 2009); *Wing v. Kendrick*, No. 2:08-CV-01002-DB, 2009 WL 1362383 (D. Utah May 14, 2009); *Wing v. Hammons*, No. 2:08-CV-00620, 2009 WL 1362389 (D. Utah May 14, 2009); *Warfield v. Alaniz*, 453 F. Supp. 2d 1118 (D. Ariz. 2006); *SEC v. Milan Capital Group, Inc.*, No. 00-CIV-108, 2000 WL 236374 (S.D.N.Y. Mar. 1, 2000); *SEC v. Ross*, 504 F.3d 1130 (9th Cir. 2007); *FTC v. J.K. Publications*, No. CV-99-44, 2009 WL 997421 (C.D. Cal. Apr. 13, 2009); *Reneker v. Offill*, No. 3:08-CV-1394, 2009 WL 804134, (N.D. Tex. Mar. 26, 2009); *SEC v. Lauer*, No. 03-80612-CIV, 2008 WL 4372896 (S.D. Fla. Sept. 24, 2008); *In re Wiand*, No. 8:05-CV-1856-T-27, 2008 WL 818504 (M.D. Fla. Mar. 26, 2008); *Hodgson v. Kottke Associates, LLC.*, No. 06-5040, 2007 WL 2234525 (E.D. Pa. Aug. 1, 2007); *In re Wiand*, No. 8:05-CV-1856-T-27, 2007 WL 963165 (M.D. Fla. Mar. 27, 2007); *Warfield v. Arpe*, No. 3:05-CV-1457, 2007 WL 549467 (N.D. Tex. Feb. 22, 2007); *Terry v. June*, 432 F. Supp. 2d 635 (W.D. Va. 2006); *Quilling v. Cristell*, No. Civ.A. 304CV252, 2006 WL 316981 (W.D.N.C. Feb. 9, 2006); *Quilling v. Grand Street Trust*, No. 3:04-CV-251, 2005 WL 1983879 (W.D.N.C. Aug. 12, 2005); *Marion v. Benistar, Ltd.*, No. Civ.A. 03-4700, 2005 WL 563698 (E.D. Pa. Mar. 10, 2005); *SEC v. Homa*, No. 99-C-6895, 2004 WL 725256 (N.D. Ill. Mar. 31, 2004); *Marwil v. Farah*, No. 1:03-CV-482, 2003 WL 23095657 (S.D. Ind. Dec. 11, 2003); *Wing ex rel. 4NExchange, L.L.C. v. Yager*, No. 103CV54, 2003 WL 23354487 (D. Utah Nov. 7, 2003); *Obermaier v. Arnett*, No. 2:02CV111, 2002 WL 31654535 (M.D. Fla. Nov. 20, 2002); *Scholes v. African Enterprise, Inc.*, 838 F. Supp. 349 (N.D. Ill. 1993); *SEC v. Watermark Fin. Svcs. Group, Inc.*, No. 08-CV-361, 2008 WL 2120779 (W.D.N.Y. May 16, 2008).

of investors who have, so far, suffered a 100% loss. Absent the Receiver's claims, an investor who redeemed millions of dollars in CDs just before the Receivership began could recover 100%, or more, of his initial investment – despite the absolute certainty that what he received was money stolen from other investors. As set out more fully in the Receiver's motion requesting a continuing freeze of assets subject to clawback claims, there is no legal authority for a Receiver to allow such an inequity to go unchallenged. To the contrary, the case law establishes that all persons who were deceived into parting with their money are to be treated equally according to law, and not preferentially according to mere chance. The Court's orders should not be modified in favor of a result that leaves victims' compensation only to those quick enough, or lucky enough, to receive a pay-off with stolen money before the Stanford fraud was revealed and the scheme collapsed.

### 3. The Receiver does not need the SEC's permission to bring clawback claims.

Contrary to its contention, there is nothing about the SEC's status as Plaintiff in this matter that compels the Receiver or the Court to defer to the SEC in deciding against whom clawback claims should be brought. SEC Motion at 3. The Receiver's pursuit of these clawback claims will have no impact on the SEC's ability to manage its case against the Stanford Defendants. While the SEC "is the government agency charged with the responsibility of enforcing the federal securities laws," SEC Motion at 3, the Receiver has a different duty; he is charged with the responsibility of marshaling the Receivership Estate and maximizing the eventual disbursements to all aggrieved claimants. Receivership Order ¶ 5(j).

Although the Receiver was originally appointed at the SEC's request, the Receiver works not for the SEC but for the Court. As a court-appointed receiver, he is an "officer of the court" who performs his duties "under the authority of the court." *In re San Vicente Med. Partners*

*Ltd.*, 962 F.2d 1402, 1406 (9th Cir. 1992); *also SEC v. Giachetto*, No. 00-Civ-2502, 2000 WL 943524, at *1 (S.D.N.Y. July 10, 2000); *see Booth v. Clark*, 58 U.S. 322, 331 (1854); *SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). He is "appointed on behalf and for the benefit of *all the parties having an interest* in the property, *not for the plaintiff or defendant alone*." *North American Broadcasting, LLC v. United States*, 306 Fed. Appx. 371, 373 (9th Cir. 2008) (emphasis added) (citing *Booth*, 58 U.S. at 331).

The Receiver therefore may not shrink from his duty to maximize the recovery of thousands of claimants because other parties hold contrary opinions as to what is best for the Receivership Estate. The Receiver in this case pursues these claims because he has a legal duty to do so, and the claims are fully supported by case law and principles of equity.

    **4.**    **The Receiver is better situated than the SEC to determine whether the claims are in the best interests of the receivership.**

The SEC, an independent regulatory agency of the federal government, is subject to public and political pressures that play a role in shaping government policies. Regardless of whether the SEC chooses not to make a practice of bringing clawback claims against investors that it believes played no culpable role in the underlying fraud, the Receiver's legal duties are not defined by these outside pressures. He answers only to this Court. It is with this Court's directives in mind that he has determined that the assertion of the claims at issue is necessary to ensure an equitable distribution to all victims of the Stanford fraud.

    **5.**    **The Receiver's clawback claims are supported by the law.**

The Receiver's ability to bring and prevail in the clawback claims at issue is supported by relevant case law as set forth in pleadings already on file with the Court. *See also SEC v. George*, 426 F.3d 786, 798-99 (6th Cir. 2005) (upholding order that investor relief defendants who played no alleged role in the Ponzi scheme disgorge payments made to them by

defendants); *Wing v. Harrison*, No. 2:03-CV-26, 2004 WL 966298, at *5 (D. Utah Apr. 29, 2004) (requiring investors to turn over all proceeds received, including initial investment, as fraudulent transfer).

The SEC's attempt to distinguish the supporting case law fails. The SEC reveals in its Motion that its own internal policies discourage pursuing clawback claims against "innocent" investors, so it is not surprising that there are few examples of cases discussing claims like those the Receiver seeks to bring.[4] But even the SEC acknowledges that receivers in SEC enforcement actions in the Northern District of Texas have successfully brought clawback claims against innocent investors, and have successfully clawed back an investor's principal investment. SEC Motion at 5 (citing *Mays v. Lombard*, No. 2:97-CV-1010-X, 1998 WL 386159 (N.D. Tex. July 2, 1998) (in which receiver successfully recovered excessive payments made to innocent investor); *Quilling v. 3D Marketing, LLC*, No. 3:06-CV-0293-L, 2007 WL 1058217 (N.D. Tex. Feb. 8, 2007) (in which receiver successfully clawed back investor's principal investment)).

Perhaps most telling is the SEC's attempt to distinguish *SEC v. George*. SEC Motion at 5-6. In that case the court upheld disgorgement orders entered against three investors, named as relief defendants, because "the money they received from the scheme came not from profits on their investments but from the investments of others." *George*, 426 F.3d at 798. The court further rejected the relief defendants' contention that the amount of their originally-invested principal should be subtracted from the funds to be disgorged. *Id.* at 799. The "mere coincidence" that these three investors were able to recover their principal "d[id] not entitle relief defendants to special treatment." *Id.* (citing *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331

---

[4] Typically, it is the SEC that institutes claims seeking to claw back estate property. But the Receiver is equally capable of bringing such claims on his own. *See* note 3, *supra*.

**RECEIVER'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION TO
MODIFY RECEIVERSHIP ORDER AND INVESTORS' EMERGENCY
MOTION TO STAY DEADLINE TO ANSWER RECEIVER'S CLAWBACK
ACTION PENDING DETERMINATION OF THE PLAINTIFF'S MOTION**     **PAGE 6**

(5th Cir. 2001) (noting that "the facts did not support a remedy that would elevate the [relief defendants'] claim above the other victims" even though the relief defendants *could trace* the funds they received to a segregated account holding only their investment)). The relief defendants were entitled only to the same pro rata share of the recoverable funds as the other investors. *Id*.

The SEC now claims in its Motion that the relief defendants in *George* were not truly innocent investors, and that is "why the Commission brought the claims." SEC Motion at 5 & n.8, 6 n.9. The SEC does not judicially distinguish the *George* opinion by identifying its own underlying reasons for pursuing the claims, which were not addressed by that court. Although various circumstances surrounding the *George* investors may have informed the SEC's decision to bring the action, those circumstances did not inform the court's decision to uphold the disgorgement. To the court, the guilt or innocence of the relief defendants was not relevant to whether the funds should have been returned. If the Sixth Circuit was even aware when it decided *George* of the fact that the SEC did not consider the investors "innocent," it clearly did not rely on that fact in making its decision, or even find it relevant enough to include in the opinion. *See* SEC Motion at 6 n.9 ("Unfortunately, the Court's opinion in *George* did not detail the reasons why the Commission brought action against the [investor] relief defendants.").

Finally, and perhaps most importantly, the SEC does not explain how it is legal or equitable to allow victims of the Stanford fraud to be compensated according to the rules of chance or luck, and for a preferential few hundred to be compensated disproportionately (as compared to tens of thousands) with funds which even the SEC must concede are nothing more than money stolen from other investors. For this proposition, neither the Examiner nor the SEC cites any case law in support. There is none.

6.     **The Receiver would not pursue any claim likely to harm the Estate.**

The Examiner asserts that the Receiver's clawback claims are ill-advised because, the Examiner believes, the Receiver will in some instances not be able to recover sufficient funds to cover the cost of pursuing the claims. Examiner's Response at 5-8. The Receiver takes very seriously the Court's directive that he "[p]reserve the Receivership Estate and *minimize expenses in furtherance of maximum . . . disbursement* thereof to claimants." Receivership Order ¶ 5(j) (emphasis added). In keeping with this directive, the Receiver would not bring any claim on behalf of the Receivership Estate that he does not believe is likely to result in some net benefit to the Estate. With the authority and access granted by this Court's orders, and the support of his professional advisors, the Receiver is clearly the party in the best position to thoughtfully and effectively make such determinations.

**B.     THE MOTION TO STAY SHOULD BE DENIED.**

Investors do not meet their burden of justifying the delay their stay would cause. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (describing movant's burden). A court's power to stay proceedings is incidental to its power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). Here, even if the Court were to grant the SEC Motion, the Receiver's action against the Investors would not be retroactively "un-filed" or automatically dismissed. There can be no dispute that the Receiver had the authority to file the First Supplemental Complaint, which named the Investors as relief defendants. The very purpose of the SEC Motion is to strip the Receiver of the authorization he has had since the outset of this Receivership, including the date he filed the Complaint, to file such actions. Even if the SEC Motion is granted, the Investors will need to respond to the

Complaint. Granting the Motion to Stay — which only seeks a delay of the deadline for the Investors to respond to the Complaint — would have little if any impact on the Court's or the parties' time and resources.

Additionally, the Fifth Circuit counsels that although district courts have broad discretion to stay proceedings, "[p]roper use of this authority 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Wedgeworth*, 706 F.2d at 545 (quoting *Landis*, 299 U.S. at 254-55). If there is "even a fair possibility that the stay . . . will work damage to some one else," the movant "must make out a clear case of hardship or inequity." *Landis*, 299 U.S. at 255. The indefinite stay the Investors seek would delay the Receiver's ability to marshal assets that are properly part of the Receivership Estate, and impair his ability to utilize those funds for the benefit of potentially tens of thousands of other aggrieved creditors. This in turn may lessen all creditors' eventual recoveries. On the other side of the balance, the Investors fail to demonstrate that responding to the Complaint while the Court considers the SEC Motion will result in "a clear case of hardship or inequity," especially when, as discussed above, they will ultimately have to do so even if the Court grants the SEC Motion.

## II. CONCLUSION

The law supports the Receiver's ability to bring claims against innocent investors in order to claw back both their principal investment and their profit. Certain investors' good fortune in having the fraudulently-procured funds in their accounts when the scheme unraveled does not warrant their special treatment to the detriment of tens of thousands of others. The Court should not strip the Receiver of his ability to bring claims needed to marshal estate property and ensure an equitable distribution to all of the victims.

**Receiver's Response to Plaintiff's Emergency Motion to
Modify Receivership Order and Investors' Emergency
Motion to Stay Deadline to Answer Receiver's Clawback
Action Pending Determination of the Plaintiff's Motion**                                                              **Page 9**

Dated:  July 30, 2009                             Respectfully submitted,

                                                                    BAKER BOTTS L.L.P.

                                                                    By: /s/ Kevin M. Sadler
                                                                         Kevin M. Sadler
                                                                         Texas Bar No. 17512450
                                                                         kevin.sadler@bakerbotts.com
                                                                         Robert I. Howell
                                                                         Texas Bar No. 10107300
                                                                         robert.howell@bakerbotts.com
                                                                         David T. Arlington
                                                                         Texas Bar No. 00790238
                                                                         david.arlington@bakerbotts.com
                                                                         1500 San Jacinto Center
                                                                         98 San Jacinto Blvd.
                                                                         Austin, Texas 78701-4039
                                                                         (512) 322-2500
                                                                         (512) 322-2501 (Facsimile)

                                                                         Timothy S. Durst
                                                                         Texas Bar No. 00786924
                                                                         tim.durst@bakerbotts.com
                                                                         2001 Ross Avenue
                                                                         Dallas, Texas 75201
                                                                         (214) 953-6500
                                                                         (214) 953-6503 (Facsimile)

                                                                         **ATTORNEYS FOR RECEIVER**
                                                                         **RALPH S. JANVEY**

## CERTIFICATE OF SERVICE

      On July 30, 2009, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served the Court-appointed Examiner John J. Little and all counsel and/or pro se parties of record electronically or by another means authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                                         /s/ Kevin M. Sadler
                                                                         Kevin M. Sadler