IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION


| | | |
|---|---|---|
| RALPH S. JANEY, IN HIS CAPACITY AS | ) | |
| COURT-APPOINTED RECEIVER FOR THE | ) | |
| STANFORD INTERNATIONAL BANK, LTD., | ) | |
| ET AL. | ) | Case No. 03:09-CV-0724-N |
| Plaintiff, | ) | |
| v. | ) | |
| JAMES R. ALGUIRE, ET AL. | ) | |
| Relief Defendants | ) | |

_____

ANSWER TO RECEIVER'S SUPPLEMENTAL COMPLAINT

AGAINST STANFORD FINANCIAL GROUP ADVISORS

Comes now the Defendant, David R. Lundquist, who is named as a Financial Advisor who allegedly received SIB CD Proceeds on page 4 of the Appendix in Support of Receiver's Supplemental Complaint Against Stanford Financial Group Advisors, representing himself pro se in this matter, and in answer to the Receiver's Complaint does state the following in response to said Complaint:

## MOTIONS

Comes now the Defendant and makes the following Motions:

1.  The Defendant moves that the Plaintiff's complaint be dismissed as to the Defendant , for failure to state a cause of action on which judgment can be rendered.

2.  The Defendant moves for a change of venue from  this Court to the United States District Court for the Middle District of North Carolina, where the Court would have in *rem* and in *personam* jurisdiction over the Defendant, and where the Defendant resides and worked for Stanford Trust Company.

3.  The Defendant moves that the Plaintiff's complaint be dismissed due to a lack of personal jurisdiction over the Defendant.

## ANSWER

Comes now the Defendant and states the following in answer to the allegations of the RECEIVER'S SUPPLEMENTAL COMPLAINT AGAINST STANFORD FINANCIAL GROUP ADVISORS:

## SUMMARY

1.  Defendant denies the allegations in paragraph 1 on page 1 of the Receiver's Supplemental Complaint.

2.  The Defendant denies the allegation made in paragraph 2 on page 1 of the Receiver's Supplemental Complaint.

3.   Defendant denies the allegations made in paragraph 3 on page 2 of the Receiver's Supplemental Complaint.

4.  Defendant denies the allegations made in paragraph 4 on page 2 of the Receiver's Supplemental Complaint.

5.  Defendant denies the allegations made in paragraph 5 on page 2 of the Receiver's Supplemental Complaint.

6.   Defendant denies the allegations made in paragraph 6 on page 3 of the Receiver's Supplemental Complaint.

7.  The Defendant denies the allegations made in paragraph 7 on page 3 of the Receiver's Supplemental Complaint.

**JURISDICTION & VENUE**

8.  The Defendant admits that this Court has jurisdiction over this action, but denies that this Court has *in rem* or *in personam* jurisdiction over the Defendant  and denies that venue is proper.

9.  The Defendant  denies that this Court has *in rem* or *in personam* jurisdiction over the Defendant.

10. The Defendant  admits only that the United States District Court for the Middle District of North Carolina would have in rem and in personam jurisdiction over the Defendant, which Court is one of the 26 United States district courts where the Receiver filed the original Complaint and Order Appointing the Receiver.  The Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining statements in Paragraph 10.

11. The Defendant denies the allegations made in paragraph 11 on page 4 of the Receiver's Supplemental Complaint.

12. The Defendant denies the allegations made in paragraph 12 on page 4 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

**THE FINANCIAL ADVISORS**

13.  The Defendant denies the allegations made in paragraph 13 on page 5 of the Receiver's Supplemental Complaint.

14. The Defendant denies the allegations made in paragraph 14 on page 5 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

**STATEMENT OF FACTS**

15. The Defendant is without sufficient knowledge or information to form a belief about the truth of the statements made by the Receiver in paragraph 15.

**I.        Stanford Defendant Operated a Fraudulent Ponzi Scheme**

16. The Defendant denies the allegations made in paragraph 16 on page 6 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

17. The Defendant denies the allegations made in paragraph 17 on page 6 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

18. The Defendant denies the allegations made in paragraph 18 on page 6 of the Receiver's Supplemental Complaint as it pertains to the Defendant.

19. The Defendant denies the allegations made in paragraph 19 on page 6 of the Receiver's Supplemental Complaint as it pertains to the Defendant.

20. The Defendant denies the allegations made in paragraph 20 on page 6 of the Receiver's Supplemental Complaint as it pertains to the Defendant.

21. The Defendant denies the allegations made in paragraph 21 on page 7 of the Receiver's Supplemental Complaint as it pertains to the Defendant.

22. Defendant denies the allegations made in paragraph 22 on page 7 of the Receiver's Supplemental Complaint as it pertains to the Defendant.

23. Defendant denies the allegations made in paragraph 23 on page 7 of the Receiver's Supplemental Complaint as it pertains to the Defendant.

24. Defendant denies the allegations made in paragraph 24 on page 7 of the Receiver's Supplemental Complaint as it pertains to the Defendant.

II.    **The Stanford Defendant Transferred CD Proceeds from the Fraudulent Ponzi Scheme to the Financial Advisors**

25. Defendant has no knowledge or information sufficient to form a belief about the truth of the statements in paragraph 25, but denies that they pertain to the Defendant or that the Defendant had any knowledge of or involvement in any of said alleged activities.

26. Defendant denies the allegations made in paragraph 26 on page 8 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

**REQUESTED RELIEF**

27. Defendant denies the allegations made in paragraph 27 on page 9 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

28. Defendant denies the allegations made in paragraph 28 on page 9 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

29. Defendant denies the allegations made in paragraph 29 on page 9 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

I.    **The Receiver is Entitled to Disgorgement of Assets from the Financial Advisors as Relief Defendants**

30.  Defendant denies the allegations made in paragraph 30 on page 10 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

31.  Defendant denies the allegations made in paragraph 31 on page 10 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

32.  Defendant denies the allegations made in paragraph 32 on page 11 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

33.  Defendant denies the allegations made in paragraph 33 on page 11 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

**II.      In the Alternative, the Receiver is Entitled to Disgorgement of Assets Fraudulently Transferred to the Financial Adviosrs**

34.  Defendant denies the allegations made in paragraph 34 on page 12 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

35.  Defendant denies the allegations made in paragraph 35 on page 12 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

36.  Defendant denies the allegations made in paragraph 36 on page 12 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

37.  Defendant denies the allegations made in paragraph 37 on page 13 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

38.  Defendant denies the allegations made in paragraph 38 on page 13 of the Receiver's Supplemental Complaint as they pertain to the Defendant.

## SUMMARY OF AFFIRMATIVE DEFENSES OF THE DEFENDANT

Comes now the Defendant and states the following Summary of his Affirmative Defenses:

1.   None of the assets allegedly paid to Defendant are or ever were properly part of the Receivership Estate and traceable to the Estate, were not monies stolen from investors by fraud, and therefore are not subject to be taken control of by the Receiver.

2.   The Defendant was not a Financial Advisor employed by Stanford Group Company, Stanford International Bank, Ltd. ("SIB" or "the Bank"), or Stanford Capital Management- collectively the "Stanford Defendants"- and therefore was not even an employee of any of the named parties to the Securities and Exchange Commission's lawsuit against said Stanford Defendants.  Instead, the Defendant was an employee of Stanford Trust Company with the corporate title of "Senior Fiduciary Officer" and managed and administered trust accounts for trust clients in the Greensboro, North Carolina Trust Office of Stanford Trust Company.

3.   The Defendant was not involved whatsoever in any sales or marketing of SIB CDs, custody of any SIB CDs, did not receive any SIB CD Proceeds or commissions from the sale of any SIB CDs, and therefore should not have been included in the listing of the Financial Advisors named in the Appendix in Support of Receiver's Supplemental Complaint.

4.   For said services as Senior Fiduciary Officer, the only monies ever paid the Defendant were received as payment for his legitimate services rendered as Senior Fiduciary Officer in the management and administration of the Trust accounts in the Greensboro, NC Trust Office,

(consisting of his salary and one forgivable loan received as an inducement to leave his prior employment and work for Stanford Trust Company), and  were paid to the Defendant from trust  fee income generated from the accounts in the Greensboro, NC Trust Office. Therefore, none of the monies paid Defendant came from or were in any way involved in the  alleged fraudulent scheme involving the sale of SIB CDs, are not traceable to the Receivership Estate, and may not be recovered by the Receiver.

5.   No assets of Stanford Trust Company which the Defendant was responsible for administering were invested in SIB CDs, but instead were all invested in traditional stocks, bonds and mutual funds, held in the custody of SEI in Pennsylvania, and had absolutely nothing to do with the SIB CDs that are alleged to be part of a fraudulent scheme involving SIB CD Proceeds deposited in Pershing and JP Morgan accounts in the name of or controlled by the Financial Advisors, as stated by the Receiver in paragraph 7., (c) of the complaint. Therefore, again the Defendant had no involvement with any of the SIB CD assets that were part of the alleged fraudulent scheme.

6.   SIB CD sales did not generate substantially all of the income of the Stanford Trust Company in Greensboro, NC for whom the Defendant worked, and where all revenue was instead generated from trust fees charged in accordance with its regularly adopted fee schedule. Therefore, none of the monies paid to the Defendant for his legitimate service to trust clients there had any linkage to SIB CD sales, were from a source completely independent of SIB CD sales, were linked instead to trust fee income for administrative services rendered, and therefore should not be subject to the reach of the Receiver recovering assets that were related to the alleged fraudulent scheme.

7.   Because Defendant was a "Senior Fiduciary Officer" and not a "Financial Advisor", the Defendant in his job function was not paid any SIB CD Proceeds or commissions from SIB CD

sales, and all monies paid to Defendant for his legitimate services came from trust fee income, and therefore the monies paid Defendant were substantially different than the SIB CD Proceeds and commission paid to Financial Advisors who were involved in CD sales. Therefore, as the monies paid to Defendant were entirely unrelated to any money of investors that was put into SIB CDs, and were not part of any alleged fraudulent scheme, the monies paid Defendant must be differentiated from any loans, commissions, bonuses or other payments which were paid to Financial Advisors who were involved in SIB CD sales.

8. By including the Defendant on the list in the Appendix to the Receiver's complaint, the Receiver has either intentionally or by mistake, grouped the Defendant in with Financial Advisors who were involved in SIB CD sales and received monies from said sales.

9. The Promissory Note Forgivable Loan that the Defendant had with Stanford Trust Company ( attached as "Exhibit 1" and incorporated by reference herein), does not constitute CD Proceeds as alleged by the Receiver, and therefore is not and never was part of the Receivership Estate, and cannot be recovered by the Receiver.  The Receiver cannot simply categorize these forgivable loan proceeds of the Defendant as CD Proceeds paid to Financial Advisors, wrongly categorize the Defendant  as a Financial Advisor who received CD Proceeds, and then expect to be authorized by this Court to recover these forgivable loan proceeds as CD Proceeds paid to Financial Advisors.  The Receiver must show that the Defendant was somehow involved in the sale of SIB CDs, received monies from their sale, and therefore was somehow involved in the alleged fraudulent scheme.  Without such a showing, the Receiver cannot recover anything from the Defendant.

10. The Receiver cannot recover the forgivable loan proceeds paid to Defendant by Stanford Trust Company on the basis stated in this Supplemental Complaint, but must instead sue the Defendant on the basis of the Promissory Note Forgivable Loan if he is to recover at all.

11. While the Receiver has chosen not to claim against the Defendant by a contract action on the Promissory Note, the Defendant had adequate affirmative defenses to any such action by the Receiver on the forgivable note as follows, which may explain why the Receiver is trying to recover on another basis:

    a.) Material breach of the contract by Stanford Trust Company due to the alleged fraud of the Stanford Defendants.

    b.) Fraud at the inception of the contract by the Stanford Defendants and their subsidiary Stanford Trust Company.

    c.) Promissory Estoppel in that the Defendant relied to his detriment on the promises made by Stanford Trust Company, suffered damages, and is entitled to keep the forgivable loan proceeds paid to him for the labor and services he performed as long as it was possible for him to do so, and as liquated damages for his lost income and subsequent unemployment as a direct result of the breach of the contract through no fault or action of his own.

    d.) The fact that nothing is yet due on the Promissory Note, as in the Promissory Note, at the top, item "(C) First Annual Payment Due Date", is blank, meaning that no first annual payment is yet due. With this being left blank, the entire note is null and void because it is impossible to determine any date on which any payment on the dote is due. Indeed, "1. Payment", states that the loan shall be payable to the Company commencing on the first payment dated indicated above in item "C". Because there is no first payment date indicated in item "C", by the very terms of the Promissory Note, the loan is not payable to Stanford Trust Company.

    e.) The forgivable loan to Defendant constituted a standard form of additional compensation in the industry commonly used as a recruitment tool, and

representatives of Stanford Trust Company told the Defendant that no payment would ever be expected on the note unless he was terminated for cause, the Defendant died, or the Defendant resigned.  Because none of these events has occurred, no payment is due Stanford Trust Company pursuant to the Note.

f.)  The alleged fraud committed by the Stanford Defendants and the subsequent action of the SEC putting Stanford into Receivership and shutting down all its affiliated companies, was an intervening event not bargained for, contemplated by, or provided for in the note by either party.  This totally unexpected event was totally beyond the control of either party to the Promissory Note and made performance of the terms bargained for in the note impossible for either Party to perform.  This event therefore nullified the Promissory Note, as the contract bargained for by the parties to the Note became impossible to perform.  This intervening event did not constitute a termination of the Defendant by Stanford Trust Company, and because the Defendant did not resign, and the Defendant is still alive, none of the contingencies that would trigger payment under the terms of the Note has occurred, so no payment is due.

g.)  The Receiver has no more rights than Stanford Trust Company as a party to the note, and because the note is unenforceable due to its breach by Stanford Trust Company, the Receiver can recover nothing under the terms of the note.

h.)  The Receiver, having chosen not to bring any action on the Promissory Note, cannot be allowed to misstate facts, and wrongly categorize the Defendant as a Financial Advisor and the forgivable loan proceeds as "CD Proceeds" in a blatant attempt to recover assets that are not properly part of the Receivership Estate.

**DEFENDANT'S SPECIFIC ARGUMENTS IN SUPPORT OF HIS ANSWERSTO THE RECEIVERS SUPPLEMENTAL COMPLAINT AGAINST STANFORD FINANCIAL GROUP ADVISORS:**

Comes now the Defendant and states the following in support of his answers to the Receiver's Supplemental Complaint Against Stanford Financial Group Advisors:

SUMMARY

1.  The Receiver states that the ultimate purpose of this Receivership is to make the "maximum disbursement to claimants".  Instead,  the Court must assess the full facts involved and resolve the competing complaints in accordance with the law.  Therefore, only assets that are properly a part of the Receivership Estate may be recovered by the Receiver for disbursement to claimants.  The Defendant asserts that in its zeal to maximize the pool of assets of the Receivership Estate, the Receiver has gone after some of the Defendant's assets that were never and are not part of the Receivership Estate.  None of the assets received by the Defendant in the form of salary and a forgivable loan are traceable to the Receivership Estate.  Rather these monies were paid to the Defendant for his services and labor in the management and administration of trust client accounts in the Stanford Trust Company Trust Office in Greensboro, NC and to induce the Defendant to come to work for Stanford Trust Company.  The Defendant's corporate title was "Senior Fiduciary Officer", not "Financial Advisor", and the

Defendant performed no services as a broker, and had no involvement in the marketing or sale of SIB CDs.   Therefore, none of the monies paid to the Defendant was money stolen from investors through fraud, but instead was ordinary salary and a forgivable loan paid for Defendant to come to work for Stanford Trust Company and perform services as "Senior Fiduciary Officer" in the Greensboro, NC Trust Office, and  said monies were therefore wholly unrelated to the alleged fraudulent Ponzi scheme by the Stanford Defendants.

2.   Stanford Trust Company in Greensboro, North Carolina generated its own income through fees and the Defendant as Senior Fiduciary Officer there had no involvement  in the SIB CD sales, serving as custodian, or otherwise.  While the income from the Trust Company operations in North Carolina were small in comparison to the income of the other Stanford Defendants generated by SIB CD sales, to the Defendants knowledge and belief,  it was sufficient to cover the salary and forgivable loan made to the Defendant, and any potential bonus payable to the Defendant(though no bonus was ever paid). Therefore, the Defendant received only a salary and the one forgivable loan, and was never paid any commissions, bonuses ,PARS , or any other payments as were paid to the Financial Advisors working for Stanford Group Company.  The activities of the Defendant in managing and administering trust client accounts in North Carolina had absolutely nothing to do with any fraud, and the Defendant was not incentivized with any commissions for selling SIB CDs.

3.   Because the Defendant was not a Financial Advisor selling fraudulent CDs, the monies paid Defendant in the form of salary and one forgivable loan came from Trust fee income and thus did not come out of investors' pockets, and was not part of the commissions paid to the Financial Advisors who were selling the SIB CDs.

4.  Because the Defendant was not an FA selling fraudulent CDs, the monies paid to

Defendant for his legitimate services and labor do not constitute CD Proceeds and

therefore are not properly part of the Receivership Estate.  Because the funds paid to

the Defendant (who was not a Financial Advisor) were not part of the substantial sums

of CD Proceeds to the Financial Advisors, the salary and loan paid to Defendant should

not be returned to the Receivership Estate in order to make an equitable distribution to

claimants, as they were wholly unrelated to the alleged fraud and not traceable to the

Receivership Estate.

5.  All monies paid to Defendant were to initially induce him to work for Stanford Trust

Company and for legitimate trust management and administrative services rendered by

the Defendant, and were therefore wholly unrelated to the alleged fraudulent scheme.

Therefore, none of the monies paid to the Defendant came from luring new investors

into SIB CDs and were not investor funds diverted for any illicit purpose.  Instead, their

source was the fees collected by Stanford Trust Company under its regularly adopted

fee schedule for legitimate trust services rendered in the Greensboro, NC Trust Office.

The Receiver has made no factual showing that any of the monies paid to the Defendant

came from CD Proceeds, or that they were not in payment for legitimate services

rendered.  Therefore, the monies paid to the Defendant are not part of the Receivership

Estate and should not be returned to the Receiver for distribution to the claimants.  The

monies paid to Defendant are not traceable to the Stanford Defendant's alleged

fraudulent scheme and the Receiver has made no showing that they are.  As opposed to

the Financial Advisors, the Defendant does have legitimate ownership interest in the

salary and loan received for the services and labor he provided and therefore, these

monies, by contrast should not be held in trust for the Receivership Estate for the benefit of defrauded investors.

6. None of the monies paid to the Defendant were received into accounts in the name of or controlled by the Financial Advisors in the custody of Pershing LLC, but were paid directly to the Defendant for his trust management and administration of the trust assets, (which assets were held in custody with SEI in Pennsylvania – completely separate and apart from the SIB CD Proceeds in the custody of Pershing LLC).  Although the Defendant was not a Financial Advisor, the Receiver has wrongly identified him as one to the Court and continues to try to apply legal theories regarding the potential liability of the Financial Advisors to the Defendant.  The Receiver and its attorneys know or should have known when filing their Complaint that the Defendant was not a Financial Advisor, yet they persist in wrongly representing the Defendant as a Financial Advisor and attempting to wrongly transfer potential liability of the Financial Advisors to the Defendant.  The fact remains that the Defendant was not a Financial Advisor, never had any monies at Pershing LLC, had no part in the alleged fraudulent scheme involving the Financial Advisors, only received monies for his legitimate services rendered to trust clients(as opposed to SIB CD brokerage customers),  and has no liability to the Receivership Estate.  Quite simply, the Defendant does not fall into the category of any Financial Advisors with or without frozen accounts at Pershing or JP Morgan.

7. The Defendant opposes any order related to the funds paid Defendant on the basis that:

a.)  Because the Defendant was not a Financial Advisor and received no CD Proceeds directly or indirectly from fraudulent CDs, none of the monies paid to the Defendant are property of the Receivership Estate and may not be pursuant to a constructive trust for the benefit of the Receivership Estate.

b.) Because the Defendant was not a Financial Advisor and received no CD Proceeds directly or indirectly from fraudulent CDs, the Defendant is liable to the Receiver in the amount of zero, as zero is the amount equaling the amount of CD Proceeds the Defendant received from fraudulent CDs.

c.) Because the Defendant never had any assets contained in Pershing and JP Morgan accounts in the Defendant's name or controlled by the Defendant, the Receiver has no claim to any assets paid to Defendant.   Therefore, the sum of these assets (in addition to the zero amount of any fraudulent CD Proceeds paid to Defendant) is zero, and the result is still that none of the monies paid to Defendant are payable to the Receivership Estate.

d.) Because the difference between the amounts contained in Pershing and JP Morgan accounts (which is zero for the Defendant) and the total amount of fraudulent CD Proceeds received (which is zero for the Defendant) is in fact zero, zero is the amount of the Defendant's assets which  must be paid to the Receiver.

**JURISDICTION AND VENUE**

8.   The Defendant admits that this Court has jurisdiction over this action.  However, to Defendants knowledge and belief, venue would not be proper in this Court, and the proper venue should be the United States District Court for the Middle District of North Carolina, where the Defendant resides and worked for Stanford Trust Company, and where the Court would have *in rem* and *in personam* jurisdiction over Defendant.

9.  While the Court that appointed the Receiver has jurisdiction over any claim brought by the Receiver to execute his Receivership duties, the Court should change the venue to the United States District Court for the Middle District of North Carolina, where the Court would have *in rem* and *in personam* jurisdiction over Defendant, and where the Defendant resides and worked for Stanford Trust Company.

10.  Because the United States District Court for the Middle District of North Carolina was one of the 26 district courts where the Receiver filed the original Complaint and Order Appointing the Receiver, that is the Court where venue is proper, and is the Court where this action should be tried.

11.  As the Defendant was not a Financial Advisor and did not submit an Application for Review and Potential Release of Stanford Group Company ("SGC") Brokerage Accounts, the Defendant made no declaration regarding submitting to the jurisdiction of the US District Court for the Northern District of Texas.  However, the Defendant does not dispute the jurisdiction of this Court over this matter, only that in rem and in personam jurisdiction over Defendant exists in this Court, and that venue is proper in this Court. As to Defendant, the Receiver must bring his case in the United States District Court for the Middle District of North Carolina in order to have in rem and in personam jurisdiction over the Defendant, and to have proper venue.

12.  The Defendant has not filed motions to intervene, and has not consented as a matter of law to the Court's personal jurisdiction.

THE FINANCIAL ADVISORS

13. The Defendant was not a Financial Advisor employed by SGC, and in fact was employed by Stanford Trust Company in Greensboro, NC as their "Senior Fiduciary Officer".   While the Defendant worked with various Financial Advisors on the trust aspects of their client accounts, the Defendant's job function was not as a Financial Advisor, nor was his corporate title a "Financial Advisor".   The Defendant had absolutely no role in the sales or marketing of the SIB CDs, and in fact none of the Defendant's trust clients held any SIB CDs.  Therefore, the Defendant received no amounts to promote the sales of SIB CDs.   The Receiver knows or should have known this fact, and yet still has misidentified the Defendant as a Financial Advisor in the Appendix in Support of Receiver's Supplemental Complaint as follows:  on page 1 of said Appendix, the heading is "Financial Advisors"; on page 4 of said Appendix, the Defendant is listed under ID # 130, Name, David Lundquist, and CD Proceeds $85,000.  The Receiver through its attorneys have therefore misrepresented the relevant facts to this Court in an attempt to maximize the Receivership Estate by including the Defendant in a class he was not a member of, and by mischaracterizing the alleged remaining balance of his loan proceeds as CD Proceeds.  This demonstrates over-reaching, and misstatement of relevant facts to the Court on behalf of the Receiver.  Therefore, the Defendant should be dropped and omitted from said list in the Appendix, and the Court should order the Receiver to drop its complaint as to the Defendant.  Furthermore, because the Receiver chose to claim against the Defendant on the unsustainable legal theory that the Defendant was a Financial Advisor and received SIB CD Proceeds, once the Receiver is ordered to dismiss this claim against the Defendant, the Receiver should be estopped and barred from claiming against the forgivable loan proceeds received by the Defendant on the basis of the Promissory Note.  The Receiver was required to state all his causes of action against

the Defendant when making its original complaint, and because the Receiver chose not

to claim against the Defendant on the basis of the promissory note, if the claim against

the Defendant on the basis of him being a Financial Advisor and receiving CD Proceeds is

denied, then the Receiver should be estopped from then making a further claim against

the Defendant on the basis of the promissory note.

14.  The Defendant denies that he was ever a Financial Advisor.  As to the remaining

statements  in paragraph 14, the Defendant is without knowledge or information

sufficient to form a belief about the trust of the remaining statements.

**Statement of Facts**

15.  The Defendant would  point out that he was an employee of Stanford Trust Company

working as Senior Fiduciary Officer in the Greensboro, NC Trust Office, and as such

played no role, had any involvement in, and received no SIB CD Proceeds.  In addition,

the Receiver has made no showing that either the Defendant while working in the

Greensboro, NC Trust Office had anything to do with the SIB CDs.  The Receiver cannot

make such a showing because in fact: the Defendant while working in said Greensboro

Trust Office had absolutely nothing  to do with SIB CDs;  no trust clients in said office

held any SIB CDs in their trust accounts;  the Defendant received no CD Proceeds or any

commissions for selling SIB CDs;  the Defendant was paid only a salary and proceeds

from one forgivable promissory note in exchange for his  coming to work for Stanford

Trust Company and for his services and labor in managing and administering the trust

accounts in said office; and the Defendant was not even an employee of any of the

named Stanford Defendants, being instead an employee of Stanford Trust Company

whose salary and loan were covered by fees generated from trust accounts which had
nothing to do with SIB CDs.


I.       **Stanford As Defendants Operated a Fraudulent Ponzi Scheme**


I.       **Stanford Defendants Operated a Fraudulent Ponzi Scheme**

16. The Defendant as an employee of Stanford Trust Company did not market fraudulent
SIB CDs to investors pursuant to a Regulation D private placement or otherwise.  The
Receiver admits that the SIB CDs were sold by Stanford International Bank and has made
no showing that the Defendant was an employee of Stanford International Bank or was
in any way involved in the sale of SIB CDs by Stanford International Bank.  To the extent
that innocent investors were defrauded by Sir Allen Stanford and two associates, James
M. Davis and Laura Pendergest-Holt and three of Mr. Stanford's companies, Stanford
International Bank, Ltd.("SIB" or "the Bank"), Stanford Group Company, and Stanford
Capital Management, LLC(collectively "Stanford Defendants") as stated in paragraph 15
on page 5 of the Receiver's Supplemental Complaint under "Statement of Facts",
Defendant asserts that Stanford Trust Company and the Defendant as an employee of
Stanford Trust Company were equally defrauded by the Stanford Defendants as were
the investors in the SIB CDs.  The Defendant had absolutely no knowledge of this alleged
fraud, and the Receiver has made no showing that the Defendant played any role in or
had any knowledge of this alleged fraud.  The Defendant had absolutely clean hands and
no role in the alleged fraud and has suffered substantially from the alleged fraud of the
Stanford Defendants, including losing his job through no fault of his own, and being
unemployed for the last 7 months in a bad economy as a result.  While the Defendant

has deep sympathy for the innocent investors who lost money, he, along with most Stanford employees except for the Stanford Defendants, was equally defrauded by the Stanford Defendants and is an innocent party with respect to any alleged fraudulent scheme.  Therefore, the Receiver should not be allowed to go after any of the monies paid Defendant for his legitimate services and labor in his job as Senior Fiduciary Officer in the Greensboro, NC Trust Office which the Receiver has not shown to be related to the alleged fraudulent scheme in any way.

17. As the Defendant played no role in the marketing, selling and issuing CDs to investors, the Defendant on no occasion touted the CDs safety and security and SIBs consistent, double digit returns on its investment portfolio.  The Receiver has made no showing of facts in this regard, and will not be able to make any showing in this regard with respect to the Defendant, as the Defendant in fact had no role in the alleged fraudulent CD scheme.

18. As the Defendant was not an employee of SIB, the Defendant had no role in the SIB brochure, or emphasizing any "prudent approach and methodology", or stressing the importance of investing in "marketable securities".  Instead the Defendant as Senior Fiduciary Officer in the Greensboro, NC Trust Office worked only with clients whose trust assets were invested in stocks, bonds, and mutual funds which were held in custody at SEI in Pennsylvania and had no clients with any assets invested in the SIB CDs offered by SIB in Antigua.  In fact, the Defendant had discussions with his boss James Weller(Chief Fiduciary Officer in Houston) about the SIB CDs, and Defendant was instructed that none of the NC client monies were to be invested in the SIB CD, as it was his opinion that this would constitute a conflict of interest, and would possibly be looked at unfavorably by the NC Commissioner of Banking who was considering

Stanford Trust Company's application for a Trust Charter in the State of North Carolina.

By contrast, Stanford Trust Company of Louisiana did serve as custodian for the SIB CDs,

but this custody function was kept entirely separate from the trust assets held and

managed by the Stanford Trust Company Office in Greensboro, NC.  Also, Stanford Trust

Company was in the process of moving the custody of the SIB CDs to a third party

custodian in Nevada in order to deal with this possible conflict of interest for the

Louisiana Trust Company at the time that the SEC initiated its action against the

Stanford Defendants.  While Stanford Trust Company in Louisiana served as custodian

for the SIB CDs, to Defendants knowledge and belief, no one in Stanford Trust Company

had any knowledge of the alleged fraudulent scheme involving the SIB CDs.  This was

absolutely the fact for the Stanford Trust Company's Greensboro Office, which did not

serve as custodian, had no involvement with the SIB CDs, and was directed not ever to

have any SIB CDs in trust client accounts there.

19.  As the Defendant was not an SIB employee, was not a Financial Advisor, and had no

involvement whatsoever with SIB, as to the Defendant it is irrelevant what SIB told

investors what the Bank assets were invested in, or what the returns had been.  All

investors dealing with SIB were documented "accredited investors", and as such were

more sophisticated than average investors, and were well aware that the SIB CDs were

not FDIC insured bank deposits, and were subject to a higher degree of risk, including

the loss of principal.  These accredited investors chose to make this riskier investment in

return for the possibility of a higher return.  While this in no way excuses the alleged

fraud that was allegedly perpetrated upon them, they all knew these uninsured

investments were subject to substantial risk in the marketplace, including possible

principal loss up to the total amount of their entire investment.  Yet they chose to take

this risk for the possibility of a high return on their investment.  However, because the Defendant had no clients in the SIB CDs, was not a Financial Advisor, and played no role in the sale of SIB CDs, this point is irrelevant with respect to the Defendant, and the Receiver has no claim over any monies paid to the Defendant for his legitimate services rendered in the fiduciary management of his client accounts which had no involvement in the SIB CDs.

20. Because the Defendant was not a SGC Financial Advisor, the Defendant received no training regarding the SIB CD as the Defendant had no role in its marketing, sales, or administration and has no knowledge about the information in any of the Annual Reports, brochures or claimed returns that SIB had earned.

21. To the extent any portions of the Bank's portfolio were misappropriated by Allen Stanford and the other Stanford Defendants, Stanford Trust Company in Louisiana (which was acting as custodian for the CDs), Stanford Trust Company in Greensboro, NC(which had no involvement with the CDs), along with the Defendant serving as Senior Fiduciary Officer in Greensboro, NC all were mislead and defrauded right along with the CD investors.  The Defendant had absolutely clean hands in this matter and no involvement whatsoever with the SIB CDs.  The Defendant was defrauded by Allen Stanford and the other Stanford Defendants and lost his job due to no wrong action on his part, and as a result has been unemployed for 7 months.  All monies paid to the Defendant consisted solely of salary, and the one loan made as an inducement to join Stanford Trust Company, and were wholly unrelated to any fraud perpetrated by the Stanford Defendants.  In addition, all monies paid Defendant were for his legitimate work on behalf of the clients of Stanford Trust Company in Greensboro, NC who had no SIB CDs as investments, and were paid to Defendant from fee income of Stanford Trust

Company which was unrelated to the SIB CDs in question.  Therefore, none of the monies paid the Defendant were ever part of the Receivership Estate, as they had no nexus to the alleged fraudulent SIB CD scheme.  Therefore, the Receiver has no legitimate claim that these monies should be returned to the Receivership Estate.

22. Because the Defendant was not an employee of any of the named Stanford Defendants, and was not a Financial Advisor, the Defendant had no role in fabricating the performance of the SIB's investment portfolio.  Any blame for fabrications made by the other Stanford Defendants cannot be transferred to the Defendant, who was completely innocent of any involvement with SIB CDs, and was mislead and defrauded by the other Stanford Defendants just as were the CD investors.  Therefore, the Receiver cannot ascribe blame to the Defendant for the alleged actions of others that Defendant had no knowledge of and no involvement with.

23. Because the Defendant was not an employee of any of the named Stanford Defendants, and was not a Financial Advisor, the Defendant played no role in producing SIB Financial statements or calculating SIB's investment income.  Again, the Receiver cannot ascribe blame to the Defendant for the alleged action of others that the Defendant had no knowledge of and no involvement with.

24. Because the Defendant was not an employee of any of the named Stanford Defendants, and was not a Financial Advisor, the Defendant played no role in perpetrating any alleged fraud or fraudulent Ponzi scheme.  If the Stanford Defendants and Financial Advisors are guilty of such fraud, this guilt cannot be transferred to the Defendant who had no knowledge of and no involvement with any such fraud.

II.     **The Stanford Defendants Transferred CD Proceeds from the Fraudulent Ponzi Scheme**

        **to    the Financial Advisors.**


  25. Because the Defendant was not an employee of any of the named Stanford Defendants, and

was not a Financial Advisor of Stanford Group Company, the Defendant did not participate in any

incentive program to sell SIB CDs.  The Defendant, was not acting as a broker for Stanford Group

Company, but instead was acting as Senior Fiduciary Officer for Stanford Trust Company in its

Greensboro, NC Trust Office,  had no brokerage customers, and dealt exclusively with trust clients

of Stanford Trust Company in Greensboro, NC.  If any of the Defendant's trust customers had

brokerage accounts with Stanford Group Company, such customers dealt solely with their broker

Financial Advisors with respect to such brokerage accounts, such brokerage accounts were held

with Pershing rather than with SEI which held the trust account assets, and the Defendant had no

involvement with such brokerage accounts.  Therefore, the Defendant was not part of any

elaborate and sophisticated incentive program to keep the Financial Advisors highly motivated to

sell SIB CDs to brokerage customers as the Receiver has alleged.  In fact, the Defendant had no

incentive to be involved in any way with the sale of SIB CDs and did not share in any commissions

paid to the Financial Advisors for their sale.  Instead the Defendant received strictly a salary, the

possibility of a bonus depending upon his annual review and the performance of the Greensboro

Trust Office(none was ever paid), and the forgivable loan that was given the Defendant as an

inducement to leave his prior employer and work for Stanford Trust Company.  Thus none of the

Defendant's compensation was in any way tied to SIB CD sales and the Defendant had no incentive to sell the SIB CDs and in fact did not sell any SIB CDs.

26. Because the Defendant was not an employee of any of the named Stanford Defendants, and was not a Financial Advisor for Stanford Group Company, the Defendant received no transfers from the Stanford Defendants for the purpose of concealing and perpetrating the alleged fraudulent scheme.  In stark contrast to the Financial Advisor s, the Defendant did perform management and administrative services for the trust clients of Stanford Trust Company in Greensboro, NC, and was paid a salary for doing so, but received no CD Proceeds or commissions.  Therefore, the Defendant does have a rightful ownership interest for the labor her performed and was paid for, and all the monies paid to the Defendant should be retained by the Defendant for his legitimate services rendered, and should not be considered assets of the Receivership Estate.  None of the monies paid to the Defendant are traceable to the alleged fraudulent activity and the Defendant has a legitimate claim to ownership over the monies paid him for his labor on behalf of his trust clients, none of whom were invested in the SIB CDs.  None of the cased cited by the Receiver are applicable to the Defendant as the Defendant did not participate in the alleged Ponzi scheme, provided no brokerage services of any kind, and did provide valuable labor and service  for his trust clients in return for the monies he was paid.

**Requested Relief**

27. As none of the monies paid to Defendant were from the Stanford Group Company brokerage firm, but instead were paid to him by Stanford Trust Company for his labor and services in regard to trust clients of the Greensboro, NC Trust Office, none of the relief the Receiver seeks should apply to any of the monies paid to the Defendant.

28.  .  Because none of the monies paid to the Defendant have been shown by the Receiver to be traceable to assets owned by the Receivership Estate, the Receiver is not authorized to impose a constructive trust or to obtain possession, or recover judgment with respect to any monies paid to the Defendant by Stanford Trust Company from fees of said Trust Company from the Greensboro, NC Trust Office for the services that the Defendant rendered his trust clients.

29. Because none of the monies paid to the Defendant have been shown by the Receiver to be traceable to assets owned by the Receivership Estate, and in fact are not assets of the Receivership Estate, the Receiver should not be allowed to take control and possession of any monies paid to the Defendant.

I.       **The Receiver is Entitled to Disgorgement of Assets from the Financial Advisors as Relief Defendants.**

30. Because the Defendant was not a Financial Advisor for Stanford Group Company and received no SIB CD Proceeds or commissions, in contrast to the payments received by the Financial Advisors, none of the monies paid to the Defendant for his legitimate labors which were totally unrelated to the alleged fraudulent scheme are assets of the Receivership Estate.  Therefore, the Defendant is not a proper relief defendant in this action, and the Receiver's request to marshall said assets from Defendant must be denied as they were not part of the Receivership Estate, but instead were monies paid Defendant from fees charged by Stanford Trust Company on the trust accounts Defendant was employed to administer.

31. The Receiver has not and cannot produce any evidence showing that any of the monies received by the Defendant were tainted funds from relief defendants who received proceeds from a Ponzi

scheme.  Therefore, the Receiver should be barred from seeking disgorgement of any monies

paid to Defendant by Stanford Trust Company.  None of the Defendant's "services" to trust clients

of the Stanford Trust Company Office in Greensboro, NC were rendered in furtherance of the

alleged fraud.  Greensboro, NC is a world apart from Antigua, where SIB was located and

operated, and the Defendant never even met any Stanford employee from SIB in Antigua, and

certainly never met or had any conversations or dealings with any other of the Stanford

Defendants.  Defendant therefore was just as much in the dark as to the alleged fraudulent

scheme of the Stanford Defendants as were the SIB CD investors.  Also, the monies received by

the Defendant were completely legitimate in payment for his labor and services rendered to his

trust clients, and such services were not in furtherance of any alleged fraud or Ponzi scheme as

argued by the Receiver.  Therefore, the Receiver's argument that "any claim the Financial

Advisors have to the ill-gotten CD Proceeds is illegitimate" does not pertain to the Defendant.

The Defendant who was not a Financial Advisor and indeed makes no claim to the ill-gotten CD

Proceeds, as Defendant  never received any.  Instead the Defendant asserts his totally legitimate

claim to the monies that were paid him for his legitimate labor and service to trust clients which

were wholly unrelated to the ill-gotten CD Proceeds that the Receiver references in regard to the

Financial Advisors of Stanford Group Company.  Quite simply, the Receiver has no valid claim as

to the monies paid to the Defendant.

32. As the Defendant was not a Financial Advisor and received no CD proceeds, the Receiver has no

   right to any monies paid to the Defendant in order to carry out the duties delegated to him by

   this Court.

33. The  Defendant  is not attempting to establish any legitimate ownership claim to the CD Proceeds.

   Instead, the Defendant is only asserting his legitimate ownership claim for the forgivable loan

   proceeds already paid to him by Stanford Trust Company for his service rendered to trust clients

in the Greensboro, NC Trust Office.  Therefore, as to the monies paid to the Defendant by

Stanford Trust Company, the Receiver:

a.) Should not be able to get an order or constructive trust with respect to any monies paid

the Defendant as being part of the Receivership Estate, as the Defendant received no CD

Proceeds directly or indirectly and was not ever acting as a Financial Advisor providing

brokerage services or selling any SIB CDs.  The monies paid Defendant are also not

traceable to the Receivership Estate, were never part of the Receivership Estate and thus

should not be paid to the Receivership Estate.  Instead, the monies paid to Defendant are

traceable only to the trust fees generated from the trust accounts managed in the

Greensboro, NC Trust Office.  While the Receiver may consider the trust fees generated

from the accounts managed in the Greensboro office to be small in comparison to the

revenues generated from SIB CD sales and other Stanford Defendants income,  to the

Defendant's knowledge and belief such trust fees were more than adequate to cover all of

the monies paid to the Defendant for his labor and services rendered.  Therefore, as the

monies paid the Defendant are traceable only to the trust fees generated and not to the

SIB CD revenues, these monies are not traceable to the Receivership Estate, were never

part of the Receivership Estate and thus should not be paid to the Receivership Estate.  The

Receiver appears to be arguing that because the vast majority of the fees generated from

all of the Stanford affiliated companies came from SIB CD sales, that the Receiver may go

after all monies paid to any employees of any of the Stanford affiliated companies

regardless of whether they had any relation to the alleged fraudulent SIB CE scheme or

not.  The Defendant asserts that the Receiver may only go after monies that are directly

traceable to SIB CD sales activities that were paid to Stanford employees who had some

involvement in selling the SIB CDs and therefore received revenues generated by the alleged fraudulent scheme.  The Receiver should not be allowed to go after any monies paid to a Defendant for legitimate services and labor that had no relation to SIB CD sales or the alleged fraudulent scheme, which were paid to a Defendant who had no knowledge of the alleged fraudulent scheme, who did not have any involvement in selling the SIB CDs, who received no revenues or commissions from SIB CD sales, who was not even a Financial Advisor, and who was completely ignorant about the alleged fraudulent scheme and equally defrauded by the Stanford Defendants.  To do so would unjustly punish the Defendant for the acts of others over which the Defendant had no knowledge, involvement, or control and would involve turning over assets which were not traceable to or part of the Receivership Estate, while raising an insignificant amount of money for the Receiver to pay over to CD investors.  It also would unjustly enrich the CD investors at the expense of the Defendant by transferring monies to them which had no relation to the CD investments they made with SIB.

b.) Should be ordered to recognize that because the Defendant was not a Financial Advisor and received no CD Proceeds, the amount that Defendant is liable to the Receivership Estate is zero (exactly the amount of CD Proceeds the Defendant received).

c.) Should be ordered to recognize that because the Defendant never had any assets in Pershing or JP Morgan accounts in his name, again the amount that Defendant is liable to the Receivership Estate is zero.

d.) Should be ordered to recognize that with respect to the Defendant, the difference, if any, between the amounts contained in Pershing and JP Morgan account and the total amount of CD Proceeds received by the Defendant is zero.  Therefore, zero is the amount of liability of the Defendant to the Receivership Estate.

II.     **In the Alternative, the Receiver is Entitled to Disgorgement of Assets Fraudulently Transferred to the Financial Advisors.**

34. Because Defendant was not a Financial Advisor of Stanford Group Company and received no CD Proceeds, the Receiver is not entitled to disgorgement of any monies paid to Defendant by Stanford Trust Company, as the Defendant made no fraudulent transfers under applicable law. As the Stanford Defendants did not transfer any CD Proceeds to the Defendant, the Receiver is not entitled to any disgorgement with respect to any monies paid to the Defendant.

35. Even if the Stanford Defendants were running a Ponzi scheme, because the Defendant was an innocent third party who was not a part of it, and no transfers of CD Proceeds from it were made to the Defendant, the Receiver is not entitled to disgorgement of any monies paid to the Defendant.

36. Because the Defendant was not a Financial Advisor of Stanford Group Company, did not sell any SIB CDs, and received no CD Proceeds, the Defendant is making no claim to entitlement to keep any commissions, loans, and PARS payments taken from the same investors to whom Financial Advisors sold the allegedly fraudulent SIB CDs.  By contrast, the Defendant asserts his affirmative defense of clean hands and good faith on his part, and  the provision of services and labor of equivalent value for the monies he was paid, as the only monies received by the Defendant were for his legitimate service and labor rendered to the trust clients of the Greensboro, NC Stanford Trust Company Office, and had nothing to do with the alleged fraudulent Ponzi scheme.  The Defendant had nothing to do with SIB CD sales, received no CD Proceeds or commissions, was not a broker, and did not render any brokerage services to anyone.  Therefore, the Receiver has no rightful claim over any monies that were paid to the Defendant by Stanford Trust Company.  The

Receiver is attempting to tar all Stanford employees with the same brush irrespective of whether they had any knowledge of or participation in the alleged fraudulent SIB CD scheme or not.  This is clearly unjust, illegal, and should not be allowed by this Court.  The Receiver in his zeal to achieve his stated objective of maximizing the Receivership Estate must not be allowed to infer guilt to innocent third parties such as the Defendant who had nothing to do with the alleged fraudulent scheme, and then go after monies paid to them for their legitimate services rendered, with no evidence that they were involved in any way in the fraudulent scheme, and no evidence that the monies paid to them were somehow related to and part of the alleged fraudulent scheme.

37. Even if the Receiver is granted complete and exclusive control, possession, and custody of the CD Proceeds received by the Financial Advisors, this will have no application to the Defendant , as the Defendant was not a Financial Advisor of Stanford Group Company and received no CD Proceeds.  The monies paid the Defendant were not CD Proceeds, but consisted of a salary and a loan paid to the Defendant by Stanford Trust Company from trust fee income (as opposed to SIB CD sales).  Additionally, the Defendant was not a Financial Advisor of Stanford Group Company.  Therefore, the Receiver can be granted complete and exclusive control, possession, and custody of the CD Proceeds received by the Financial Advisors without affecting any of the monies that were paid to the Defendant from Stanford Trust Company.  The Receiver has either inadvertently or intentionally misrepresented the Defendant was a "Financial Advisor", and either inadvertently or intentionally misrepresented the Defendant as having received "CD Proceeds".  Neither assertion is factually correct, and this Court should summarily order that the Defendant be dropped from the Receiver's Supplemental Complaint entirely.  Releasing the Receiver's claim as to the Defendant will have no effect on the Receiver's ability to carry out the duties delegated to him by this Court, as all monies received by the Defendant were wholly unrelated to the sale of

SIB CDs, the receipt of any CD Proceeds or commissions, and were not part of the alleged fraudulent Ponzi scheme perpetrated by the Stanford Defendants through the Financial Advisors.

38. Because the Stanford Defendants did not transfer any CD Proceeds to the Defendant (who was not a Financial Advisor),  the only monies received by the Defendant were paid to him by Stanford Trust Company for his legitimate services and labor as Senior Fiduciary Officer for Stanford Trust Company in Greensboro, NC, and these services and monies paid for them were wholly unrelated to the alleged fraudulent Ponzi scheme perpetrated by the Stanford Defendants through the Financial Advisors, the Receiver:

   a.) Should be ordered to drop the Defendant and any monies paid to Defendant from this complaint seeking CD Proceeds as property of the Receivership Estate, and the Court should rule that the monies paid to the Defendant are not a part of the Receivership Estate and may not be held as part of any constructive trust for the benefit of the Receivership Estate.

   b.) Should be ordered to recognize that the Defendant has no liability to the Receivership Estate, as the amount of CD Proceeds that the Defendant received was zero.

   c.) Should be ordered to recognize that because the Defendant had no assets contained in Pershing and JP Morgan accounts in his name, and received no CD Proceeds, that the amount the Defendant owes the Receivership Estate is zero.

   d.) Should be ordered to recognize that ordering the Financial Advisors to pay the Receiver the difference, if any, between the amounts contained in their Pershing and JP Morgan accounts and the total amount of CD Proceeds received by the Financial Advisors will still result in the Defendant owing nothing to the Receivership Estate, as the Defendant in fact was not a Financial Advisor, received no CD Proceeds, and maintained no Pershing and JP Morgan accounts.

**Counterclaims**

The Defendant hereby asserts the following counterclaims against the Plaintiff Receiver

and its Attorneys:

1.  That the Receivership Estate has liability to Defendant for the damages caused him by

    the fraud perpetrated upon him by the Stanford Defendants and Stanford Trust

    Company, and that the total damages payable to Defendant should be adjusted

    dependent  upon whether Defendant is allowed to keep the forgivable loan proceeds

    he was paid.   Therefore, if a Court  with proper jurisdiction and venue finds that the

    Promissory Note Defendant signed with Stanford Trust Company is not a valid binding

    contract so that none of the loan proceeds must be paid to the Receivership Estate,

    then the Defendant is entitled to his full compensatory damages from the Receivership

    Estate in the amount of $798,667 for the fraud perpetrated upon him by the Stanford

    Defendants and Stanford Trust Company.  If however , such a Court finds that the

    Promissory Note Defendant signed with Stanford Trust Company is a valid binding

    contract requiring repayment of the loan proceed to the Receiver, then the correct

    amount of the remaining loan balance should be netted out against Defendant's full

    compensatory damages in the amount of $798,667, and only the  difference should be

    payable to Defendant from the Receivership Estate for the breach of said contract by

the Stanford Defendants and Stanford Trust Company with resulting damage to the Defendant.

2. That the Plaintiff and its Attorneys have libeled  Defendant and caused damage per se to the Defendant's professional reputation by misrepresenting in its Complaint that the Defendant was a Financial Advisor of Stanford Group Company who participated in and received CD Proceeds from an alleged fraudulent Ponzi scheme involving the sale of SIB CDs, when the Plaintiff knew or should have known and could have easily discovered by reasonable due diligence:

a.) that the Defendant was not a Financial Advisor;

b.) had no involvement in said fraudulent scheme;

c.) in fact received no SIB CD Proceeds

Therefore, Defendant is entitled to compensatory damages in the amount of $1,000,000 for libel and damages per se to his professional reputation, and punitive damages in an amount deemed appropriate by the Court.

3. That the Plaintiff and its Attorneys have caused the Defendant unnecessary expense in defending a cause of action in its Complaint that is based upon material misrepresentation of the facts, and should be ordered to pay Defendant all his costs associated with his defense and punitive damages in an amount deemed appropriate by this Court.

**PRAYER**

39.  The Defendant respectfully requests the following:

a.)  That the Plaintiff's complaint be dismissed as to the Defendant, for failure to state a cause of action on which judgment can be rendered.

b.)  That the Defendant be allowed a trial by a jury of his peers in the United States District Court for the Middle District of North Carolina, where the venue for this action is proper.

c.)  That all of the Prayers sought by the Plaintiff in paragraph 39 on page 14 of the Receiver's Supplemental Complaint be denied by this Court as they pertain to the Defendant.

d.)  A summary adjudication that none of the monies paid Defendant by Stanford Trust Company for his legitimate services and labor in managing the trust accounts in the Greensboro, NC Trust Office, (which were entirely unrelated to the alleged fraudulent Ponzi scheme perpetrated by the Stanford Defendants through the Financial Advisors), are subject to a constructive trust, are not assets of the Receivership Estate, and may not be recovered by the Receiver.

e.)  A summary adjudication that the Defendant was not a Financial Advisor of Stanford Group Company, in fact received no SIB CD Proceeds, had no knowledge of or participation in any alleged fraudulent Ponzi scheme perpetrated by the Stanford Defendants through the Financial Advisors, and therefore has no liability to the Receivership Estate for any monies paid to him by Stanford Trust Company.

f.)  A summary adjudication that the Defendant has no contractual liability to the Receiver on the basis of Defendant's Promissory Note with Stanford Trust Company,  due to:

1.) Fraud committed either by the Stanford Defendants and Stanford Trust Company upon the Defendant, or by the Stanford Defendants upon both Stanford Trust Company and the

Defendant, which rendered the contract as null and void as being based on fraud at its inception;

2.) Material breach of the contract by the Stanford Trust Company and its Principal, the Stanford Defendants which leaves the Defendant with no duty to refund any of the proceeds received, as Defendant performed his duty under said contract and would have continued to perform his duty under said contract but for the breach of the contract by Stanford Trust Company and its Principal, the Stanford Defendants;

3.) Promissory estoppel, as the Defendant relied upon and took action to his detriment based upon the promises that Stanford Trust Company made in the alleged contract, the Plaintiff should be estopped from trying to enforce the contract, and the Defendant should be allowed to retain the loan proceeds received either as: liquidated damages for lost salary and unemployment as a direct result of the breach of said contract by Stanford Trust Company; and/or payment for services and labor performed by the Defendant pursuant to the contract and for leaving his prior employment and forgoing a vest pension benefit by joining Stanford Trust Company in reliance on the promises of Stanford Trust Company and the Stanford Defendants.

g.) An order that the Defendant has no liability to the Receivership Estate on the basis that there were never any assets contained in any Pershing and JP Morgan accounts in the name of the Defendant.

h.) An order that the Defendant need not pay the Receiver anything because the difference between the amounts contained in Pershing and JP Morgan accounts and the total amount of fraudulent CD Proceeds received by the Defendant is zero.

i.) An order that the Receiver be required to pay Defendant for his costs in defending this action and further be required to pay Defendant compensatory damages (as requested in

Defendant's Counterclaims above) and punitive damages in an amount deemed appropriate by the Court for stating a cause of action against  Defendant in its complaint that was based upon a material misstatement  and misrepresentation of the facts  to this Court which the Plaintiff and its Attorneys either knew of or should have known of  with reasonable due diligence at the time the Complaint was filed.

j.)   An order reprimanding the Receiver and its attorneys for misrepresenting  to this Court in its Complaint that the Defendant was a Financial Advisor who received SIB CD proceeds from his participation in the alleged fraudulent scheme of selling SIB CDs, when the Receiver and its attorney knew or should have known that the Defendant was not a Financial Advisor, had no involvement in said alleged fraudulent scheme, and instead had simply received proceeds from a loan made to the Defendant in compensation for his leaving his prior employment and performing the duties of management and trust administration in the Greensboro, NC Trust Office that he was hired for.

k.)   An order that the Defendant is entitled to compensatory damages in the amount of $1,000,000 for libel and damage per se to his professional reputation , or in an amount deemed appropriate by this Court,  and punitive damages in an amount deemed appropriate by the Court from the Receiver and its attorneys,  for misrepresenting the Defendant as a Financial Advisor who received SIB CD proceeds from participation in the alleged fraudulent scheme of selling SIB CDs in its Complaint to this Court, when they knew or should have known this not to be the case, said misrepresentation constituting libel and damage per se  to the Defendant's professional reputation as a licensed attorney in North Carolina,  licensed Certified Financial Planner,  licensed Insurance Agent in North Carolina, Trust Officer and licensed securities broker.

l.)   An order that the Defendant is entitled to compensatory damages from the Receivership Estate for the fraud committed upon him by the Stanford Defendants and Stanford Trust Company, and if the Court finds that the Promissory Note signed by the Defendant constitutes a valid contract, then for damages for breach of said contract by the Stanford Defendants and Stanford Trust Company.  Therefore the Defendant requests that the Court award him compensatory damages in the full amount of $798,667 from the Receivership Estate, to be offset by the loan proceeds payable to the Receivership Estate only in the event the Court finds the Promissory Note signed by the Defendant to be a valid enforceable contract.  Otherwise, the Defendant asks that the Court award him the full compensatory damages in the amount of $798,667 from the Receivership Estate for his losses that were a direct result of the fraud perpetrated upon him by the Stanford Defendants and Stanford Trust Company.

m.)  An order that the Receiver, having failed to claim a cause of action under the Promissory Note with Stanford Trust Company against the Defendant in its Complaint in this matter, and deciding instead to falsely claim that the Defendant had received these funds as a Financial Advisor receiving SIB CD Proceeds related to the alleged fraudulent scheme,  be forever barred from asserting a cause of action against the Defendant on the basis of said Promissory Note which Defendant signed with Stanford Trust Company.

n.)  An order that the Promissory Note between the Defendant and Stanford Trust Company shown in Exhibit "1" attached to and incorporated by reference in this Answer be declared null,  void and an unenforceable contract  as to the Defendant's obligation to repay any loan proceeds under said note because,  in the alternative:

(1.) Its terms are too indefinite and vague to allow anyone to determine when any payment would be due under said Note, as item "(C) First Annual Payment Due Date" was left blank by the parties to the note, thereby making the contract unenforceable.

(2.) There was a material breach of the Contract by the Stanford Trust Company and the Stanford Defendants, which relieves the Defendant from any duty to perform anything further than the performance he has already rendered.

(3.) There was fraud at the inception of the contract by the Stanford Defendants and Stanford Trust Company, which caused the contract to be null and void as it was based upon a fraud committed by one of the parties at its inception, which invalidates the contract, as it was not based upon good and adequate consideration, there was no adequate bargaining and meeting of the minds of each party to the contract, and it was void for public policy reasons, being based on fraud at its inception.

(4.) Because of detrimental reliance and performance in good faith by the Defendant based upon on the promises of Stanford Trust Company, the Stanford Trust Company and the Plaintiff should now be prevented under the doctrine of Promissory Estoppel from receiving any payment under said contract, and Defendant should be allowed to keep the loan proceeds as liquidated damages for his lost income and subsequent unemployment caused by the Stanford Defendants, and through no fault of his own.

(5.) The fact that no payment is yet due on the Promissory Note as item "(C) First Annual Payment Due Date" was left blank by the parties to the Note. Therefore, there is no valid contract to enforce, as the parties failed to specify when any payment was to be due under the alleged contract.

(6.) The fact that Stanford being put into Receivership by the Securities and Exchange Commission was an intervening event that was totally beyond the control of the

Defendant,  which made Defendant's continuing performance of the terms bargained for in the note impossible to perform by the Defendant.  Therefore, the contract has become null and void, and may not be enforced at this time.

(7.) That because the Defendant was not terminated, did not resign, and did not die, that no payment is due under the terms of the Note in any regard, as none of the triggering events that would necessitate Defendant repaying any loan proceeds have occurred.

o.) Such other and further relief as the Court deems proper under the circumstances.


Dated: December 14, 2009                              Respectfully submitted,


**David R. Lundquist**


**By:**/s/ David R. Lundquist

David R. Lundquist

North Carolina Bar No. 21471

Dlund50@yahoo.com

3125 Allerton Lake Drive

Winston-Salem, NC   27106

(336) 403-5753 Cell

(336) 760-2705 Home