IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL. | § § § § § | |
| Plaintiff, | § § | Case No. 03:09-CV-0724-N |
| v. | § § | |
| JAMES R. ALGUIRE, ET AL. | § § | |
| Defendants. | § § | |

**KATHLEEN REED'S, MEGAN MALANGA'S, TIMOTHY W. SUMMERS', CARTER DRISCOLL'S AND JON C. SHIPMAN'S MOTION TO DISMISS RECEIVER'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF**

Ms. Tricia R. DeLeon
State Bar No. 24005885
Ms. Janelle S. Forteza
State Bar No. 24058811
BRACEWELL & GIULIANI LLP
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202-2711
Telephone: (214) 468-3800
Facsimile: (214) 468-3888

ATTORNEYS FOR DEFENDANTS,
KATHLEEN REED, MEGAN MALANGA,
TIMOTHY W. SUMMERS, CARTER DRISCOLL
AND JON C. SHIPMAN

TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

INDEX OF AUTHORITIES ......................................................................................................... ii

I. SUMMARY OF ARGUMENT ........................................................................................ 1

    A. The Former Institutional Equity Research Analysts' Severances Were Legitimately Earned Funds ................................................................................... 1

    B. The Receiver's Complaint Failed to State a Claim Against the Former Institutional Equity Research Analysts .................................................................. 2

    C. The Receiver's Claim for Unjust Enrichment Must Be Dismissed ........................ 3

II. ARGUMENT AND AUTHORITIES ............................................................................... 3

    A. The Receiver Has Failed to Plead Sufficient Facts To Support His Claims Against the Former Institutional Equity Research Analysts ................................. 3

        1. Standard of Review for a 12(b)(6) Motion ............................................... 3

        2. The Receiver's Complaint Fails to Meet the Federal Rule of Civil Procedure 8 Pleading Requirements ........................................................... 4

        3. The Receiver Failed to Assert Facts Sufficient to Support the Claim that The Former Institutional Equity Research Analysts Received a Fraudulent Transfer .................................................................. 5

        4. The Receiver's Complaint Fails to Assert Facts Sufficient to Support a Claim for Unjust Enrichment ................................................... 9

III. CONCLUSION ............................................................................................................... 12

CERTIFICATE OF SERVICE .................................................................................................... 13

## INDEX OF AUTHORITIES

Page(s)

**CASES**

*Alcina v. PCorder.com, Inc.*,
    230 F. Supp. 2d 732 (W.D. Tex. 2002) ................................................................................. 4

*Baisden v. I'm Ready Prods.*,
    2008 U.S. Dist. LEXIS 39949 (S.D. Tex. May 16, 2008) .................................................... 10

*Bell Atl. Corp. v. Twonbly*,
    550 U.S. 544 (U.S. 2007) ................................................................................................. 3, 4

*Breckenridge Enters., Inc. v. Avio Alternatives, LLC*,
    3:08-CV-1782-M, 2009 WL 1469808 (N.D. Tex. May 27, 2009) ........................................ 9

*Campbell v. Wells Fargo Bank, N.A.*,
    781 F.2d 440 (5th Circ. 1986) .............................................................................................. 3

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ................................................................................................ 4

*Cuthill v. Greenmark, LLC*,
    275 B.R. 641 (Bankr. M.D. Fla. 2002) ............................................................................ 7, 8

*Daly v. Deptula*,
    286 B.R. 480 (D. Conn. 2002) .............................................................................................. 7

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. Tex. 2008) ........................................................................................ 5

*Heldenfels Brothers, Inc. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992) .................................................................................................. 9

*Prophet Capital Mgmt. v. Prophet Equity, LLC*,
    2009 U.S. Dist. LEXIS 88474 (W.D. Tex. Sept. 25, 2009) ................................................. 9

*Quilling v. Stark*,
    3:05-CV-1976-L, 2006 WL 1683442 (N.D. Tex. June 19, 2006) ........................................ 5

*Torch Liquidating Trust v. Stockstill*,
    561 F.3d 377 (5th Cir. 2009) ................................................................................................ 4

*Tuchman v. DSC Communications Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ................................................................................................ 4

**STATUTES**

TEX. BUS. & COM. CODE § 24.005 ................................................................................................. 6

**RULES**

FED. R. CIV. P. 8 ................................................................................................................4

FED. R. CIV. P. 9(b) .........................................................................................................5, 9

FED. R. CIV. P. 12(b)(6) ............................................................................1, 2, 3, 9, 10, 11

**TREATISES**

Black's Law Dictionary......................................................................................................8

**OTHER AUTHORITIES**

Filling in the GAAP:  Will the Sarbanes-Oxley Act Protect Investors
     from Corporate Malfeasance and Restore Confidence in the Securities
     Market?, Andrew F. Kirkendall, 56 SMU L. Rev. 2303, 2311 .................................8

Financial Industry Regulatory Authority "FINRA" .........................................................8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL. | § § § § § | |
| Plaintiff, | § § | Case No. 03:09-CV-0724-N |
| v. | § § | |
| JAMES R. ALGUIRE, ET AL. | § § § | |
| Defendants. | § | |

**KATHLEEN REED'S, MEGAN MALANGA'S, TIMOTHY W. SUMMERS', CARTER DRISCOLL'S, AND JON C. SHIPMAN'S MOTION TO DISMISS RECEIVER'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, Kathleen Reed, Megan Malanga, Timothy W. Summers, Carter Driscoll, and Jon C. Shipman (collectively, "Former Institutional Equity Research Analysts") file their Motion to Dismiss Receiver's Second Amended Complaint ("Receiver's Complaint") and Brief In Support Thereof. For the reasons described below, the Former Institutional Equity Research Analysts request that the Court dismiss the claims asserted against them in the Receiver's Complaint.

### I.  SUMMARY OF ARGUMENT

**A.   The Former Institutional Equity Research Analysts' Severances Were Legitimately Earned Funds**

The Receiver has launched a widespread yet random attack by suing over three hundred former employees at Stanford Financial Group. Some employees, like the Former Institutional Equity Research Analysts, had jobs which had nothing to do with the sale or commission of allegedly fraudulent CD sales.

The Former Institutional Equity Research Analysts worked for Stanford Group Company ("SGC"). The Former Institutional Equity Research Analysts' positions were eliminated in April 2008 and consequently, they were paid a modest severance, as consideration for their release and waiver (the "Severance"). The Receiver, in his zealous quest to recover monies to distribute to claimants, is attempting to claw-back the Severance, which were legitimately earned funds, paid to the Former Institutional Equity Research Analysts roughly two years ago.

B.  **The Receiver's Complaint Failed to State a Claim Against the Former Institutional Equity Research Analysts**

The Receiver has failed to state a claim for which relief can be granted, and the Receiver's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6). The Receiver has alleged nothing more in the Receiver's Complaint than vague statements that "Stanford paid CD Proceeds to the Former Stanford Employees." *See* Receiver's Complaint, ¶ 3. The Receiver boldly states that the "CD sales generated substantially all of the income for the Stanford Defendants," without providing any factual support. *See* Receiver's Complaint, ¶ 2. According to the Receiver, **any** person who ever received funds from the Stanford Financial Group ("SFG") should have to return those funds. Courts have held that the law is not this broad. The Receiver must allege **why** each Former Employee should be required to disgorge those funds, which he failed to do. The Receiver only makes conclusory statements that the Former Institutional Equity Research Analysts were performing services in furtherance of the Ponzi scheme, and that the payments were to motivate the employees to sell more CDs. Yet, the Receiver's Complaint does not contain any factual support or acknowledge that the Former Institutional Equity Research Analysts even sold CDs, which they did not. The Former Institutional Equity Research Analysts wrote research reports on publicly traded securities and industry segments. The Receiver also fails to allege what services the Former Institutional

Equity Research Analysts engaged in furtherance of the alleged Ponzi scheme, especially in light of the fact that the Former Institutional Equity Research Analysts did not sell or research the Stanford CDs. The Former Institutional Equity Research Analysts did not even work for SFG after 2008. For these reasons, the Court should dismiss the Receiver's Complaint with prejudice, because no matter what facts the Receiver tries to allege, he cannot show that the Former Institutional Equity Research Analysts' Severance was anything other than legitimately earned funds, in the ordinary course of business.

C.  The Receiver's Claim for Unjust Enrichment Must Be Dismissed

This Court should also dismiss the Receiver's claim for unjust enrichment. To withstand a 12(b)(6) challenge for unjust enrichment, the Receiver must prove that the Former Institutional Equity Research Analysts were unjustly enriched by fraud, duress, or undue taking. He has not alleged that the Former Institutional Equity Research Analysts were involved in the sale of Stanford CDs, or stated what actions the Former Institutional Equity Research Analysts took that allegedly consisted of fraud, duress, or undue taking. Accordingly, this Court should dismiss the claim for unjust enrichment for failure to state a claim for which relief can be granted.

II.  ARGUMENTS AND AUTHORITIES

A.  The Receiver Has Failed to Plead Sufficient Facts To Support His Claims Against the Former Institutional Equity Research Analysts

1.  Standard of Review For A 12(b)(6) Motion

A claim should be dismissed under Rule 12(b)(6) when Plaintiff has failed to raise factual allegations sufficient to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (U.S. 2007). When considering a motion to dismiss, the Court must accept the facts pleaded as true and construe them in a light favorable to the plaintiff. *Campbell v. Wells Fargo Bank, N.A.*,

781 F.2d 440, 442 (5th Cir. 1986). Courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. A plaintiff, however, "must plead specific facts, not mere conclusory allegations," and "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 384 (5th Circ. 2009); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (explaining that plaintiffs cannot rely on "conclusory allegations" and "unwarranted deductions of fact" to plead their claims); *Alcina v. PCorder.com, Inc.*, 230 F. Supp. 2d 732, 736 (W.D. Tex. 2002) (to avoid dismissal, plaintiff "must come forward with specific supporting allegations, not mere conclusory allegations").

In this case, the Former Institutional Equity Research Analysts should prevail in their Motion because, even accepting the facts pled in the Receiver's Complaint – to the extent they can even be considered facts – as true, the Receiver can prove no set of facts in support of his claims which would entitle him to relief from the Former Institutional Equity Research Analysts.

      **2.**      **The Receiver's Complaint Fails to Meet the Federal Rule of Civil Procedure 8 Pleading Requirements**

It is not clear whether the Receiver is bringing a cause of action under the Uniform Fraudulent Transfer Act ("UFTA"), or a common law fraud claim. This is in violation of the Federal Rules of Civil Procedure pleading requirements under Rule 8. Rule 8 requires that a pleading for relief must contain "a short plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. Plaintiff failed to identify what claim he alleges he is entitled to relief under. *See* Receiver's Complaint, § II. Plaintiff should be required to re-plead and include a plain statement of the cause of action showing he is entitled to relief, so the Former Institutional Equity Research Analysts can adequately prepare a defense of this matter.

> 3. **The Receiver Failed to Assert Facts Sufficient to Support the Claim that The Former Institutional Equity Research Analysts Received a Fraudulent Transfer**
>
>> a. **The Receiver Alleges No Facts Showing the Former Institutional Equity Research Analysts Received a Fraudulent Transfer**

The Receiver's Complaint may be alleging a cause of action against the Former Institutional Equity Research Analysts for fraudulent transfer of proceeds from the Stanford CDs, although it is not clear. If the Receiver is alleging a UFTA claim, the Receiver has not alleged anything more than conclusory allegations, inferences unsupported by facts, and a formulaic recitation of the elements in its complaint. *See generally* Receiver's Complaint. Federal Rule of Civil Procedure 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud." TEX. R. APP. P. 9(b); *See Quilling v. Stark*, 3:05-CV-1976-L, 2006 WL 1683442, at *5 (N.D. Tex. June 19, 2006) (applying Rule 9(b) to fraudulent transfer claims). The Complaint must set forth "who, what, when, where, why and how" surrounding the event. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. Tex. 2008). Before the Receiver is entitled to proceed under this theory, he must plead with particularity and must present facts sufficient to support a cause of action for fraudulent transfer, not just a formulaic recitation of the elements. The Receiver has failed to plead any of the circumstances constituting the alleged fraud.

For the Former Institutional Equity Research Analysts to be liable for fraudulent transfer of proceeds from the Stanford CDs, the Receiver must allege the Former Institutional Equity Research Analysts' transfer was made with actual intent to hinder, delay, or defraud any creditor

of the debtor. Under the Texas Uniform Fraudulent Transfer Act,[1] a transfer is fraudulent if it was made with "actual intent to hinder, delay, or defraud any creditor of the debtor." TEX. BUS. & COM. CODE § 24.005. Although the Receiver alleges a Ponzi scheme was operated, he does not state that the Former Institutional Equity Research Analysts were part of the alleged Ponzi scheme or received funds from the alleged Ponzi scheme, when the alleged Ponzi scheme began, whether the Former Institutional Equity Research Analysts were compensated solely from proceeds of the Ponzi scheme, or whether SGC was even involved with the Ponzi scheme. The Receiver only makes conclusory statements that a Ponzi scheme even existed. In fact, the Former Institutional Equity Research Analysts worked in an entirely different group of SFG and never worked with Stanford CDs or in furtherance of any alleged Ponzi scheme. The Former Institutional Equity Research Analysts in this lawsuit are not the analysts that reported to Stanford Defendant, Laura Pendergest-Holt. The Former Institutional Equity Research Analysts worked in an entirely different division of SFG, (the Capital Markets group) researching institutional securities. They wrote research reports on publicly traded securities and on industry segments. Their target audience was not individual retail investors, but large institutional money managers (i.e. mutual funds, insurance companies, etc.) seeking analysis on corporate securities. The revenue the Capital Markets division generated was not from CD sales, but commissions from institutional stock trading. Accordingly, the Receiver has not alleged any facts sufficient to prove that proceeds from a Ponzi scheme funded the Severance. The Receiver claims that the transfer was made from a Ponzi scheme, but does not specifically plead or show any factual support that private client funds were the source of the Severance to the Former Institutional

---

[1] Again, the Former Institutional Equity Research Analysts are not clear whether this is what the Receiver is alleging. The Receiver should be required to re-plead so the Former Institutional Equity Research Analysts are aware of the claims being brought against them and can adequately plead their defenses

**KATHLEEN REED'S, MEGAN MALANGA'S, TIMOTHY W. SUMMERS', CARTER DRISCOLL'S AND JON C. SHIPMAN'S MOTION TO DISMISS RECEIVER'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 6**

Equity Research Analysts. *See* Receiver's Complaint. As support for its unfounded claim, the Receiver makes conclusory statements such as:

- "[t]he Receiver's investigation to date reveals that CD sales generated substantially all of the income for the Stanford Defendants and many related Stanford entities." *See* Receiver's Complaint, ¶ 2.

- "The CD Proceeds paid to the Former Stanford Employees came not from revenue generated by legitimate business activities, but from monies contributed by defrauded investors." *See* Receiver's Complaint, ¶ 4.

Yet, the Receiver does not provide the dates surrounding the payments, any factual support that the Severance were in fact from proceeds from Stanford CDs or proceeds from the alleged Ponzi scheme, the amounts of the payments received, that the Former Institutional Equity Research Analysts were working with the SFG entities operating the Ponzi scheme. The law does not support such overreaching arguments. According to Debtors' logic, any and all of the funds ever paid by the Stanford Defendants were arguably proceeds from Stanford CDs. Accordingly, every vendor, every employee, and any other party that ever received money from the Stanford Defendants should be required to disgorge those proceeds to the Receiver, because it was a fraudulent transfer. The law simply does not support these theories. *See generally Daly v. Deptula*, 286 B.R. 480, 490 (D. Conn. 2002); *Cuthill v. Greenmark, LLC*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002) (The court did require the brokers to return the funds, but only because "the brokers could not prove good faith because they did not use the minimum due diligence required by brokers selling short term promissory notes."). The Court in *Cuthill* specifically addressed this issue and held that merely conducting a business fraudulently does not make every single payment by the Debtor fraudulent. *Cuthill*, 275 B.R. at 658. The court recognized the absurdity in such a broad application, because every vendor, landlord, even low-level custodial employees would be forced to return their wages. *Id.* The court stated: "[n]o one conducting

business with a debtor operating a Ponzi scheme could prevent the avoidance of payments they received from the debtor, regardless of the extent of the transferee's knowledge or culpability or the actual services provided." *Id.* at 658.  Accordingly, this Court should reject the Receiver's broad application of UFTA and require the Receiver to specifically plead why the Former Institutional Equity Research Analysts should be required to disgorge the Severance.

> b. **The Former Institutional Equity Research Analysts Were Not Brokers And Did Not Sell Any CDs To The Public**

The Receiver's legal support for requiring the Former Institutional Equity Research Analysts to disgorge as fraudulent transfer is not controlling because the cases he cites involve services provided by **brokers**.  *See* Receiver's Complaint, ¶ 38.  The Former Institutional Equity Research Analysts were not brokers.  A broker is defined as a person who acts as an intermediary or negotiator between prospective buyers and sellers.  *See* Black's Law Dictionary.  The Former Institutional Equity Research Analysts were research analysts.  A research analyst performs "company specific and market research to determine and recommend actions which should be taken with regard to a company's security."  Filling in the GAAP: Will the Sarbanes-Oxley Act Protect Investors from Corporate Malfeasance and Restore Confidence in the Securities Market?, Andrew F. Kirkendall, 56 SMU L. Rev. 2303, 2311.  Their main function was to write research reports.  A research report is defined by Financial Industry Regulatory Authority "FINRA" as a written or electronic communication which includes an analysis of equity securities of individual companies or industries, and which provides information reasonably sufficient upon which to base an investment decision and includes a recommendation." FINRA Website, http://www.finra.org/web/groups/industry/@ip/@reg/@rulfil/documents/rulefilings/p000446.pdf (last accessed April 13, 2010).  The Former Institutional Equity Research Analysts were involved in the analysis of publicly traded securities (and not the Stanford CDs).

**KATHLEEN REED'S, MEGAN MALANGA'S, TIMOTHY W. SUMMERS', CARTER DRISCOLL'S AND JON C. SHIPMAN'S  MOTION TO DISMISS RECEIVER'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 8**

The Receiver has not identified in his complaint the positions of the Former Stanford Employees or their involvement with the Stanford CDs, because the Receiver has no facts supporting his claims. The logic behind requiring disgorgement from a broker that received funds for the sale of the fraudulent security is much different than requiring an innocent employee with no involvement in the Stanford CDs to disgorge money rightfully earned and received.

Further, the Receiver claims that because the Stanford Defendants were allegedly operating a Ponzi scheme, the proceeds received by each Former Employee were proceeds from the Stanford CDs. This is an inference unsupported by facts which is insufficient to withstand a 12(b)(6) motion. This Court should dismiss this cause of action and not allow such vague, conclusory and unsupported pleadings and prevent innocent and uninvolved citizens from being sued and forced to defend themselves against unfounded claims. Accordingly, the Former Institutional Equity Research Analysts' Motion should be granted.

### 4. The Receiver's Complaint Fails to Assert Facts Sufficient to Support a Claim for Unjust Enrichment

The Receiver has failed to state a claim upon which relief can be granted with regard to its allegation that the Former Institutional Equity Research Analysts were unjustly enriched. The Receiver has failed to meet the heightened pleading requirement of Rule 9(b). This court has held that 9(b) applies to unjust enrichment when the underlying claim is for fraud. *Breckenridge Enters., Inc. v. Avio Alternatives, LLC*, 3:08-CV-1782-M, 2009 WL 1469808, *10 (N.D. Tex. May 27, 2009). In order to prevail on a claim for unjust enrichment the receiver must allege that the Former Institutional Equity Research Analysts have obtained a benefit by "fraud, duress, or the taking of undue advantage." *Prophet Capital Mgmt. v. Prophet Equity, LLC*, 2009 U.S. Dist. LEXIS 88474 (W.D. Tex. Sept. 25, 2009) (citing *Heldenfels Brothers, Inc. v. City of Corpus

*Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Baisden v. I'm Ready Prods.*, 2008 U.S. Dist. LEXIS 39949 (S.D. Tex. May 16, 2008). A 12(b)(6) motion is proper on a claim for unjust enrichment if the Receiver does not show that the Former Institutional Equity Research Analysts received a benefit that was obtained by fraud, duress, or the taking of undue advantage. *Id.* In *Baisden*, the court held that the plaintiff's allegations of unjust enrichment were factually insufficient because the plaintiff could not present any facts demonstrating that the defendant had been unjustly enriched by a benefit obtained from plaintiff by fraud, duress, or the taking of undue advantage. *Baisden*, 2008 U.S. Dist. LEXIS 39949, *32.

The Receiver has likewise failed to plead sufficient facts to support his claim that the Former Institutional Equity Research Analysts obtained any benefits by fraud, duress, or the taking of undue advantage. In fact, the Receiver has not alleged any actions by the Former Institutional Equity Research Analysts that are capable of proving that the Former Institutional Equity Research Analysts unjustly received a benefit by fraud, duress, or the taking of undue advantage. Again, the Receiver makes a series of inferences and conclusory statements and only makes allegations regarding other parties' wrongdoing in the Receiver's Complaint:

- "When Stanford paid CD proceeds to the Former Stanford Employees, he did no more than take money out of investors' pockets and put it into the hands of the Former Stanford Employees." *See* Receiver's Complaint, ¶ 3.

- "The Stanford Defendants kept their fraudulent scheme going by employing the Former Stanford Employees to lure new investors and then divert the investors' funds for the Stanford Defendants' own illicit purposes." *See* Receiver's Complaint, ¶ 4.

- "The Stanford Defendants used an elaborate and sophisticated incentive program to keep the Former Stanford Employees highly motivated to sell SIBL CDs to brokerage customers." *See* Receiver's Complaint, ¶ 28.

- "CD proceeds from the fraudulent Ponzi scheme described above were transferred by the Stanford Defendants to the Former Stanford

**KATHLEEN REED'S, MEGAN MALANGA'S, TIMOTHY W. SUMMERS', CARTER DRISCOLL'S AND JON C. SHIPMAN'S MOTION TO DISMISS RECEIVER'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 10**

> Employees solely for the purpose of concealing and perpetuating the fraudulent scheme." *See* Receiver's Complaint, ¶ 30.
>
> - "The Former Stanford Employees either performed no services in exchange for the CD Proceeds or performed only services that were in furtherance of the Ponzi scheme in exchange for the CD Proceeds." *See* Receiver's Complaint, ¶ 30.

The Receiver has failed to allege the facts which link such allegations to the Former Institutional Equity Research Analysts and how they allegedly received a benefit by fraud, duress, or taking of undue advantage through their Severance at the time of their restructuring. There is no factual support that the Former Institutional Equity Research Analysts were engaged in furtherance of the Ponzi scheme, and the Receiver's conclusory statements above are insufficient to survive a 12(b)(6) motion. The Receiver does not allege the dates any of the alleged funds were received by the Former Institutional Equity Research Analysts or the circumstances surrounding the receipt of the funds. All the Receiver states is that the employees received "Loans, high SIBL CD Commission rates, SIBL Quarterly Bonuses, PARS Payments, Branch Managing Director Quarterly Compensation, and Severance Payments all closely tied to maintaining the Stanford Defendants' portfolio of CDs." *See* Receiver's Complaint, ¶ 28. But the Former Institutional Equity Research Analysts, for example, are only alleged to have received a Severance which was paid in consideration for their termination from their employment. The Receiver alleges no factual support that the Severance in connection with the 2008 restructuring was somehow connected with/or was from the "Stanford Defendants' portfolio of CDs." *See* Receiver's Complaint, ¶ 28.

The Receiver cannot allege any facts that the Former Institutional Equity Research Analysts, by receiving a proper and modest Severance, were unjustly enriched by taking undue

advantage, fraud, or duress. Accordingly, this Court should dismiss the Receiver's claim for unjust enrichment for failure to state a claim upon which relief can be granted.

### III.   CONCLUSION

The Court should dismiss both of the Receiver's causes of action against the Former Institutional Equity Research Analysts for failure to state a claim upon which relief can be granted. The Receiver must allege facts sufficient to prove that the Former Institutional Equity Research Analysts are liable, and the Receiver cannot do so. The Receiver has alleged no facts supporting his claim that the Former Institutional Equity Research Analysts received proceeds from the sale of Stanford CDs, thus making them liable for fraudulent transfers. Further, the Receiver's erroneous interpretation of Texas law is so broad, that any person who *ever* received any proceeds from the Stanford CDs should be forced to return those funds. The law does not support such a preposterous position. The Court should also dismiss the unjust enrichment claim because the Receiver has no factual support for his allegation that the Former Institutional Equity Research Analysts were unjustly enriched by fraud, duress, or taking of undue advantage. The only allegations in the Receiver's Complaint refer to the Stanford Defendants, not the Former Institutional Equity Research Analysts. There are not even any facts showing the Former Institutional Equity Research Analysts were aware of the Stanford CDs. Accordingly, this Court should dismiss both claims because the Receiver does not have any factual support for either claim against the Former Institutional Equity Research Analysts.

DATE: April 16, 2010.

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: */s/ Tricia R. DeLeon* _____
   Tricia R. DeLeon
   State Bar No. 24005885
   Janelle S. Forteza
   State Bar No. 24058811

1445 Ross Avenue, Suite 3800
Dallas, Texas 75202-2711
Telephone: (214) 468-3800
Facsimile: (214) 468-3888

ATTORNEYS FOR DEFENDANTS,
KATHLEEN REED, MEGAN MALANGA,
TIMOTHY W. SUMMERS, CARTER DRISCOLL,
AND JON C. SHIPMAN

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Motion was electronically filed on April 16, 2010, and served on all parties receiving electronic notice from the Court's ECF notification system in the above-referenced case.

*/s/ Tricia R. DeLeon* _____
Tricia R. DeLeon

412824.5