IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY,                    §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §        Civil Action No. 3:09-CV-0724-N
                                    §
JAMES R. ALGUIRE, *et al.*,          §
                                    §
        Defendants.                 §

## ORDER

This Order addresses various former Stanford employees' (the "Employee Defendants")[1] motions to dismiss [201, 203, 204, 211, 234, 305, 387, 403, 407, 408, 427, 488]. For the reasons that follow, the Court denies the motions.[2]

## I. ORIGINS OF THE RECEIVER'S ASSET RECOVERY ACTION

This dispute arises out of the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (the "Stanford Defendants"). As part of that litigation, this Court appointed a receiver (the "Receiver") and authorized him to commence any actions necessary to recover assets of the Receivership Estate. *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank, Ltd.*, Civil

---

[1] The more-than 300 Employee Defendants are listed in the appendix to the Receiver's second amended complaint against former Stanford employees [157].

[2] Some of the Employee Defendants' motions contain both motions to compel arbitration and motions to dismiss. The Court previously denied the motions to compel arbitration. *See* Order of Aug. 26, 2011 [688].

Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).  Pursuant to those powers, the Receiver filed this action to recover approximately $760 million in alleged Stanford International Bank, Ltd. ("SIB") certificate of deposit ("CD") proceeds paid to certain Stanford investors (the "Investor Defendants") and the Employee Defendants.  *See* First Am. Compl. Against Certain Stanford Investors (the "Investor Complaint") [128]; Investor Compl. App. [129]; Second Am. Compl. Against Former Stanford Employees (the "Employee Complaint") [156]; Emp. Compl. App. [157].

The Receiver alleges that the Employee Defendants, through their work, furthered the Stanford Defendants' scheme and in return received compensation in the form of "salaries[,] Loans, SIB[] CD commissions, SIB[] Quarterly Bonuses, Performance Appreciation Rights Plan ("PARS") Payments, Branch Managing Director Quarterly Compensation, and Severance Payments (collectively, CD Proceeds)."  Employee Compl. at 2.  The Receiver attributes to the Employee Defendants a minimum of approximately $215 million in CD Proceeds.  *See* Employee Compl. at 16.  Various Employee Defendants now move to dismiss the Employee Complaint under Federal Rules of Civil Procedure 8(a), 9(a), 12(b)(1), 12(b)(2), 12(b)(6).

## II. The Court Has Jurisdiction Over the Receiver's Claims and the Parties

Various Employee Defendants move to dismiss under Rule 12, almost exclusively arguing that the Receiver fails to state claims.  As mandated by Fifth Circuit caselaw, however, the Court first addresses Defendant Crimmins's contention that the Court lacks both subject matter and personal jurisdiction under Rules 12(b)(1) and (b)(2).  *See Ramming*

*v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

### A. Subject Matter Jurisdiction Standard

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)), and should "grant[] [the motion] only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders*, 143 F.3d at 1010).[3]  In reality, "the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Nowak*, 81 F.3d at 1188.  The plaintiff bears the burden of proof in the Rule 12(b)(1) context. *See Ramming*, 281 F.3d at 161.

### B. The Court Has Subject Matter Jurisdiction

Crimmins proceeds *pro se*, and the Court liberally construes his objections.  Even liberally construed, however, Crimmins's subject matter jurisdiction argument consists of a conclusory statement that "the Receiver has . . . failed to establish subject matter

---

[3]Query whether courts should continue to conduct this old-school Rule 12(b)(6)-like analysis in light of the Supreme Court's decisions in *Twombly* and *Iqbal*.  *See Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

jurisdiction." Crimmins's Mot. to Dismiss and Answer at 2 [488]. Crimmins does "admit[] that as the Court that appointed the Receiver, this Court may have jurisdiction over any claim brought by the Receiver to execute his Receivership duties." *Id.* at 3. The Court therefore construes Crimmins's argument as one directed at the Receiver's standing given parallel liquidation proceedings in Antigua, a contention raised in this case primarily by Investor Defendants. The Receiver lacks standing to prosecute this action, the argument goes, because he stands in SIB's shoes, and SIB is a foreign entity subject to the jurisdiction of Antiguan courts and regulatory entities. Because those authorities have placed SIB in liquidation in separate proceedings, comity allegedly precludes the Receiver from asserting SIB's choses of action because bringing claims on SIB's behalf inherently conflicts with the Antiguan liquidators' and receivers' authority.

To the extent Crimmins makes this argument, it depends on a cramped interpretation of the Receiver's authority. In denying the Employee Defendants' motions to compel arbitration, the Court adopted the Fifth Circuit's withdrawn arbitrability ruling in *Janvey v. Alguire*, 628 F.3d 164 (5th Cir. 2010), *superseded by* 2011 WL 2937949 (5th Cir. 2011) (publication pending). *See also* Order of Aug. 26, 2011, at 3-7. Under the reasoning in that opinion, the Receiver's hybridized powers allow him to stand in the shoes of the Stanford Defendants and also represent creditors in their recovery efforts. *See id.* at 3-7 (observing that receivers are "legal hybrids" who "stand[] in the shoes of the person for whom [they] ha[ve] been appointed," serve as "instrument[s] of the court . . . acting also for the stockholders . . . and creditors of the corporation," and "are imbued with rights and obligations analogous to the various actors required to effectively manage an estate in the

absence of the 'true' owner" (internal quotation marks and citations omitted)).   In that capacity, the Receiver has standing to bring creditors' TUFTA claims.  The Court therefore need not address Crimmins's potential comity-based arguments.  As the Receivership Court, it properly exercises subject matter jurisdiction over this ancillary asset recovery action brought on behalf of the Stanford Defendants' creditors.

### C. The Court Has Personal Jurisdiction over Crimmins and any Property in His Custody or Control Traceable to the Receivership Estate

Crimmins also "moves that the Receiver's complaint be dismissed for lack of personal jurisdiction."  Crimmins's Mot. to Dismiss and Answer at 2.  Specifically, he "denies that this Court has in rem or in personam jurisdiction over [him]" and argues "that venue is not proper in this Court."  *Id.* at 3.  The Court disagrees.

The Court has personal jurisdiction over Crimmins and any assets in his possession potentially traceable to the Receivership Estate for two reasons.  First, Crimmins resides in Houston, Texas, and admits that he worked for SGC in Houston.  The portion of the Receivership Estate allegedly in his possession, then, presumably may also be found in Houston.  Accordingly, the Court has personal jurisdiction based on Crimmins's presence in the forum state.  *See, e.g.*, *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374-75 (5th Cir. 2003); FED. R. CIV. P. 4(k)(1)(A).

Second, applicable statutes permit the nationwide exercise of personal jurisdiction in actions to recover receivership assets.  As a general matter, courts have consistently held that minimum contacts analysis does not apply to receivership actions.  *See, e.g.*, *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822-26 (6th Cir. 1981); *accord SEC v. Ross*, 504 F.3d

1130, 1145-46 (9th Cir. 2007); *SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287 (D.C. Cir. 1996).

They have done so because "[a]n ancillary receivership action does not involve an attempt

by a state court or a federal court sitting in diversity to extend its power beyond its territorial

limits through the use of a state long-arm service of process statute." *Haile*, 657 F.2d at 823.

Instead, "by statute, the territorial jurisdiction of the appointing court is extended to any

district of the United States where property believed to be that of the receivership estate is

found." *Id.*  As a necessary corollary to that principle, a receiver has standing to bring

ancillary recovery actions in the appointing court regardless of the jurisdiction in which

property traceable to the entities in receivership may be located.  This power flows from the

plain language of 28 U.S.C. § 754, which provides that "[a] receiver appointed in any civil

action or proceeding involving property, real, personal or mixed, situated in different districts

shall . . . be vested with complete jurisdiction and control of all such property with the right

to take possession thereof."

Section 754 and 28 U.S.C. § 1692 provide the appropriate statutory authority for the

Court's exercise of personal jurisdiction in this case.  By allowing a receiver and district

court to exercise jurisdiction over purported receivership estate property, section 754 serves

"as a stepping stone on [a court's] way to exercising *in personam* jurisdiction" over those

persons having custody or control over the property at issue.  *Vision Commc'ns*, 74 F.3d at

290.  Once a receiver files the appropriate documents pursuant to section 754, he may then

serve process in that district under section 1692.[4]  *See id.*; *see also Haile*, 657 F.2d at 826

---

[4]Section 1692 provides: "In proceedings in a district court where a receiver is
appointed for property, real, personal, or mixed, situated in different districts, process may

("The process authorized by § 1692 is not 'extra-territorial' but rather nationwide."). Thus,

"where a party has been properly served by the Receiver, the Due Process Clause is satisfied

because the party has minimum contacts with the United States as a whole." *Ross*, 504 F.3d

at 1146 (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104-106

(1987)); *accord Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822 (5th

Cir. 1996) (following *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th

Cir. 1994)).

Under this standard, the Court has personal jurisdiction over Crimmins. The Receiver

acted pursuant to his duties under the Receivership Order and section 754 and filed the

appropriate documents in the Southern District of Texas. In doing so, he obtained both *in

rem* jurisdiction over Receivership Estate property in Crimmins's custody or control and the

ability to serve process in the Southern District of Texas under the nationwide service

provisions of section 1692. The Receiver subsequently filed this action to recover

Receivership Estate assets Crimmins allegedly received through his association with the

Stanford Defendants' scheme. Thus, the appropriate due process inquiry concerns whether

the Receiver properly served Crimmins with process. Given the Receiver's compliance with

section 754, he could effectuate service of process under section 1692 in the district in which

Crimmins resides and conducts business. This satisfies due process in the receivership

context. *See Haile*, 657 F.2d at 825 (holding that the "due process limitations on [statutorily-

authorized nationwide service of process] should be precisely the limitations applicable on

---

issue and be executed in any such district as if the property lay wholly within one district, but
orders affecting the property shall be entered of record in each of such districts."

a state's process within its territorial limits[:] notice calculated to inform the defendant of the pendency of the suit"). Crimmins does not contend that service in this instance insufficiently apprised him of the Receiver's action or its nature. Accordingly, the Court properly exercises personal jurisdiction.[5]

### III. THE RECEIVER STATES VALID CLAIMS

Various Employee Defendants also object under Rule 12(b)(6), arguing that the Receiver fails to state fraudulent transfer and unjust enrichment claims.

### A. Rule 12(b)(6) Standard

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

As the Supreme Court recently observed:

---

[5]As the Receivership Court, this Court is also the proper venue for this action.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)].  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."  F{\small ED}. R. C{\small IV}. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### B. The Receiver States a Fraudulent Transfer Claim

**1. The Court Applies Texas Law.** — The Receiver sufficiently identifies TUFTA as the "applicable fraudulent transfer law."  Employee Compl. at 14 ("under applicable fraudulent transfer law . . . .  *See, e.g.*, T{\small EX}. B{\small US}. & C{\small OM}. C{\small ODE} A{\small NN}. § 24.013 (Vernon

2009).”); *see also* TEX. BUS. & COM. CODE § 24.001, *et seq.* The Employee Defendants quibble over whether Texas law applies. *See, e.g.*, Alguire Mot. to Compel Arbitration and to Dismiss at 14-15 [201]. None, however, specifically argue or present evidence that another state's Uniform Fraudulent Transfer Act (“UFTA”) provides the appropriate substantive law. And, Texas choice of law rules require the party urging application of another state's substantive law to “furnish[] [the Court] with ‘sufficient information’ to establish [that] the law of another state” applies. *Holden v. Capri Lighting, Inc.*, 960 S.W.2d 831, 833 (Tex. App. – Amarillo 1997, no pet.) (citing *Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex. 1963); Olin Guy Wellborn, *Judicial Notice Under Article II of the Texas Rules of Evidence*, 19 ST. MARY'S L.J., 1, 27 (1987)); *cf. Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (“[A] movant for summary judgment seeking to have the law of another state applied must satisfy its burden of proof with respect to fact questions necessary to the choice of law decision.”).

Moreover, “the failure to provide adequate proof [of choice of law] . . . results in a presumption that the law of the foreign jurisdiction is identical to the law of Texas.” *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App. – Corpus Christi 1999, pet. den.) (citing *Holden*, 960 S.W. 2d at 833). That presumption is especially apposite in the TUFTA context because the Texas Legislature adopted TUFTA with the specific purpose that it be applied uniformly with other states’ versions of the Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM. CODE § 24.012 (“This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this

chapter among states enacting it."). Thus, any differences between TUFTA and another state's UFTA are likely to be negligible.

Finally, the Court looks to Texas law because at this juncture TUFTA effectively has become law of the case. The Court's preliminary injunction applied TUFTA [456], and the Fifth Circuit accepted the Receiver's assertion that TUFTA supplied the relevant "'standards . . . [of] substantive law.'" *Alguire*, 2011 WL 2937949, at *8 (quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)). Accordingly, the Court applies Texas law.

**2. The Receiver's TUFTA Claim Satisfies Rule 12(b)(6).** — In general, TUFTA operates to void certain fraudulent "transfers," which the statute defines in relevant part as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money." TEX. BUS. & COM. CODE § 24.002(12). TUFTA considers several types of transfers to be fraudulent. *See id.* §§ 24.005(a) (three types); 24.006 (two types). Because the Receiver alleges that the "Stanford Defendants transferred the CD Proceeds to the [Employee Defendants] with actual intent to hinder, delay, or defraud their creditors," Employee Compl. at 12, his claim concerns fraudulent transfers under section 24.005(a)(1).

Section 24.005(a)(1) provides that a transfer "is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." "In determining [a debtor's] actual intent," courts may consider, "among other factors[,] . . . whether . . . the value of the consideration received by the debtor was reasonably equivalent to the value of

the asset transferred or the amount of the obligation incurred" and if "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." *Id.* § 24.005(b)(8) & (b)(9).  Notably, TUFTA considers a debtor to be insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." *Id.* § 24.003(a).

The Fifth Circuit considers a Ponzi scheme to be, "'as a matter of law, insolvent from its inception.'" *Alguire*, 2011 WL 2937949, at *9 (quoting *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006)); *see also Quilling v. Schonsky*, 247 F. App'x 583, 586 (5th Cir. 2007) (citation omitted).  The Receiver therefore may establish fraudulent intent by showing that the Stanford enterprise operated as a Ponzi scheme.  *See Warfield*, 436 F.3d at 558 ("The Receiver's proof that [the debtors] operated as a Ponzi scheme establishe[s] the fraudulent intent behind transfers made by [the Receivership entities]." (citing *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995))); *see also Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud.") (citations and internal quotation marks omitted) (alteration in original).

> A [P]onzi scheme is a scheme whereby a corporation operates and continues to operate at a loss. The corporation gives the appearance of being profitable by obtaining new investors and using those investments to pay for the high premiums promised to earlier investors. The effect of such a scheme is to put the corporation farther and farther into debt by incurring more and more liability and to give the corporation the false appearance of profitability in order to obtain new investors.

*Alguire*, 2011 WL 2937949, at *9 (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 n.3 (2d Cir. 1995)) (alteration in original).

ORDER – PAGE 12

For defendants facing a section 24.005(a)(1) "actual intent" claim, TUFTA provides a statutory defense if the defendants "took in good faith and for a reasonably equivalent value." TEX. BUS. & COM. CODE § 24.009(a).  A transferee invoking this defense has the burden to show both objective good faith and the exchange of reasonably equivalent value. *See, e.g.*, *Hahn v. Love*, 321 S.W.3d 517, 526 (Tex. App. – Houston [1st Dist.] 2009, pet. den.) (citations omitted).[6]  The transferee's knowledge is irrelevant to determining whether transfers were made with an intent to defraud.  *See, e.g.*, *Schonsky*, 247 F. App'x at 586.[7] Nor does it matter that the transferee no longer possesses the funds giving rise to the TUFTA claim.  A TUFTA plaintiff seeks to recover "judgment for the value of the asset transferred," TEX. BUS. & COM. CODE § 24.009(b), not the specific asset itself, which in many cases left the defendant's possession long ago.  Thus, spending Ponzi scheme proceeds does not shield a recipient of fraudulently-transferred funds from liability.  *See, e.g.*, *Donell*, 533 F.3d at 776 & n.9 (noting, in case where a receiver brought an UFTA claim against a recipient of Ponzi scheme funds, that disgorgement may occur "years after the money has been received and spent" and that such a result is "yet another common tragic result of a Ponzi scheme").

---

[6]Section 24.009(a) also prohibits recovery "against any subsequent transferee or obligee."

[7]Because no Supreme Court of Texas cases address the requisite mental state for a transferee-defendant under TUFTA, the Fifth Circuit in *Schonsky* made its best "*Erie* guess" as to the proper construction of the statute.  247 F. App'x at 586 & n.2.  This accords with the plain language of TUFTA, which posits that transfers are fraudulent "if the *debtor* made the transfer or incurred the obligation with actual intent . . . ."  TEX. BUS. & COM. CODE § 24.005(a)(1) (emphasis added).

The Receiver states a TUFTA claim.   He alleges that the Stanford Defendants operated a Ponzi scheme, pleading the actual-intent-to-defraud element necessary to state a claim under section 24.005(a)(1).   *See* Employee Compl. at 6-9.   The Receiver also contends that "CD Proceeds from the fraudulent Ponzi scheme . . . were transferred by the Stanford Defendants to the [Employee Defendants] solely for the purpose of concealing and perpetuating the fraudulent scheme" and "were paid to the [Employee Defendants] from funds supplied by investors who bought the fraudulent CDs."[8]   *Id.* at 10.   The Employee Defendants do not establish that they qualify for TUFTA's affirmative defense, and another one does not present itself on the Employee Complaint's face.   *See Clark v. Amoco Prod. Inc.*, 794 F.2d 967, 970 (5th Cir. 1986) (noting that a court should grant dismissal under Rule 12(b)(6) "if a successful affirmative defense appears clearly on the face of the pleadings.") (citations omitted).   Accordingly, the Receiver's fraudulent transfer claim survives the Employee Defendants' Rule 12(b)(6) challenge.

### C. The Receiver States That He Is Entitled to Unjust Enrichment Disgorgement

---

[8]The Receiver need not identify the specific transfers.   As pled, the Receiver implicates all transfers from the scheme to the Employee Defendants made in the form of "salaries[,] Loans, SIB[] CD commissions, SIB[] Quarterly Bonuses, Performance Appreciation Rights Plan ("PARS") Payments; Branch Managing Director Quarterly Compensation, and Severance Payments."   Employee Compl. at 2.   *Cf. Alguire*, 2011 WL 2937949, at *11.

> The Employee Defendants also argue that the district court erred in grouping all the transactions rather than examining evidence of claims against individuals.   Contrary to the Employee Defendants' assertion, the district court found that the Receiver came forward with "competent evidence that each individual [Employee Defendant] received transfers of money representing CD sale proceeds from the Stanford Ponzi scheme."   We agree.

(quoting Prelim. Inj.)).

"Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits," regardless of whether the defendant engaged in wrongdoing. *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. – Dallas 2009, pet. den.) (citations omitted).[9] "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Id.* (citation omitted). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citations omitted).

Although various Employee Defendants characterize the Receiver's alternative claim as one for unjust enrichment – and, indeed, the Receiver notes he amended his complaint to add "unjust-enrichment claims," Employee Compl. at 4, 5 – the Receiver more properly pleads unjust enrichment as an equitable doctrine that entitles him to disgorgement pursuant to unspecified "applicable law." Employee Compl. at 15. That clarification is potentially crucial; some Texas authorities hold that plaintiffs cannot state a claim for unjust enrichment as an independent cause of action under Texas law. *See, e.g.*, *Casstevens v. Smith*, 269 S.W.3d 222, 229 (Tex. App. – Texarkana 2008, pet. den.). Some Texas courts – including the Supreme Court of Texas – however, have suggested otherwise. *See, e.g.*, *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 682-86 (Tex. 2000) (upholding summary

---

[9]Based on the parties' choice-of-laws showing on the Receiver's fraudulent transfer claims, the Court applies Texas law to the Receiver's alternative claim.

judgment on some of plaintiff's unjust enrichment claims); *see also McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 828 (Tex. App. – Dallas 2010, pet. den.) (upholding trial court's grant of summary judgment on claims for both unjust enrichment and money had and received); *Texas Integrated*, 300 S.W.3d at 367, 380-81 (discussing plaintiff's "unjust enrichment claim" and "elements" comprising such a claim); *accord Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 739 (N.D. Tex. 2008) (Godbey, J.) (noting that "it is unclear under Texas law whether unjust enrichment is an independent cause of action") (citations omitted).

Given this varied authority, the Receiver's failure to identify the specific cause of action that provides an unjust enrichment remedy is not fatal to his alternative claim.  Texas courts have read claims for "unjust enrichment" as pleading an equitable common law claim for money had and received.  *See, e.g.*, *London v. London*, 192 S.W.3d 6, 12-14 (Tex. App. – Houston [14th Dist.] 2005, pet. den.) (noting, in case where *pro se* plaintiff brought unjust enrichment claim, that "[a]n action for money had and received is an equitable doctrine that courts apply to prevent unjust enrichment") (citation omitted).  Indeed, the two claims are substantively identical.  *See id.* ("[A claim for money had and received] is not premised on wrongdoing, but looks to the justice of the case and inquires whether the party has received money that rightfully belongs to another.") (citation omitted); *see also Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951) ("'The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong.  All plaintiff need show

is that defendant holds money which in equity and good conscience belongs to him.'" (quoting 58 C.J.S. MONEY RECEIVED § 4a, at 913)).[10]

Regardless of whether Texas law allows an "unjust enrichment" claim or requires pleading a claim for money had and received, the Receiver states claims under either "applicable law." Employee Compl. at 15. The Receiver alleges that "[t]he Stanford Defendants kept their fraudulent scheme going by employing the [Employee Defendants] to lure new investors and then divert the investors' funds for the Stanford Defendants' own illicit purposes." *Id.* at 2. Because the sale of SIB CDs allegedly "generated substantially all of the income for the Stanford Defendants and the many related Stanford entities," *id.* at 1, the "CD Proceeds paid to the [Employee Defendants] came not from revenue generated by legitimate business activities, but from monies contributed by defrauded investors." *Id.* at 2. Thus, according to the Receiver, the Employee Defendants' compensation effectively constituted "little more than stolen money" properly belonging to the Stanford Defendants' creditors and thus the Receivership Estate. *Id.* Together, these claims allege that the Employee Defendants obtained a benefit from the Stanford Defendants' scheme that equity

---

[10]Courts also have wide latitude in considering a claim for money had and received. *See Staats*, 243 S.W.2d at 687-88 ("[A] cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which . . . belongs to the plaintiff.'" (quoting *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402-03 (1934))) (omission in original).

dictates they cannot retain justly. Accordingly, the Court declines to dismiss the Receiver's alternative claim.[11]

## IV. THE RECEIVER COMPLIES WITH RULES 8 AND 9

### A. The Receiver States Claims Under Rule 8(a)

Various Employee Defendants raise Rule 8(a) objections to the Employee Complaint. They almost exclusively argue that the Receiver has failed to sufficiently identify both claims for relief and the state providing the appropriate choice of law. *See* FED. R. CIV. P. 8(a). Rule 8(a) requires a complaint to make "(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

As the Receivership Court, this Court has subject matter jurisdiction over the Receiver's ancillary asset recovery actions. The Court has already determined that the Receiver brings Texas law claims that satisfy Rule 12(b)(6). And, the Receiver explicitly asks for multiple, specific forms of relief, including disgorgement. *See* Employee Compl. at 22-24. Accordingly, the Employee Complaint satisfies Rule 8(a)'s pleading requirements.

---

[11]The Court also does not require the Receiver to replead under either specific theory. *Cf. Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) ("A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged."); *see also Roark v. Allen*, 633 S.W.2d 804, 809-10 (Tex. 1982). The facts pled here do not require the Court to make an inferential leap of any magnitude. The "elements" of both causes of action are present, well-pled, and give the Employee Defendants adequate notice to prepare their defense.

### B. The Receiver Pleads in Compliance with Rule 9(b)

The final objection raised by some Employee Defendants contends that the Employee Complaint fails to meet the heightened pleading requirements of Rule 9(b).  These Employee Defendants generally argue that, even in the context of fraudulent transfer claims against nonparties to the Ponzi scheme, the Receiver must specify the "'who, what, when, where, and how' of the alleged fraud."  *See, e.g.*, Defendant Razvi's Mot. to Dismiss at 2-3 (citation omitted) [427].  Additionally, the Employee Defendants believe the Employee Complaint fails because, essentially, it does not catalogue the specific transactions subject to its allegations.[12]

The parties provide no controlling Fifth Circuit authority that applies a heightened pleading requirement to TUFTA claims.  The issue appears to be an open question in the Fifth and some other circuits.  *See, e.g.*, *Biliouris*, 559 F. Supp. 2d at 736 (noting that the Fifth Circuit has not addressed the effect of Rule 9(b) on TUFTA claims (citing *Quilling v. Stark*, 2006 WL 1683442, at *5 (N.D. Tex. 2006) (Lindsay, J.))); *Wing v. Horn*, 2009 WL 2843342, at *3 (D. Utah 2009) (noting that "[t]he applicability of Rule 9(b) to UFTA claims [was] an issue of first impression in the Tenth Circuit").  The courts that have considered the matter have arrived at different conclusions, often by drawing a distinction between intentional and constructive fraudulent transfer claims.  *See, e.g.*, *Kranz v. Koenig*, 240 F.R.D. 453, 455-56 (D. Minn. 2007) (collecting cases).

---

[12]The Court has already addressed this Rule 8(a)- and 12(b)(6)-like argument.  As the Court noted above, the Receiver's claims implicate nearly every transfer the Employee Defendants received from the Stanford Defendants.  *See supra* note 8.

"[T]he Court can find no principled reason for applying Rule 9's pleading requirements to . . . the Receiver's fraudulent transfer claims" for the same reasons given by the *Wing* Court.  *Wing*, 2009 WL 2843342, at *5.  In the fraudulent transfer context

> [t]here is no allegation that the [d]efendant committed any act of fraud; indeed, the defendant's conduct is simply not an element of the Receiver's claim. Furthermore, the Court finds that the distinction between intentional fraudulent transfer and constructive fraudulent transfer claims drawn by other courts addressing the applicability of Rule 9 to fraudulent transfer cases is not helpful in Ponzi scheme cases in which "actual intent" can be inferred by virtue of the transferor's insolvency as a matter of law.  Finally, the Court finds that this inference of fraudulent intent applies to all transfers from a Ponzi scheme, regardless of the defendant's characterization of them as ordinary business transactions.

*Id.*

This conclusion comports with a fairly recent Northern District of Texas TUFTA case. *See GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, 2009 WL 5173954, at *10 (N.D. Tex. 2009) (Lindsay, J.) ("[Plaintiffs have] not alleged *fraud* against PlainsCapital or Moving Defendants, which is the contemplation of Rule 9(b).  Plaintiffs have merely alleged that Moving Defendants were the recipient of funds fraudulently obtained.  Nothing in the complaint or record indicates that Moving Defendants committed any fraudulent act that caused the funds to be transferred.") (emphasis in original).[13]  Indeed, it aligns with several

---

[13]The *GE Capital* decision reached a different result on different facts than an earlier opinion by the same judge in *Quilling*, which held that Rule 9(b) applied to TUFTA claims. *See Quilling*, 2006 WL 1683442, at *5 (citing holding in *Ind. Bell Tel. Co. v. Lovelady*, 2006 WL 485305, at *1 & n.10 (W.D. Tex. 2006)).  *Indiana Bell* relied on *Brunswick Corp. v. Vineberg*, a Fifth Circuit case concerning in part a predecessor to Florida's UFTA.  *See* 2006 WL 485305, at *1 ("'The complaint[] alleg[ed] a scheme to divest Bowl of all of its valuable assets except the Brunswick equipment so that Brunswick's opportunity to collect on its debt was diminished. . . . ' And there, the Court found Rule 9(b) applicable: 'We are  . . . convinced that the specific acts of fraud alleged here satisfy [Rule 9].'" (quoting 370 F.2d

recent cases involving other states' UFTAs.[14]  Accordingly, the Receiver's TUFTA claim

need not satisfy Rule 9(b).

Even if it did, the Court finds that the Employee Complaint alleges fraud with

sufficient particularity to avoid dismissal.  The Receiver has provided the Employee

---

605, 608-09 (5th Cir. 1967))) (omissions and some alterations in original; footnote omitted).

As suggested by the *Brunswick* Court's reference to "specific acts of fraud," however, that case provides limited guidance here.  The *Brunswick* plaintiff alleged that the defendants there directly engaged in fraudulent conduct – conspiring to effect transfer of the plaintiff's bowling equipment to a corporation under the defendants' control.  *See* 370 F.2d at 607.  The *Brunswick* Court, moreover, simply held that the facts alleged there passed Rule 9(b) muster; the court made no suggestion, let alone a specific holding, that all fraudulent transfer claims implicate Rule 9(b).  *See id.* at 610.  *Brunswick* therefore is inapposite to the Receiver's TUFTA claims against ostensibly nonculpable third parties to the Stanford Defendants' scheme.

[14]*See Perlman v. Five Corners Investors I, LLC*, 2010 WL 962953, at *4 (S.D. Fla. 2010); *Pearlman v. Alexis*, 2009 WL 3161830, at *5-6 (S.D. Fla. 2009) (holding that Rule 9(b) does not apply to Florida UFTA claims, reasoning that such claims are "different than the fraud claims to which Rule 9(a) would normally apply" because they "involve[] a third-party defendant who has no relationship with the plaintiff, and thus the plaintiff usually has insufficient information to plead its claim with specificity"); *Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, 2008 WL 660100, at *6 (S.D. Fla. 2008) (same); *Nesco, Inc. v. Cisco*, 2005 WL 2493353, at *3 (S.D. Ga. 2005) ("Neither the intent of the debtor nor the knowledge of the transferee is required to be proven in order to establish a fraudulent conveyance under Georgia's UFTA.  As a result, the considerations that lead to the pleading requirements under Rule 9(b) in cases of common law fraud" do not apply.).

The cases holding that Rule 9(b) does apply to UFTA claims tend to cite two cases from the Second and Seventh Circuits, *In re Sharp* and *General Electric*.  *See, e.g.*, *Indiana Bell*, 2006 WL 485305, at *1 n.10 (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078-79 (7th Cir. 1997)).  But, neither of those cases explain why UFTA plaintiffs must plead with specificity concerning nonparty debtor-transferors' actions.  TUFTA, like most UFTAs, contains a nonexclusive list of "badges of fraud" from which the debtor's actual intent may be inferred.  *See* TEX. BUS. & COM. CODE § 24.005(b).  And, UFTA claims do not require any showing of scienter on the transferee-defendants' part.  *See supra* note 7 and accompanying text.  "[D]espite the use of the word 'fraud,' a fraudulent transfer claim is significantly different from other fraud claims to which Rule 9(b) is directed."  *Gulf Coast Produce*, 2008 WL 660100, at *6.

Defendants sufficient notice of the time period in which he believes the transfer of fraudulently-obtained funds occurred – during the time the Stanford Defendants and related entities employed the Employee Defendants.  Assuming, as the Court must, that the factual allegations in the Employee Complaint are true: The Stanford Defendants operated a Ponzi scheme that the Employee Defendants furthered, albeit unwittingly, with their work. Because the scheme had few, if any, business components untouched by the sale of fraudulent investment vehicles, the Employee Defendants necessarily received compensation in the form of funds derived from unsuspecting investors' cash infusions into the Ponzi scheme.  This makes the Employee Defendants' compensation assets that are potentially traceable to the Receivership Estate.  The Receiver asserts that the Employee Defendants therefore hold and control – or previously disposed of – proceeds that are traceable to the Receivership Estate.  And, the Receiver identifies the specific amount of CD Proceeds-related compensation each Employee Defendant is alleged to have received.  *See* Employee Compl. App.  Accordingly, the Receiver has apprised the Employee Defendants of a sufficiently "substantial amount of particularized information about [his] claim in order to enable [them] to understand it and effectively prepare a responsive pleading and an overall defense of the action[]."  5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1296 at 39 (3d ed. 2004).[15]

---

[15]The same reasoning applies to the Receiver's unjust enrichment claim.  That claim also does not depend on the Employee Defendants having engaged in fraudulent conduct and instead focuses simply on whether the Employee Defendants received a benefit that "would be unconscionable to retain."  *Texas Integrated*, 300 S.W.3d at 367.  Even if Rule 9(b) applies to the unjust enrichment claim, the Employee Complaint adequately states facts alleging the "who, what, when, where, why, and how" supporting the Receiver's belief that allowing the Employee Defendants to retain the identified forms of CD Proceeds would

## CONCLUSION

In this action, the Receiver represents creditors defrauded by the Stanford Defendants' scheme in their recovery efforts.  The Court has subject matter jurisdiction over such actions and personal jurisdiction over the only Employee Defendant raising Rule 12(b)(2) objections.  The Receiver states claims under Rules 8(a) and 12(b)(6).  The Receiver's complaint adheres to federal pleading standards.  Accordingly, the Court denies the Employee Defendants' motions to dismiss.

Signed September 6, 2011.

_____
David C. Godbey
United States District Judge

---

constitute the "obtain[ing] of a benefit from another by . . . the taking of an undue advantage."  *Heldenfels Bros.*, 832 S.W.2d at 41.