IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY,                    §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §        Civil Action No. 3:09-CV-0724-N
                                    §
JAMES R. ALGUIRE, *et al.*,         §
                                    §
        Defendants.                 §

## ORDER

This Order addresses Defendants Gary D. Magness, the Gary D. Magness Irrevocable Trust, GMAG, LLC, and Magness Securities, LLC's, (collectively, the "Magness Defendants") motion to dismiss the Receiver's first amended complaint against certain Stanford investors [422].  For the reasons that follow, the Court denies the motion.[1]

### I. ORIGINS OF THE RECEIVER'S ASSET RECOVERY ACTION

This dispute arises out of the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (the "Stanford Defendants").  As part of that litigation, this Court "assume[d] exclusive jurisdiction and t[ook] possession of the" "Receivership Assets" and "Receivership Records" (collectively, the "Receivership Estate").  *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *in SEC v. Stanford*

_____

[1]For the same reasons, the Court denies various other Investor Defendants' motions to dismiss [411, 451, 513, 518, & 523].

*Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). The Court appointed Ralph S. Janvey to serve as Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order. *Id.* at 3.

Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." *Id.* at 4. Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *Id.* at 5.

Pursuant to those powers, the Receiver filed this action to recover approximately $760 million in Stanford International Bank, Ltd. ("SIB") certificate of deposit proceeds (the "CD Proceeds") paid to certain Stanford investors (the "Investor Defendants") and former employees (the "Employee Defendants"). *See* First Am. Compl. Against Certain Stanford Investors (the "Investor Complaint") [128]; Investor Compl. App. [129]; Second Am. Compl. Against Former Stanford Employees (the "Employee Complaint") [156]; Emp. Compl. App. [157]. The Receiver alleges that the Magness Defendants invested in the Stanford

Defendants' scheme.  He attributes to the Magness Defendants approximately $90.4 million in CD Proceeds, of which $10.65 million allegedly were received in excess of their investments.  *See* Investor Compl. App. at 1.  The Magness Defendants now move to dismiss the Investor Complaint under Federal Rules of Civil Procedure 8(a), 9(a), 10(a), 12(b)(1), 12(b)(6), and 15(a).

## II. THE COURT HAS SUBJECT MATTER JURISDICTION

The Magness Defendants move to dismiss under Rule 12, arguing that the Court lacks subject matter jurisdiction over the Receiver's claims and that the Receiver fails to state claims.  As mandated by Fifth Circuit caselaw, the Court first addresses the Magness Defendants' contention that it lacks subject matter jurisdiction under Rule 12(b)(1).  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

### A. Subject Matter Jurisdiction Standard

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)) "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)), and should "grant[] [the motion] only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

(citing *Home Builders*, 143 F.3d at 1010).[2]  In reality, "the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Nowak*, 81 F.3d at 1188.  The plaintiff bears the burden of proof in the Rule 12(b)(1) context.  *See Ramming*, 281 F.3d at 161.

### B. The Receiver Represents Defrauded Creditors in this Action

The Magness Defendants focus most of their fire on the Court's alleged lack of subject matter jurisdiction.  They contend that the Receiver lacks standing to prosecute this action because he stands in SIB's shoes, and SIB is a foreign entity subject to the jurisdiction of Antiguan courts and regulatory entities.  Those authorities have placed SIB in liquidation in separate proceedings.  According to the Magness Defendants, comity thus precludes the Receiver from asserting SIB's choses of action, "includ[ing] any possible right to recover any assets of SIB[] allegedly transferred pursuant to 'fraudulent transfers' or to recover restitution for alleged 'unjust enrichment' at the expense of SIB[]," Mot. at 4, because bringing claims on SIB's behalf inherently conflicts with the Antiguan liquidators' and receivers' authority.

However, the Magness Defendants' arguments depend on a cramped interpretation of the Receiver's authority.  As the Court has previously ruled, the Receiver's hybridized powers allow him to stand in the shoes of the Stanford Defendants and also represent creditors in their recovery efforts.  *See* Order of Aug. 26, 2011, at 3-7 (adopting the Fifth Circuit's withdrawn arbitrability ruling in *Janvey v. Alguire*, 628 F.3d 164 (5th Cir. 2010),

---

[2]Query whether courts should continue to conduct this old-school Rule 12(b)(6)-like analysis in light of the Supreme Court's decisions in *Twombly* and *Iqbal*.  *See Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

*superseded by* 2011 WL 2937949 (5th Cir. 2011) (publication pending)) (observing that receivers are "legal hybrids" who "stand[] in the shoes of the person for whom [they] ha[ve] been appointed," serve as "instrument[s] of the court . . . acting also for the stockholders . . . and creditors of the corporation," and "are imbued with rights and obligations analogous to the various actors required to effectively manage an estate in the absence of the 'true' owner" (internal quotation marks and citations omitted)).  In that capacity, the Receiver has standing to bring creditors' TUFTA claims.  The Court therefore need not address the Magness Defendants' potential comity-based arguments.  As the Receivership Court, it properly exercises subject matter jurisdiction over this ancillary asset recovery action brought on behalf of the Stanford Defendants' creditors.

## III. THE RECEIVER STATES VALID CLAIMS

The Magness Defendants also purport to object under Rule 12(b)(6).  Although not clearly articulated in the motion, the Court discerns two possible arguments in this regard.  First, the Magness Defendants assert that the Receiver continues to bring relief defendant claims "even though the Fifth Circuit has made in clear that there are no valid claims by the Receiver against 'relief defendants.'" Mot. at 12 (citing *Adams*, 588 F.3d 831) (emphasis in original).  Second, the Court reads the motion as a whole to argue – at least impliedly – that the Receiver fails to state fraudulent transfer and unjust enrichment claims.

### A. *Rule 12(b)(6) Standard*

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*,

42 F.3d 925, 931 (5th Cir. 1995).  According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. (internal citations omitted).

As the Supreme Court recently observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)].  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### B. The Receiver No Longer Brings Relief Defendant Claims

The Magness Defendants correctly interpret *Adams* as foreclosing the Receiver's continued prosecution of relief defendant claims against the Investor Defendants. *See Adams*, 588 F.3d at 835 ("The Investor Defendants have legitimate ownership interests in their CD proceeds, and therefore cannot be considered proper relief defendants."); *see also* Order of June 24, 2010, at 2-3 (discussing *Adams* and its effect on the Receiver's claims) [469]. But, to the extent the Magness Defendants make a Rule 12(b)(6) argument in this regard, the Receiver acknowledged that *Adams* necessitated amending the then-live investor complaint to remove relief defendant claims. *See* Investor Compl. at 4 & n.2. To that end, he filed the Investor Complaint explicitly to "amend[] his claims against [the Investor Defendants] to assert fraudulent-transfer claims, and, in the alternative, unjust-enrichment claims." *Id.* Because the Investor Complaint no longer states relief defendant claims against the Investor Defendants, no relief defendant claims exist on which to base a Rule 12(b)(6) objection. *See* Order of June 24, 2010, at 3 (noting that Receiver's identification of the

ORDER – PAGE 7

Defendants as "relief defendants" in the caption was a "typographical error" and, to the extent any relief defendant claims remained, dismissing the "Investor Defendants from the suit in that capacity").

### C. The Receiver States a Fraudulent Transfer Claim

*1. The Court Applies Texas Law.* – The Receiver sufficiently identifies TUFTA as the "applicable fraudulent transfer law." Investor Compl. at 12 ("under applicable fraudulent transfer law . . . . *See, e.g.*, TEX. BUS. & COM. CODE ANN. § 24.013 (Vernon 2009)."); *see also* TEX. BUS. & COM. CODE § 24.001, *et seq.* The Magness Defendants quibble with whether Texas law applies. *See, e.g.*, Mot. at 10-11. But, they fail to argue specifically or present evidence showing that another state's UFTA provides the appropriate substantive law. And, Texas choice of law rules require the party urging application of another state's substantive law to "furnish[] [the Court] with 'sufficient information' to establish the law of another state" applies. *Holden v. Capri Lighting, Inc.*, 960 S.W.2d 831, 833 (Tex. App. – Amarillo 1997, no pet.) (citing *Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex. 1963); Olin Guy Wellborn, *Judicial Notice Under Article II of the Texas Rules of Evidence*, 19 ST. MARY'S L.J., 1, 27 (1987)); *cf. Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) ("[A] movant for summary judgment seeking to have the law of another state applied must satisfy its burden of proof with respect to fact questions necessary to the choice of law decision.").

Moreover, "the failure to provide adequate proof [of choice of laws] . . . results in a presumption that the law of the foreign jurisdiction is identical to the law of Texas."

*Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App. – Corpus Christi 1999, pet den.) (citing *Holden*, 960 S.W. 2d at 833). That presumption is especially apposite in the TUFTA context because the Texas Legislature adopted TUFTA with the specific purpose that it be applied uniformly with other states' versions of the Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM. CODE § 24.012 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."). Thus, any differences between TUFTA and another state's UFTA are likely to be negligible.

Finally, the Court looks to Texas law because at this juncture TUFTA effectively has become law of the case. The Court's preliminary injunction applied TUFTA [456], and the Fifth Circuit accepted the Receiver's assertion that TUFTA supplied the relevant "'standards . . . [of] substantive law.'" *Alguire*, 2011 WL 2937949, at *8 (quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)). The Court therefore applies Texas law.

**2. The Receiver's TUFTA Claim Satisfies Rule 12(b)(6).** – In general, TUFTA operates to void certain fraudulent "transfers," which the statute defines in relevant part as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money." TEX. BUS. & COM. CODE § 24.002(12). TUFTA considers several types of transfers to be fraudulent. *See id.* §§ 24.005(a) (three types); 24.006 (two types). Despite some

ambiguity in the Receiver's complaint, he avers this dispute concerns only one type of fraudulent transfer, Resp. at 7 [455], and the Magness Defendants do not argue otherwise.

The Receiver brings his claim under section 24.005(a)(1), which provides that a transfer "is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor."  "In determining [a debtor's] actual intent," courts may consider, "among other factors[,] . . . whether . . . the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred" and if "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred."  *Id.* § 24.005(b)(8) & (b)(9).  Notably, TUFTA considers a debtor to be insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."  *Id.* § 24.003(a).

The Fifth Circuit considers a Ponzi scheme to be, "as a matter of law, insolvent from its inception."  *Alguire*, 2011 WL 2937979, at *9 (quoting *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006)); *see also Quilling v. Schonsky*, 247 F. App'x 583, 586 (5th Cir. 2007) (citation omitted).  The Receiver therefore may establish fraudulent intent by showing that the Stanford enterprise operated as a Ponzi scheme.  *See Warfield*, 436 F.3d at 558 ("The Receiver's proof that [the debtors] operated as a Ponzi scheme establishe[s] the fraudulent intent behind transfers made by [the Receivership entities]." (citing *Scholes v. Lehmann*, 56

F.3d 750, 757 (7th Cir. 1995))); *see also Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008)

("[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud.")

(citations and internal quotation marks omitted) (alteration in original).

> A [P]onzi scheme is a scheme whereby a corporation operates and continues
> to operate at a loss. The corporation gives the appearance of being profitable
> by obtaining new investors and using those investments to pay for the high
> premiums promised to earlier investors. The effect of such a scheme is to put
> the corporation farther and farther into debt by incurring more and more
> liability and to give the corporation the false appearance of profitability in
> order to obtain new investors.

*Alguire*, 2011 WL 2937949 (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088

n.3 (2d Cir. 1995)) (alteration in original).

For defendants facing a section 24.005(a)(1) "actual intent" claim, TUFTA provides

a statutory defense if the defendants "took in good faith and for a reasonably equivalent

value." TEX. BUS. & COM. CODE § 24.009(a).   A transferee invoking this defense has the

burden to show both objective good faith and the exchange of reasonably equivalent value.

*See, e.g.*, *Hahn v. Love*, 321 S.W.3d 517, 526 (Tex. App. – Houston [1st Dist.] 2009, pet.

den.) (citations omitted).[3]   The transferee's knowledge is irrelevant to determining whether

transfers were made with an intent to defraud.  *See, e.g.*, *Schonsky*, 247 F. App'x at 586.[4]

---

[3]Section 24.009(a) also prohibits recovery "against any subsequent transferee or
obligee."

[4]Because no Supreme Court of Texas cases address the requisite mental state for a
transferee-defendant under TUFTA, the Fifth Circuit in *Schonsky* made its best "*Erie* guess"
as to the proper construction of the statute.  247 F. App'x at 586 & n.2.  This accords with
the plain language of TUFTA, which posits that transfers are fraudulent "if the *debtor* made
the transfer or incurred the obligation with actual intent . . . ."  TEX. BUS. & COM. CODE §

Nor does it matter that the transferee no longer possesses the funds giving rise to the TUFTA claim. A TUFTA plaintiff seeks to recover "judgment for the value of the asset transferred," TEX. BUS. & COM. CODE § 24.009(b), not the specific asset itself, which in many cases left the defendant's possession long ago. Thus, spending Ponzi scheme proceeds does not shield a recipient of fraudulently-transferred funds from liability. *See, e.g.*, *Donell*, 533 F.3d at 776 & n.9 (noting, in case where a receiver brought an UFTA claim against a recipient of Ponzi scheme funds, that disgorgement may occur "years after the money has been received and spent" and that such a result is "yet another common tragic result of a Ponzi scheme").

The Receiver states a TUFTA claim. He alleges that the Stanford Defendants operated a Ponzi scheme, pleading the actual-intent-to-defraud element necessary to state a claim under section 24.005(a)(1). *See* Investor Compl. at 5-8. The Receiver also contends that "CD Proceeds from the Ponzi scheme were transferred by the Stanford Defendants to the [Investor Defendants] solely for the purpose of concealing and perpetuating the fraudulent scheme" and "were paid to the [Investor Defendants] from funds supplied by other investors who bought the fraudulent CDs."[5] *Id.* at 8. The Magness Defendants do not assert that they qualify for TUFTA's affirmative defense and another one does not present itself on the Investor Complaint's face. *See Clark v. Amoco Prod. Inc.*, 794 F.2d 967, 970 (5th Cir. 1986) (noting that a court should grant dismissal under Rule 12(b)(6) "if a successful

24.005(a)(1) (emphasis added).

[5]The Receiver thus need not identify the specific transfers. As pled, the Receiver implicates *all* transfers from the scheme to the Magness Defendants.

affirmative defense appears clearly on the face of the pleadings.") (citations omitted). Accordingly, the Receiver's fraudulent transfer claim survives the Magness Defendants' ambiguously-made Rule 12(b)(6) challenge.

### D. The Receiver States that He Is Entitled to Unjust Enrichment Disgorgement

"Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits," regardless of whether the defendant engaged in wrongdoing. *Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. – Dallas 2009, pet. den.) (citations omitted).[6] "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Id.* (citation omitted). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citations omitted).

Although the Magness Defendants characterize the Receiver's alternative claim as a claim for unjust enrichment – and, indeed, in at least one place the Receiver notes he amended his complaint to add "unjust-enrichment claims," Investor Compl. at 4 – the Receiver more properly pleads unjust enrichment as an equitable doctrine that entitles him to disgorgement pursuant to unspecified "applicable law." Investor Compl. at 13. That

---

[6]Based on the parties' choice-of-laws showing on the Receiver's fraudulent transfer claims, the Court applies Texas law to the Receiver's alternative claim.

clarification is potentially crucial; some Texas authorities hold that plaintiffs cannot state a claim for unjust enrichment because it is not an independent cause of action under Texas law. *See, e.g.*, *Casstevens v. Smith*, 269 S.W.3d 222, 229 (Tex. App. – Texarkana 2008, pet. den.). Some Texas courts, including the Supreme Court of Texas, however, have suggested otherwise. *See, e.g.*, *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 682-86 (Tex. 2000) (upholding summary judgment on some of plaintiff's unjust enrichment claims); *see also McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 828 (Tex. App. – Dallas 2010, pet. den.) (upholding trial court's grant of summary judgment on claims for both unjust enrichment and money had and received); *Texas Integrated*, 300 S.W.3d at 367, 380-81 (discussing plaintiff's "unjust enrichment claim" and "elements" comprising such a claim); *accord Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 739 (N.D. Tex. 2008) (Godbey, J.) (noting that "it is unclear under Texas law whether unjust enrichment is an independent cause of action") (citations omitted).

Given this varied authority, the Receiver's failure to identify the specific cause of action that provides an unjust enrichment remedy is not fatal to his alternative claim. Texas courts have read claims for "unjust enrichment" as pleading an equitable common law claim for money had and received. *See, e.g.*, *London v. London*, 192 S.W.3d 6, 12-14 (Tex. App. – Houston [14th Dist.] 2005, pet. den.) (noting, in case where *pro se* plaintiff brought unjust enrichment claim, that "[a]n action for money had and received is an equitable doctrine that courts apply to prevent unjust enrichment.") (citation omitted). Indeed, the two claims are

substantively identical.  *See id.* ("[A claim for money had a received] is not premised on wrongdoing, but looks to the justice of the case and inquires whether the party has received money that rightfully belongs to another.") (citation omitted); *see also Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951) ("'The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong.  All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him.'" (quoting 58 C.J.S. Money Received § 4a, at 913)).[7]

Regardless of whether Texas law allows an "unjust enrichment" claim or requires pleading a claim for money had and received, the Receiver states claims under either "applicable law."  Investor Compl. at 13.  The Receiver alleges that the Magness Defendants "not only received from SIB[] sums equal to their investments in SIB[] CDs, but they also received payments in excess of their respective investments."  *Id.* at 2.  All of those payments, according to the Receiver, consisted of funds derived "directly from the sale of SIB[] CDs to other investors."  *Id.*  Because SIB CDs served as the primary conduit of funds in and out of the Stanford Defendants' scheme, the Receiver contends the Magness Defendants' CD Proceeds "are little more than stolen money" that properly belongs to the Receivership Estate.  *Id.*  Together, these claims allege that the Magness Defendants obtained

---

[7]Courts also have wide latitude in considering a claim for money had and received. *See Staats*, 243 S.W.2d at 687-88 ("[A] cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action.  It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which . . . belongs to the plaintiff.'" (quoting *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402-03 (1934))) (latter alteration in original).

a benefit from the Stanford Defendants' scheme that equity dictates they cannot retain justly.

Accordingly, the Court declines to dismiss the Receiver's alternative claim.[8]

### IV. THE COMPLAINT COMPLIES WITH FEDERAL PLEADING STANDARDS

The Magness Defendants also argue for dismissal on the basis of several alleged pleading deficiencies. The Court addresses these objections in turn.

### A. *The Magness Defendants Fail to Show Prejudice Justifying Rule 15 Dismissal*

The Magness Defendants' first deficient-pleading argument concerns the Receiver's failure to obtain leave of Court before filing the Investor Complaint. The Magness Defendants argue that allowing the Investor Complaint to stand would prejudice at least some Defendants' limitations-based affirmative defenses. The Magness Defendants ask the Court to rule the Investor Complaint as having no legal effect, to dismiss it under Rule 15(a), and to require the Receiver to file a motion seeking leave to file an amended complaint.[9]

---

[8]The Court also does not require the Receiver to replead under either specific theory. *Cf. Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) ("A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged."); *see also Roark v. Allen*, 633 S.W.2d 804, 809-10 (Tex. 1982). The facts pled here do not require the Court to make an inferential leap of any magnitude. The "elements" of both causes of action are present, well-pled, and give the Magness Defendants adequate notice to prepare their defense. And, in any case, the Magness Defendants make no specific failure-to-state-a-claim objection to the Receiver's alternative claim. *Cf. Roark*, 633 S.W.2d at 809 ("When there are no special exceptions, a petition will be construed liberally in favor of the pleader.").

[9]The Magness Defendants also argue, apparently under Rule 15, that the Investor Complaint has no legal effect because it was superseded by the "[Employee Complaint] filed on December 18, 2009, [which] did <u>not</u> specifically refer to and adopt or incorporate by reference the [Investor Complaint] filed on December 7, 2009." Mot. at 12 (emphasis in original). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint

The Court rejects the Magness Defendants' Rule 15(a) arguments. The Magness Defendants correctly note that Rule 15 affords plaintiffs one opportunity to amend their pleadings as of right and that any additional amendments require "the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Rule 15, however, also provides that courts "should freely give leave when justice so requires." *Id.* The Receiver's amendment satisfies that condition. The Court previously explained that it would have granted the Receiver leave to file the Investor Complaint had he asked. *See* Order of Jan. 29, 2010, at n.1 [300]. The Court noted then that "it [did] not appear that any of the parties [would] be prejudiced by allowing the change." *Id.* (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1484 (Westlaw current through 2009)). The Magness Defendants fail to identify any limitations-

---

supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

    The Employee Complaint, however, *did* refer to the Investor Complaint. *See* Employee Compl. at 5 ("This [Employee Complaint] does not amend nor is it intended to impact the claims asserted by the Receiver in this lawsuit against any category of defendants other than the [Employee Defendants]. This [Employee Complaint] does not alter or amend the claims the Receiver asserted against certain Stanford investors in his [Investor Complaint] . . . and the Appendix thereto . . . ."). This sufficiently provided notice that the Receiver did not intend the Employee Complaint to supersede the Investor Complaint. And, because the Receiver brings substantively identical claims against the two classes of Defendants in two separate pleadings, the Court sees no reason to require the Employee Complaint to have incorporated the Receiver's distinct factual allegations against the Investor Defendants as set forth in the Investor Complaint.

specific prejudice to them.[10]   And, the Investor Complaint "'merely allege[s] additional theories of liability based on the same set of facts'" articulated in the Receiver's previous complaints, specifically substituting TUFTA and unjust enrichment claims in place of relief defendant claims post-*Adams*.[11]   *Id.* (quoting *United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 295 (5th Cir. 2003)) (additional citation omitted); *see also* FED. R. CIV. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."). Accordingly, the Receiver properly filed the Investor Complaint under Rule15(a).

---

[10] Because other Defendants remain free to move for dismissal on the basis of any real prejudice caused by the Receiver's amendment without leave, the Court declines to dismiss the Investor Complaint based on speculative prejudice to other parties.   In any case, the TUFTA provision relied upon by the Receiver creates the possibility of indefinite liability. *See Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 2011 WL 2466156, at *3-8 & n.6 (N.D. Tex. 2011) (publication pending).

[11] The Court also considers it immaterial that the Receiver chooses to distinguish the Investor Defendants from the Employee Defendants via two separate, but substantively similar pleadings.   The Magness Defendants point to no authority mandating that the Court dismiss this action on that basis.   The Receiver's approach, moreover, promotes clarity and judicial-economy.   The Receiver brings the same claims against each Defendant.   He alleges that each Defendant received transfers of money representing CD Proceeds from the Stanford Ponzi scheme.   For both classes of Defendants, the Receiver alleges actual fraudulent intent on the part of the debtor-transferor Stanford Defendants.   And, the same statutory affirmative defense is available to each Defendant.   Accordingly, the Court sees no impediment to considering the Receiver's claims against both sets of Defendants in the same action.

### B. The Receiver Identifies the Magness Defendants Under
### Rule 10(a) and States Claims Under Rule 8(a)

The Magness Defendants contend next that the Receiver's complaint should be dismissed for failing to list them in the Investor Complaint's caption under Rule 10(a) or to name them specifically in the Investor Complaint's allegations as required to state a claim under Rule 8(a). The Receiver's failure to do so, according to the Magness Defendants, makes them improper parties to this action and strips the Court of jurisdiction over any claims against them. *See* Mot. at 12-14.

The Court disagrees. Rule 10(a) provides in relevant part that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties." "[T]he contents of the caption," however, "usually are not considered part of the pleader's statement of the claim or the response thereto for purposes of applying the pleading rules." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1321 at 388 (3d ed. 2004) (footnote omitted) [hereinafter "5A WRIGHT & MILLER"]. "Moreover, the caption is not determinative as to the identity of the parties to the action or the district court's personal jurisdiction over the defendant or its subject matter jurisdiction." *Id.* (footnotes omitted). Thus, the fact that the Investor Complaint's caption omits the Magness Defendants has no bearing on whether they are parties to this action or whether the Receiver states claims for relief. Nor does it provide grounds for concluding the Court lacks jurisdiction over the Receiver's claims. And, this is not a case where the caption has caused the Court confusion or inconvenience. *See,*

*e.g.*, *Marsh v. Butler County*, 268 F.3d 1014, 1023 n.4 (11th Cir. 2001) ("The caption is chiefly for the court's administrative convenience."). Accordingly, the Court denies the Magness Defendants Rule 10(a) objections.[12]

The Magness Defendants' Rule 8(a) arguments fare no better. Rule 8(a) requires a complaint to make "(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Because the Court has already determined that it has subject matter jurisdiction and that the Receiver states claims under Rule 12(b)(6), the Investor Complaint satisfies Rule 8(a)'s pleading requirements. The Court therefore considers only the Magness Defendants' additional argument that the Receiver's alleged failure to name them specifically in the Investor Complaint's main text renders the Receiver unable to show that he is entitled to relief against the Magness Defendants.

---

[12]Because a "defective caption or even its complete absence is merely a formal error and never should be viewed as a fatal defect," courts routinely allow parties to amend their pleadings "under Rule 15 to correct technical defects in the caption when that is thought necessary." 5A WRIGHT & MILLER at 392-93. The Court concludes that amending the complaint to name every Defendant in the caption is unnecessary. As described below, the Receiver does name the Magness Defendants in the Investor Complaint's text by incorporating the Investor Defendant list contained in its appendix. In any case, the Magness Defendants fail to identify any prejudice endured or expected from the Receiver's failure to name them in the caption.

The Receiver sufficiently identifies the Magness Defendants in the Investor Complaint. The Investor Complaint specifies that the Investor Defendants listed in its accompanying appendix are parties to this action. *See* Investor Compl. at 3. That appendix names the Magness Defendants first and provides the amount of CD Proceeds sought by the Receiver. *See* Investor Compl. App. at 1. This manner of identifying the Magness Defendants sufficiently apprises them of the Receiver's claims, his sought-after relief, and that he has named them Defendants to this suit. The Magness Defendants point to no prejudice justifying a contrary conclusion. To dismiss the Investor Complaint because the Receiver listed the Magness Defendants – and all other Investor Defendants – in the complaint's appendix, then, would honor form over substance and waste judicial and party resources just to require the Receiver to make an essentially aesthetic amendment. The Court therefore rejects the Magness Defendants' Rule 8(a) arguments.

### C. The Receiver Pleads in Compliance with Rule 9(b)

The Court has previously held that the Receiver's Complaint need not satisfy Rule 9(b). *See* Order Den. Various Stanford Employees' Mots. Dismiss 19-21, Sept. 6, 2011 [696]. Even if it did, the Court finds that the Investor Complaint alleges fraud with sufficient particularity to avoid dismissal. The Receiver has provided the Magness Defendants sufficient notice of the time period in which he believes the transfer of fraudulently-obtained funds occurred – during the time the Magness Defendants invested with the Stanford Defendants. Assuming, as the Court must, that the factual allegations in the Investor Complaint are true, the Magness Defendants' actions falls within the time period covered by the Receivership Order: the Stanford Defendants operated a Ponzi scheme in which the

Magness Defendants invested.  The Magness Defendants subsequently recouped their original investments plus additional returns in the form of funds derived from other investors' cash infusions into the Ponzi scheme.  This makes all of the Magness Defendants' withdrawn funds assets potentially traceable to the Receivership Estate.  The Magness Defendants therefore hold and control – or previously disposed of – proceeds that are traceable to the Receivership Estate.  Accordingly, the Receiver has apprised the Magness Defendants of a sufficiently "substantial amount of particularized information about [his] claim in order to enable [them] to understand it and effectively prepare a responsive pleading and an overall defense of the action[]."  5A WRIGHT & MILLER § 1296 at 39.[13]

## CONCLUSION

In this action, the Receiver represents creditors defrauded by the Stanford Defendants' scheme in their recovery efforts.  The Court has subject matter jurisdiction over such actions.  The Receiver states claims under Rules 8(a) and 12(b)(6).  The Receiver's complaint adheres to federal pleading standards, and the Magness Defendants fail to show prejudice justifying a contrary conclusion.  Accordingly, the Court denies the Magness Defendants motion to dismiss.

---

[13]The same reasoning applies to the Receiver's unjust enrichment claim.  That claim does not depend on the Investor Defendants having engaged in fraudulent conduct and instead focuses simply on whether the Investor Defendants received a benefit that "would be unconscionable to retain."  *Texas Integrated*, 300 S.W.3d at 367.  And, even if Rule 9(b) applies to the unjust enrichment claim, the Investor Complaint adequately states facts alleging the "who, what, when, where, why, and how" supporting the Receiver's belief that allowing the Investor Defendants to retain the identified forms of CD Proceeds would constitute the "obtain[ing] a benefit from another by . . . the taking of an undue advantage." *Heldenfels Bros.*, 832 S.W.2d at 41.

Signed September 26, 2011.

David C. Godbey
United States District Judge