# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL. | § § § § § | |
| Plaintiff, | § § | Case No. 3:09-CV-0724-N-BG |
| v. | § § | |
| JAMES R. ALGUIRE, ET AL. | § § | |
| Defendants. | § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL. | § § § § | |
| Plaintiff, | § § § | Case No. 3:10-CV-0366-N-BG |
| v. | § § | |
| MIGUEL VENGER, ET AL. | § § | |
| Defendants. | § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL. | § § § § | |
| Plaintiff, | § § | Case No. 3:10-CV-0415-N-BG |
| v. | § § | |
| JUAN JOSE RODRIGUEZ POSADA, ET AL. | § § | |
| Defendants. | § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL. | §<br>§<br>§<br>§<br>§ | |
| Plaintiff, | §<br>§<br>§ | Case No. 3:10-CV-0478-N-BG |
| v. | §<br>§ | |
| GILBE CORP., ET AL. | §<br>§<br>§ | |
| Defendants. | § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL., | §<br>§<br>§<br>§<br>§ | |
| Plaintiff, | §<br>§<br>§ | Case No. 3:10-CV-0528-N-BG |
| v. | §<br>§ | |
| JOHN W. WESTMORELAND, ET AL., | §<br>§<br>§ | |
| Defendants. | § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL. | §<br>§<br>§<br>§<br>§ | |
| Plaintiff, | §<br>§<br>§ | Case No. 3:10-CV-0725-N-BG |
| v. | §<br>§ | |
| JAMES C. BARR, ET AL. | §<br>§<br>§ | |
| Defendants. | § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS | § | |
| COURT-APPOINTED RECEIVER FOR THE | § | |
| STANFORD INTERNATIONAL BANK, LTD., | § | |
| ET AL. | § | |
| | § | Case No. 3:10-CV-1002-N-BG |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JOSE MANUEL FERNANDEZ, ET AL. | § | |
| | § | |
| Defendants. | § | |

---

### BRIEF IN SUPPORT OF
### RECEIVER'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### AGAINST ADDITIONAL NET WINNER INVESTORS

---

BAKER BOTTS L.L.P.

Kevin M. Sadler
Texas Bar No. 17512450
kevin.sadler@bakerbotts.com
Scott D. Powers
Texas Bar No. 24027746
scott.powers@bakerbotts.com
David T. Arlington
Texas Bar No. 00790238
david.arlington@bakerbotts.com
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4039
512.322.2500
512.322.2501 (Facsimile)

ATTORNEYS FOR
RECEIVER RALPH S. JANVEY

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

Summary ......................................................................................................................... 1

Argument & Authorities ............................................................................................... 2

     I.     The summary judgment standard. ......................................................... 2

     II.    The evidence and prior holdings of this Court and the Fifth Circuit conclusively establish that SIB was part of the Stanford Ponzi scheme and that the Net Winner Investors received substantial Net Winnings from that Ponzi scheme. ................................................................................... 3

          A.     SIB was part of the Stanford Ponzi scheme. ............................... 3

          B.     The Net Winner Investors received substantial Net Winnings from SIB. ...................................................................................... 7

     III.   As a matter of law, Net Winnings paid to the Net Winner Investors were fraudulent transfers under TUFTA and, therefore, subject to recovery by the Receiver. ......................................................................................... 8

          A.     The Net Winner Investors are liable for their Net Winnings under section 24.005(a)(1), the "actual fraud" provision of TUFTA. ................. 9

          B.     The Net Winner Investors are liable for their Net Winnings under section 24.005(a)(2), the "constructive fraud" provision of TUFTA. ............................................................................................ 11

Conclusion & Prayer ................................................................................................... 13

Certificate of Service .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barrington Group Ltd., Inc. v. Classic Cruise Holdings S. de R.L.*,
   Civil Action No. 3:08-CV-1813-B, 2010 WL 184307 (N.D. Tex. Jan. 15, 2010) .......... 2-3

*Bassett v. Am. Nat'l Bank*,
   145 S.W.3d 692 (Tex. App.—Fort Worth 2004, no pet.) ..................................................3

*Chadbourne & Parke LLP v. Troice*,
   134 S.Ct. 1058 (2014) .....................................................................................................6

*Donell v. Kowell*,
   533 F.3d 762 (9th Cir. 2008) ................................................................. 3, 9, 12-13

*In re Taubman*,
   160 B.R. 964 (Bankr. S.D. Ohio 1993) .............................................................................11

*Janvey v. Alguire*,
   647 F.3d 585 (5th Cir. 2011) ...............................................................................6, 10, 12

*Janvey v. Brown*,
   767 F.3d 430 (5th Cir. 2014) ..........................................................1, 3, 4, 5, 6, 8, 9, 10, 11

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
   712 F.3d 185 (5th Cir. 2013) .........................................................................................3, 6

*Rieser v. Hayslip (In re Canyon Sys. Corp.)*,
   343 B.R. 615 (Bankr. S.D. Ohio 2006) .............................................................................12

*SEC v. Forte*,
   Civil Nos. 09-63, 09-64, 2009 WL 4809804 (E.D. Pa. Dec. 15, 2009) ...............................9

*Warfield v. Byron*,
   436 F.3d 551 (5th Cir. 2006) ..........................................................................................12

*Williams v. FDIC (In re Positive Health Mgmt.)*,
   769 F.3d 899 (5th Cir. 2014) ...........................................................................................9

*Wyle v. C.H. Rider & Family (In re United Energy Corp.)*,
   944 F.2d 589 (9th Cir. 1991) ...........................................................................................3

**STATUTES**

Fed. R. Civ. P. 56(a) ..................................................................................................2

Tex. Bus. & Com. Code Ann. §§ 24.001-.013 (West 2013).........................................................1

Tex. Bus. & Com. Code Ann. § 24.005(a) ...........................................................8, 9, 11, 12, 13

Tex. Bus. & Com. Code Ann. § 24.008(a)(1)................................................................................9

Tex. Bus. & Com. Code Ann. § 24.009.............................................................................. 9-10

## SUMMARY

In accordance with the Court's January 7, 2015 Consolidated Scheduling Orders in the above-captioned lawsuits, Plaintiff Ralph S. Janvey (the "Receiver") — in his capacity as the Court-appointed Receiver for Stanford International Bank, Ltd. ("SIBL" or "SIB") and all other Stanford Entities — has concurrently filed herewith his Motion for Partial Summary Judgment Against Additional Net Winner Investors (the "Additional MPSJ").  Through that Additional MPSJ, the Receiver seeks partial summary judgment against the Net Winner Investors named herein for recovery of the Net Winnings[1] they received from SIBL.  As a matter of law, such Net Winnings are voidable fraudulent transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA").  *See* TEX. BUS. & COM. CODE ANN. §§ 24.001-.013 (West 2013).

The relief that the Receiver seeks through his Additional MPSJ is identical to the relief that the Court awarded in its January 22, 2013 Orders in favor of the Receiver and against other similarly situated net-winner defendants.  [*See* Case No. 3:09-CV-0724-N-BG, Doc. 909; Case No. 3:10-CV-0366-N-BG, Doc. 310; Case No. 3:10-CV-0415-N-BG, Doc. 88; Case No. 3:10-CV-0478-N-BG, Doc. 89; Case No. 3:10-CV-0528-N-BG, Doc. 68; Case No. 3:10-CV-0725-N-BG, Doc. 59; Case No. 3:10-CV-1002-N-BG, Doc. 165 (collectively, the "MPSJ Orders").]  The Fifth Circuit subsequently and unanimously affirmed those MPSJ Orders.  *See Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014).

As a result, and for all of the reasons set forth herein — as well as for the reasons contained in the Receiver's June 7, 2011 Motion for Partial Summary Judgment Against Certain Stanford Net Winner Investors, the June 7, 2011 Brief in Support of the Receiver's Motion for Partial Summary Judgment Against Certain Stanford Net Winner Investors, and the Receiver's

---

[1] The phrase "Net Winnings" as used herein and in the Additional MPSJ has the same meaning as in the Court's prior MPSJ Orders; in particular, that phrase refers to the amounts SIBL paid to each Net Winner Investor in excess of his, her, or its investments in SIBL.

October 12, 2011 Reply in Support of his Motion for Partial Summary Judgment Against Certain

Stanford Net Winner Investors[2] — the Court should grant summary judgment in favor of the

Receiver and against the Net Winner Investors for their Net Winnings.

ARGUMENT & AUTHORITIES

I.      **The summary judgment standard.**

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a).  Therefore, a plaintiff is entitled to summary judgment as to any

claim he can establish as a matter of law.  As this Court has held in the above-captioned lawsuits,

> The moving party bears the initial burden of informing the court of
> the basis for its belief that there is no genuine issue for trial.  Once
> the movant has made this showing, the burden shifts to the
> nonmovant to establish that there is a genuine issue of material fact
> so that a reasonable jury might return a verdict in its favor.
> Moreover, conclusory allegations, speculation, and unsubstantiated
> assertions will not suffice to satisfy the nonmovant's burden.
> Indeed, courts resolve factual controversies in favor of the
> nonmoving party only when an actual controversy exists, that is,
> when both parties have submitted evidence of contradictory facts.

[*See* MPSJ Orders at 15 (citations and quotation marks omitted).]  If a defendant seeks to defeat

summary judgment by relying on an affirmative defense, in order to succeed, the defendant must

"'come forward with summary judgment evidence sufficient to raise an issue of material fact on

each element of the defense.'"  *Barrington Group Ltd., Inc. v. Classic Cruise Holdings S. de

R.L.*, Civil Action No. 3:08-CV-1813-B, 2010 WL 184307, at *5 (N.D. Tex. Jan. 15, 2010)

---

[2]      For purposes of judicial economy, the Receiver incorporates by reference as if fully set forth herein his
prior Motion, Brief, and Reply.  [*See* Case No. 3:09-CV-0724-N-BG, Docs. 615, 615-1, 783; Case No. 3:10-CV-
0366-N-BG, Docs. 145, 145-1, 249; Case No. 3:10-CV-0415-N-BG, Docs. 46, 46-1, 70; Case No. 3:10-CV-0478-N-
BG, Docs. 46, 46-1, 72; Case No. 3:10-CV-0528-N-BG, Docs. 30, 30-1, 59; Case No. 3:10-CV-0725-N-BG, Docs.
24, 24-1, 44; Case No. 3:10-CV-1002-N-BG, Docs. 89, 89-1, 133.]

(quoting *Bassett v. Am. Nat'l Bank*, 145 S.W.3d 692, 696 (Tex. App.—Fort Worth 2004, no

pet.)).

**II.      The evidence and prior holdings of this Court and the Fifth Circuit conclusively
establish that SIB was part of the Stanford Ponzi scheme and that the Net Winner
Investors received substantial Net Winnings from that Ponzi scheme.**

      **A.      SIB was part of the Stanford Ponzi scheme.**

      "A 'Ponzi scheme' typically describes a pyramid scheme where earlier investors

are paid from the investments of more recent investors, rather than from any underlying business

concern, until the scheme ceases to attract new investors and the pyramid collapses." *Brown*,

767 F.3d at 433 (quoting *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185,

188 n.1 (5th Cir. 2013) (hereinafter "*DSCC*") (quotation marks omitted)).  "The fraud consists of

funneling proceeds received from new investors to previous investors in the guise of profits from

the alleged business venture, thereby cultivating an illusion that a legitimate profit-making

business opportunity exists and inducing further investment."  *Donell v. Kowell,* 533 F.3d 762,

767 n.2 (9th Cir. 2008) (quoting *Wyle v. C.H. Rider & Family (In re United Energy Corp*.), 944

F.2d 589, 590 n.1 (9th Cir. 1991)).

      The evidence conclusively establishes that the Stanford entities, including SIB,

comprised a Ponzi scheme.  *See* App. at 52, Exhibit KVT-C at ¶ 8 ("James Davis admitted in his

rearraignment that the Stanford enterprise was a Ponzi scheme from the beginning, and I have

not seen anything in the records I have reviewed to indicate otherwise."); App. at 69, Exhibit

KVT-D at ¶ 5 ("The Stanford Entities were operating as a Ponzi scheme from at least 1999

forward[.]").  Karyl Van Tassel, an experienced Certified Public Accountant and a Managing

Director of Navigant Consulting, Inc., has given declarations in which she confirms that the

Stanford enterprise was a Ponzi scheme.[3]  Ms. Van Tassel summarizes her findings as follows:

> [M]y findings are consistent with the SEC's allegations and James
> Davis's admission that SIB was a Ponzi scheme.  SIB was
> insolvent (*i.e.*, its liabilities exceeded the fair value of its assets)
> from at least 2004 and probably for much longer, yet it continued
> selling CDs to the end.  It induced investors to buy CDs by
> offering substantially above-market rates, issuing financial
> statements and other data that significantly overstated its earnings
> and assets, and misrepresenting its business model, investment
> strategy, financial strength, the safety and nature of its investments
> and other facts important to investors.  SIB incentivized
> Stanford-affiliated financial advisors to convince their clients to
> purchase SIB CDs over other kinds of investments by paying the
> financial advisors above-market commissions and other
> compensation tied to CD sales and to the retention of the CDs
> within SIB.  SIB's actual (as opposed to reported) earnings and
> assets, however, were insufficient to meet its CD payment
> obligations.  SIB could only keep the scheme going by selling yet
> more CDs and using the proceeds to pay redemptions, interest and
> operating expenses. Significant sums were also diverted to finance
> Allen Stanford's opulent life style of yachts, jet planes, travel,
> multiple homes, company credit cards, etc.  Davis, Holt and other
> insiders were paid handsomely for their complicity.  Davis, as part
> of his plea agreement, agreed to forfeit $1 billion in personal assets
> derived from the Ponzi scheme.[4]
>
>                   *        *        *
>
> Based on FTI's continued investigation of the operations of the
> Stanford Entities and on the data and documents cited or
> incorporated [into the supplemental declaration], it is my opinion
> that: [t]he Stanford Entities were operating as a Ponzi scheme from
> at least 1999 forward; SIB was insolvent (*i.e.*, its liabilities
> exceeded the fair value of its assets) from at least 1999 forward;

---

[3]      Both this Court and the Fifth Circuit have credited the reliability of Ms. Van Tassel's declarations.  *See Brown*, 767 F.3d at 439 ("[T]he Van Tassel Declarations . . . provide clear, numerical support for the creative reverse engineering undertaken by Stanford executives to accomplish the Ponzi scheme.") (quotations marks omitted); *see also* [MPSJ Orders at 17-18 ("***The Van Tassel Declaration is Competent Summary Judgment Evidence.***  This Court, and others, have repeatedly relied on the declarations of Karyl Van Tassel in connection with Stanford matters. . . . The Court has previously noted that Van Tassel's declarations draw conclusions from objectively verifiable Stanford entity, customer, and third party records, worksheets, and databases using reliable practices and methodologies that are standard in the fields of accounting and finance.") (emphasis in original, quotations marks omitted)].

[4]      *See* App. at 52-53, Exhibit KVT-C at ¶ 8.

Robert Allen Stanford's . . . reported income from at least 1999 forward is comprised almost exclusively from the Stanford Entities, including proceeds from SIB CDs; and SFGC was insolvent (*i.e.*, its liabilities exceeded the fair value of its assets) from at least 2000 forward and received SIB CD funds.[5]

That Stanford operated a Ponzi scheme of which SIB was a part is beyond all doubt, as both this Court and the Fifth Circuit have made clear. "This Court has repeatedly held that Stanford operated a Ponzi scheme." [*See* MPSJ Orders at 16; *see also id.* at 17 ("Here, the Court again holds that, as a matter of law, Stanford operated a Ponzi Scheme.").] The Court continued:

Stanford operated the entire network of Stanford Entities as an integrated unit in order to perpetrate a massive worldwide fraud. Further, [the Court has] held that each Stanford Entity either participated in the scheme, derived benefit from the scheme, or lent the appearance of legitimacy to the entirety of Stanford's fraudulent enterprise. . . . Additionally, the majority of all the Stanford Entities' proceeds came through the sales of CDs through Stanford International Bank ("SIB").

[*See* MPSJ Orders at 8-9 (quotation marks omitted); *see also id.* at 11 (holding that SIB "was a sham, existing solely to perpetuate a worldwide fraud"); *id.* at 19 (citing Ms. Van Tassel's declarations and stating that "[t]he Court finds this evidence sufficient to establish that the Stanford Entities operated as a Ponzi scheme.").]

The Fifth Circuit has found the same:

This case stems from the Stanford Ponzi scheme. . . . R. Allen Stanford created and owned a network of entities (the "Stanford entities") that sold certificates of deposit ("CDs") to investors through the Stanford International Bank, Ltd. ("SIB"). These CDs promised investors extraordinarily high rates of return. Using the Stanford entities, Stanford and his employees would explain to "prospective investors that their funds would be reinvested in high-quality securities so as to yield the investors the high rates of return purportedly guaranteed by the CDs." But, instead of

---

[5]     *See* App. at 69-70, Exhibit KVT-D at ¶ 5.

> actually investing the money raised by selling these CDs, Stanford used the money to pay prior investors their promised returns. By paying the prior investors these returns, Stanford, and the Stanford entities, developed credibility and a track record of supposed success, which in turn allowed them to recruit additional investors.

*Brown*, 767 F.3d at 433 (citing and quoting *DSCC*, 712 F.3d at 188, 198); *see also Brown*, 767 F.3d at 436 ("As prior opinions of this Court and the district court have made clear, the Stanford Ponzi scheme was centered in and operated out of Houston, Texas."). The Fifth Circuit continued:

> It is well-established that the Stanford principles—Stanford and Davis—were operating a Ponzi scheme. In both *DSCC* and *Alguire*, we explained that Stanford "created and perpetrated a 'Ponzi scheme.'" We noted that Davis' Plea "reflects a classic Ponzi scheme," and that the "Van Tassel Declarations also provide clear, numerical support for the creating reverse-engineering undertaken by Stanford executives to accomplish the Ponzi scheme."

*Id.* at 439 (citing and quoting *DSCC*, 712 F.3d at 185, 188, and *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011)); *see also Brown*, 767 F.3d at 442 ("SIB was insolvent and remained insolvent during the Ponzi scheme.").

Even the Supreme Court of the United States has acknowledged that Stanford was operating a fraudulent Ponzi scheme of which SIB was a part. *See Chadbourne & Parke LLP v. Troice*, 134 S.Ct. 1058, 1064 (2014) ("The plaintiffs [*i.e.*, SIB CD investors] expected that Stanford International Bank would use the money it received to buy lucrative assets. But instead, Stanford and his associates used the money provided by new investors to repay old investors, to finance an elaborate lifestyle, and to finance speculative real estate ventures."); *id.* at 1070 ("Frauds like the one here—including *this fraud itself*—will continue to be within the reach of federal regulation[.]") (emphasis in original); *id.* at 1071 ("[T]he Bank is the fraudster[.]"). Therefore, the evidence and court holdings establish conclusively that the

Stanford fraud, directed by Stanford and Davis and accomplished through the operations of SIB

and the myriad other Stanford entities, was a Ponzi scheme from its inception.

### B.    The Net Winner Investors received substantial Net Winnings from SIB.

The Net Winner Investors each received from SIB not only the full repayment of

their investments, but also significant amounts in excess of those investments.  The Net Winner

Investors to whom the Additional MPSJ applies, along with their respective amounts of Net

Winnings, are detailed in Ms. Van Tassel's February 25, 2015 Supplemental Declaration[6] and

are in the chart below:

| Net Winner Investors | Net Winnings |
|---|---|
| Robert J. Bruno | $82,262.63 |
| George Joseph Rollar and Dolores May Payer Rollar | $520,679.28 |
| Chloee K Poag and G. Dan Poag Jr. | $247,246.90 |
| Anibal Morgado, David Morgado, and Vasco M. Diniz Morgado | $672,735.41 |
| Carlos Alberto Gonzalez Castillo and Xiomara Ortega de Gonzalez | $178,662.44 |
| James F. Seymour Family Trust, James Seymour, and Loretta Seymour | $161,065.91 |
| William Ray Burk II | $86,671.11 |
| Woolley Exemption Trust, Woolley Family Trust Co-Successor, and Woolley Survivor Trust | $108,649.63 |
| Frank Bamford and Diana J. Bamford | $78,573.13 |
| Gerardo Caracena, Mercedes Caracena, and Katyna Caracena | $64,412.32 |
| The Estate of Harry E. Womack | $45,484.21 |
| Iliana S. de Bucay, Isaac Stavans Altschuler, and Malvina F. de Stavans | $23,159.74 |
| Joyce S. Erfurdt and T. Mark Kelly, in Their Capacities as Co-Executors of the Estate of Michel T. Halbouty | $181,933.53 |
| Sophie Tebele | $156,749.09 |
| Sharon Jerene Marable | $56,439.42 |

Collectively, the Net Winner Investors received over $2.6 million in Net

Winnings.[7]  As described in detail above and in Ms. Van Tassel's declarations, SIB was not a

legitimate bank and did not pay interest out of earnings—it was the engine of an insolvent Ponzi

scheme that relied on new CD proceeds to pay existing investors.[8]

---

[6]    *See* App. at 5, Feb. 25, 2015 Van Tassel Supp. Decl. at ¶ 4.

[7]    *See id.*

[8]    *See id.*; App. at 52-60, Exhibit KVT-C at ¶¶ 8-26; App. at 69-77, 84-89, Exhibit KVT-D at ¶¶ 5-13, 31-40.

The Receiver seeks recovery of the Net Winner Investors' Net Winnings, so that those funds may be equitably distributed among the victims of the Stanford Ponzi scheme. Through the Additional MPSJ, the Receiver seeks summary judgment on the legal point that the Net Winner Investors did not, as a matter of law, provide reasonably equivalent value for their Net Winnings. For the reasons set forth below, prevailing legal principles and law of the case mandate such a judgment.

**III.    As a matter of law, Net Winnings paid to the Net Winner Investors were fraudulent transfers under TUFTA and, therefore, subject to recovery by the Receiver.**

Section 24.005(a) of TUFTA[9] specifies when a transfer is fraudulent:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Subsection (a)(1) is commonly referred to as the "actual fraud" ground for fraudulent-transfer claims,[10] and subsection (a)(2) is typically referred to as the "constructive fraud" ground. If

---

[9]    The Texas Uniform Fraudulent Transfer Act applies. For the reasons explained in the Court's MPSJ Orders, TUFTA applies because, *inter alia*: (1) "the Receiver's relevant contact is Texas," since "Stanford operated the entire network of Stanford Entities as an integrated unit in order to perpetrate a massive worldwide fraud," with such aggregated Entities being "headquartered in Houston, Texas"; (2) "any conflict between Antigua law and UFTA is false"; (3) "there is no conflict of laws between UFTA-enacting states as relating to the instant motions." *See* [MPSJ Orders at 8-14]; *see also Brown*, 767 F.3d 434-36 (affirming the MPSJ Orders in this regard).

either the (a)(1) or (a)(2) ground is proven, then the Receiver is entitled to avoidance of the transfers and judgments against the transferees "for the value of the asset[s] transferred." *See* TEX. BUS. & COM. CODE ANN. §§ 24.008(a)(1), 24.009(b).[11]  In this case, the summary judgment evidence conclusively proves both grounds.  In addition, this Court's and the Fifth Circuit's prior holdings support the same result.  *See Brown*, 767 F.3d at 438-443; *see also* [MPSJ Orders at 15-30].

### A.  The Net Winner Investors are liable for their Net Winnings under section 24.005(a)(1), the "actual fraud" provision of TUFTA.

If, as in this case, the transferor was engaged in a Ponzi scheme or similar fraud, then actual intent under section 24.005(a)(1) is conclusively presumed.  As the Fifth Circuit has expressly held in the context of the Receiver's net-winner lawsuits:

> "In this circuit, proving that [a transferor] operated as a Ponzi scheme establishes the fraudulent intent behind the transfers it made." . . . It is well-established that the Stanford principles operated the Stanford entities as a Ponzi scheme, and the existence of the Ponzi scheme establishes fraudulent intent.  In other words, this is not the case of an innocent debtor preferring one creditor over another; instead, this was an insolvent Ponzi scheme perpetuated by paying old investors with new investors' investments.  We agree with the district court that the Receiver

---

[10]     "Under the actual fraud theory, the receiver may recover the entire amount paid to the winning investor, *including* amounts which could be considered 'return of principal.'  However, there is a 'good faith' defense that permits an innocent winning investor to retain funds up to the amount of the initial outlay." *Donell*, 533 F.3d at 771 (emphasis in original); *see also Williams v. FDIC (In re Positive Health Mgmt.)*, 769 F.3d 899, 908-909 (5th Cir. 2014) (noting that only "innocent investors" who prove, *inter alia*, that they received the transfers in good faith may retain their so-called principal returns); *SEC v. Forte*, Civil Nos. 09-63, 09-64, 2009 WL 4809804, at *5 (E.D. Pa. Dec. 15, 2009) ("An innocent winning investor in a Ponzi scheme may retain his principal through the demonstration of 'good faith.'").  Although the Receiver has claims against the Net Winner Investors and other net-winner defendants for recovery of transfers that supposedly represented repayments of the "principal" amounts of their investments, recovery of those amounts is not the subject of the Receiver's Additional MPSJ.  The Receiver expects, however, to prosecute his claims for those amounts against Net Winner Investors and other net-winner defendants who cannot establish their good faith.

[11]     A creditor's ability to obtain a fraudulent transfer judgment is subject to certain defenses set forth in section 24.009 of TUFTA.  However, none of those defenses is available to the Net Winner Investors under the conclusively established facts of this case.  The only section 24.009 defense that could even facially apply to a Ponzi investment scheme is discussed in section III(A) of this Brief, *infra*.

established that the Stanford principles transferred monies to the
investor-defendants with fraudulent intent.

*Brown*, 767 F.3d at 439 (quoting *Alguire*, 647 F.3d at 598).  As a result, the Receiver's success

on the merits concerning his case-in-chief based upon the "actual fraud" ground is virtually

assured.

Although section 24.009(a) of TUFTA provides an affirmative defense to

transferees "who took in good faith and for a reasonably equivalent value," the Net Winner

Investors cannot satisfy this affirmative defense as a matter of law.  As this Court has held, "[a]

defendant invoking this defense has the burden to show *both* objective good faith and reasonable

equivalence of consideration."  [*See* Case No. 3:09-CV-0724-N-BG, Doc. 456 at 13 (emphasis in

original).]  But the Court need not consider the good-faith element because the Net Winner

Investors are unable, as a matter of law, to show that they exchanged reasonably equivalent value

for their Net Winnings.

This Court has already held that net-winner defendants cannot provide value for

the Net Winnings they received.  [*See* MPSJ Orders at 21-25.]  The Court stated in relevant part:

> [L]iteral value provided to a scheme that only extends the fraud, is
> not value, as defined by UFTA, as a matter of law. . . . [T]he Court
> sides with those courts that choose not to enforce investment
> contracts with a Ponzi scheme.  Accordingly, the Net Winners
> failed to provide value in exchange for the interest they
> received. . . . Starting from the premise that contracts with Ponzi
> schemes are void and unenforceable, the general rule that investors
> . . . must return interest payments necessarily follows. . . . Because
> the investors had no claim for interest, such payments were not
> given in exchange for value.  Accordingly, the Receiver may avoid
> the interest payments given in excess of the Net Winners' principal
> investments. . . . Allowing Net Winners to keep their fraudulent
> above-market returns in addition to their principal would simply
> further victimize the true Stanford victims, whose money paid the
> fraudulent interest.

[*See id.* at 23-25.]

The Fifth Circuit upheld the Court's MPSJ Orders in all respects. *Brown*, 767 F.3d 430, *passim*. To start, the Fifth Circuit expressly agreed with the Court that "Allowing Net Winners to keep their fraudulent above-market returns in addition to their principal would simply further victimize the true Stanford victims, whose money paid the fraudulent interest." *Id.* at 441. It also went on to say:

> [W]e find permitting clawback of interest payments made by Ponzi schemes—the approach taken by the district court—to be more persuasive. . . . Here, we conclude that there is no valid claim for interest; the CDs issued by SIB are void and unenforceable. This is because "[t]o allow an [investor] to enforce his contract to recover promised returns in excess of his undertaking would be to further the debtors' fraudulent scheme as the expense of other [investors]." . . . SIB received no benefit or preservation of wealth from the payment of interest to the investor-defendants; indeed, SIB was insolvent and remained insolvent during the Ponzi scheme. Each payment of "interest" only worsened this insolvency because each payment was made using a later investor's deposit. Thus, from the perspective of the transferor, each interest payment decreased net worth, and because the investor-defendants have no claim for contractual interest from a Ponzi scheme, the transferor received nothing of value that preserved its net worth. Accordingly, we conclude that the district court did not err in granting partial summary judgment to the Receiver.

*Id.* at 441-42 (quoting *In re Taubman*, 160 B.R. 964, 985 (Bankr. S.D. Ohio 1993)).

As a result of the foregoing clear and binding legal precedent, the Net Winner Investors cannot establish their provision of any value for the Net Winnings they received. Because their affirmative defense must fail as a matter of law, the Net Winner Investors are liable to the Receiver for their Net Winnings under TUFTA section 24.005(a)(1).

**B.     The Net Winner Investors are liable for their Net Winnings under section 24.005(a)(2), the "constructive fraud" provision of TUFTA.**

The Net Winner Investors are also liable as a matter of law under section 24.005(a)(2) of TUFTA, the "constructive fraud" provision. Under this provision, a transfer is deemed fraudulent if the debtor (1) made it "without receiving a reasonably equivalent value in

exchange for the transfer" and (2) either "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." TEX. BUS. & COM. CODE ANN. § 24.005(a)(2).

The first element is conclusively established because, as discussed in the preceding section, an investor in a Ponzi scheme does not give reasonably equivalent value for transfers that he receives in excess of the amount of his investment.

Both of the disjunctive prongs of the second element are also conclusively proven because it is presumed, as a matter of law, that a debtor engaged in a Ponzi scheme has unreasonably small capital and is incurring debts he will be unable to pay. "[A] Ponzi scheme … is, as a matter of law, insolvent from its inception." *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006); *see also Alguire*, 647 F.3d at 597 (same). A finding that a debtor "was engaged in a Ponzi scheme—and thus was insolvent from the inception of its business—likewise compels the conclusion that the [d]ebtor was operating with unreasonably small capital at the time the transfers in question were made," and if there is "evidence that [the debtor] was operating a Ponzi scheme from the time it commenced operations, the Court may find as a matter of law that the [d]ebtor intended to incur debts beyond its ability to repay." *See Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 650 (Bankr. S.D. Ohio 2006). Another court, stating the presumption in the language of UFTA, held:

> Proof that transfers were made pursuant to a Ponzi scheme generally establishes that the scheme operator "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," . . . or "[i]ntended to incur, or

believed or reasonably should have believed that he or she would
incur, debts beyond his or her ability to pay as they became due."

*Donell*, 533 F.3d at 770-71.

The evidence establishes that the Stanford Ponzi scheme was insolvent from its
inception and, therefore, that the Ponzi scheme principals were engaged in a scheme where the
remaining assets — if any — were unreasonably small and that they intended to incur or
believed or reasonably should have believed that they were incurring debts beyond their ability
to pay as they became due.  And because the Net Winner Investors, as a matter of law, did not
give reasonably equivalent value for their Net Winnings, TUFTA section 24.005(a)(2) provides a
second basis upon which the Receiver should be granted summary judgment against them for
their Net Winnings.

## Conclusion & Prayer

For the reasons explained herein and in the Additional MPSJ, the Receiver
respectfully requests that the Court grant the Receiver's Additional MPSJ and grant the Receiver
such other and further relief to which he may be justly entitled.

Brief in Support of
Receiver's Motion for Partial Summary Judgment
Against Additional Net Winner Investors                                                     13

Dated: February 25, 2015

Respectfully submitted,

**BAKER BOTTS L.L.P.**

By: */s/ Kevin M. Sadler*
    Kevin M. Sadler
    Texas Bar No. 17512450
    kevin.sadler@bakerbotts.com
    Scott D. Powers
    Texas Bar No. 24027746
    scott.powers@bakerbotts.com
    David T. Arlington
    Texas Bar No. 00790238
    david.arlington@bakerbotts.com
    98 San Jacinto Blvd., Suite 1500
    Austin, Texas 78701-4039
    512.322.2500
    512.322.2501 (Facsimile)

**ATTORNEYS FOR**
**RECEIVER RALPH S. JANVEY**

## CERTIFICATE OF SERVICE

On February 25, 2015, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I will serve all counsel or *pro se* parties of record electronically or by other means authorized by the Court or the Federal Rules of Civil Procedure.

*/s/ Kevin M. Sadler*
Kevin M. Sadler