# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY IN HIS CAPACITY AS COURT APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD. ET AL., | § § § § | |
| *Plaintiff* | § § | Case No. 3:09-CV-0724-N-BQ |
| vs. | § § | |
| JAMES R. ALGUIRE ET AL., | § | |
| *Defendants* | § | |

## DEFENDANTS' MOTION TO COMPEL COMPLETE INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS FROM THE RECEIVER

The Alguire Defendants represented by Stanley Law[1] ("Defendants") file this Motion to Compel complete responses to requests for production and interrogatories.  For the reasons stated below the Court should grant an order compelling the Receiver to provide further responses, without objections, and produce the documents requested by the Defendants.

---

[1] James Alguire, Orlando Amaya, Susana Anguiano, Sylvia Aquino, John Arthur, Patricio Atkinson, Donal Bahrenburg, Brown Baine, Jon Barrack, Oswaldo Bencomo, Teral Bennett, Lori Bensing, Andrea Berger, Norman Blake, Nigel Bowen, Alexander Braune, Charles Brickey, Nancy Brownlee, George Cairnes, Scott Chaisson, Susana Cisneros, Ronald Clayton, Neal Clement, Michael Conrad, Keith Cox, John Cravens, Patrick Cruikshank, Raymond Deragon, Jason Fair, Freddy Fiorillo, Rosalia Fontanals, James Fontenot, Roger Fuller, Attlee Gaal, Miguel Garces, Greg Gelber, Eric Gildhorn, Luis Giusti, Jr., John Glennon, Mark Groesbeck, Rodney Hadfield, Gary Haindel, Dirk Harris, Charles Hazlett, Luis Hermosa, Patricia Herr, Steven Hoffman, John Holliday, Charles Jantzi, Allen Johnson, Joe Klingen, Bruce Lang, Grady Layfield, James Lebaron, Jason Leblanc, William Leighton, Robert Lenoir, Trevor Ling, Robert Long, Anthony Makransky, Manuel Malvaez, Michael Mansur, Claudia Martinez, Janie Martinez, Aymeric Martinoia, Bert Deems May, Carol Mccann, Francesca McCann, Doug McDaniel, Matt McDaniel, Gerardo Meave, Lawrence Messina, William Metzinger, Donald Miller, Trent Miller, Hank Mills, Peter Montalbano, Rolando Mora, David Morgan, Shawn Morgan, Spencer Murchison, Jon Nee, Aaron Nelson, Norbert Nieuw, Lupe Northam, Scott Notowich, Monica Novitsky, Timothy Parsons, Saramita Perez, Tony Carlos Perez, James D. Perry, Judith Quinones, Michael Ralby, Steve Restifo, Jeff Ricks, Steve Robinson, Eddie Rollins, Rocky Roys, John Santi, John Schwab, Haygood Seawell, Doug Shaw, Brent Simmons, Steve Slewitzke, Paul Stanley, Sandy Steinberg, Heath Stephens, William Stone, Audrey Truman, Jose Ulloa, Miguel Valdez, Tim Vanderver, Jaime Vargas, Maria Villanueva, Chuck Vollmer, William Whitaker, David Whittemore, Hunter Widener, Michael Word And Ryan Wrobleske.

# I.    INTRODUCTION

This Motion relates to the following discovery responses:

| DOC | DATE FILED | TITLE—DESCRIPTION |
|---|---|---|
| 2151 | Sep 30, 2017 | *Receiver's Objections and Responses to the Alguire Defendants' First Request for Production of Documents* (containing 37 Requests for production propounded by 80 defendants).[2] |
| 2308 | Dec 18, 2017 | *Receiver's Objections and Responses to 58 Defendants' First Request for Production of Documents* (containing 37 Requests for production propounded by 58 defendants). |
| 2538 | Apr 12, 2018 | *Receiver's Objections and Responses to 7 Defendants' First Request for Production of Documents* (containing 37 Requests for Production propounded by seven defendants).[3] |
| 2552 | April 19, 2018 | *Receiver's Objections and Responses to 120 Defendants' Requests for Production, Responses to their Requests for Admission, and Answers to their Interrogatories* (containing 13 Requests for Production, 11 Requests for Admission, and 9 Interrogatories propounded by 120 defendants). |

The thirty-seven requests for production and the Receiver's responses thereto in Documents 2151, 2308 and 2538 are substantially identical, and will be treated as one.

The Defendants are former employees of Stanford. The Receiver brought claims under the Texas Fraudulent Transfer Act seeking to "claw back" the compensation they received as employees of these defunct entities.

The large majority of the defendants were financial advisors with established careers

---

[2] These eighty defendants were represented by Brad Foster of Andrews Kurth at the time the discovery requests were served.

[3] These seven defendants had not been served with process or filed a responsive pleading by December 2017 when the requests for production in Doc. 2308 were served.

before being lured away from their jobs to work for Stanford.  Stanford sought them out because they had established careers with significant books of business.  Most of them were recruited from Stanford's competitors, and relied on Stanford's many representations that it was a bona fide business.[4]  These representations were reinforced by the fact that Stanford operated in a regulated environment where the SEC, FINRA and others had reviewed and blessed the operations of Stanford.  Once recruited, the Defendants did what they had previously done at other firms:  provide financial services and products to their clients.  To be sure, Stanford brought on successful advisors in the hopes that they would recommend that these clients purchase SIBL CDs.  However, like other financial institutions Stanford offered a variety of financial products including stocks, bonds, mutual funds, precious metals, and other types of securities.  A substantial amount of the Defendants' business was unrelated to the SIBL CDs.  Nevertheless, many of the Defendants' clients did purchase CDs.  Many of the Defendants themselves, like their clients, invested their own, and their families and friends' money in Stanford CDs, and lost their investments just like the other Stanford investors.

On February 17, 2009, the United States Marshals Service raided various Stanford offices.  In Houston, for example, they entered the SGC building, and a Marshal or other law enforcement officer went to each office and instructed each employee to "stand up from your desk, pick up your phone, and walk out."  They were later allowed back in their offices under supervision to collect their personal items.  Similar scenarios played out at the other SGC offices.

These former employees now find themselves the target of an aggressive lawsuit that contains allegations that they "actually knew or should have known" that Stanford was operated as a Ponzi scheme and they profited therefrom. (Doc. 1532, p. 17.  Receiver's Third Am.

---

[4] See the facts stated by the SEC in *SEC v. Stanford International Bank, Ltd. et al*, No. 3:09-cv-0298-N (N.D. Tex 2009) Second Amended Complaint, Doc. 490-2 at p. 23.

Complaint).  These allegations are very hurtful to the Defendants. The relationships they had

developed with their clients over many years, along with their careers, have been destroyed, in

part by the loose allegations made by the Receiver in this lawsuit.

The Receiver has chosen to sue 313 former employees individually in a single

complaint.[5]  The Third Amended Complaint makes general allegations lumping all the

Defendants together, such as, "the Former Stanford Employees provided no reasonably

equivalent value for any Transfers" and the "Former Stanford Employees either actually knew or

should have know of the fraudulent nature of the Transfers," and the "information available to

the Former Stanford Employees regarding SIBL's investment portfolio was inadequate."  (Doc.

1532, p. 17, 20, 21).  Even if the allegations in the Complaint suffice under Rule 8(a)(2) the

entire framework of the Rule is built on the idea that discovery will allow a defendant to obtain

specific, particularized information of the factual basis for the allegations against him.  The

Defendants have attempted to obtain this particularized information via their discovery requests.

Nevertheless, in responding to the discovery requests, the Receiver treats the Defendants en

masse rather than as individuals.  The Defendants were sued individually for their individual

actions.  The Receiver was obligated to have a good faith basis for making each allegation

against each Defendant, and the Defendants are entitled to receive specific responses to their

discovery requests.  The individual Defendant is not required to sift through mountains of

documents to ascertain the evidence in support of allegations made against him or her.  The

Receiver brought this lawsuit at his pleasure, and he is obligated to provide responses

particularized to each individual Defendant.

---

[5] Approximately 120 of these defendants are represented by the attorneys at Stanley Law, and are the movants
herein.

## II.   RECEIVER'S BOILERPLATE OBJECTIONS VIOLATE NORTHERN DISTRICT STANDARDS

The Receiver has lodged a litany of standard boilerplate objections to what are routine discovery requests inquiring about damages, specific factual assertions in the complaint, and affirmative defenses.[6]  These objections include (1) that the requests are overbroad and unduly burdensome; (2) the requested information is privileged; (3) the requests are vague and ambiguous; (4) the requests seek information that is not relevant; (5) discovery is not yet complete, (6) the requests require the disclosure of information not yet required to be disclosed under the Rules or the Scheduling Order, and (7) the information is not within the possession, custody or control of the Receiver.

The Northern District holds that "so-called boilerplate or unsupported objections—even when asserted in response to a specific discovery request … are improper and ineffective." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014).  Citing the Fifth Circuit, the Court stated, "simply objecting to requests as 'overly broad, burdensome, oppressive and irrelevant,' without showing 'specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive," is inadequate to 'voice a successful objection.'"  *Id*., quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482 (5th Cir. 1990).  The Court further noted that the "failure to particularize" objections as required leads to one of two conclusions:  either the responding party "lacked a factual basis to make the objections" in violation of Rule 26 or they complied with the Rule, made a reasonable inquiry and "discovered facts that would support a legitimate objection, but they were waived for failure to specify them as required."  *Id.* at 484.  The Court instructed:

A party served with written discovery must fully answer each interrogatory or

---

[6] The attached Appendix of Receiver's Objections to Discovery contains a chart which correlates the Receiver's objection with each discovery request.

document request to the full extent that it is not objectionable and affirmatively explain what portion of the interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld.

*Id*. at 485.  Regarding the Receiver's objections that discovery requests are "vague" and

"ambiguous" the Court stated:

if part or all of an interrogatory is allegedly vague and ambiguous, the responding party, to comply with the Federal Rules, must, if possible, explain its understanding of the allegedly vague and ambiguous terms or phrases and explicitly stated that its answer is based on that understanding. … A similar analysis applies to an objection to a request as being overbroad in its scope or as imposing an undue burden on the responding party to answer or respond

*Id*. at 487.  Regarding the Receiver's objections that discovery requests are "overly broad" and

"unduly burdensome," the Court stated:

A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive.  This requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.  Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate.

*Id*. at 490.  Regarding the Receiver's assertion of privilege, the Court stated:

To comply with the requirements to support withholding any responsive document or information as privileged or protected work product, a privilege log or equivalent document complying with Fed. R. Civ. P. 26(b)(5)(A)'s requirements must be produced for any documents, communications, or other materials withheld from production on the grounds of attorney-client privilege, work product, or other privilege, immunity, or protection.

*Id*. at 486.  Regarding the Receiver's assertion that certain requests call for information that is

not relevant and not proportional to the needs of the case, the Court has stated that

> a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that any discovery request that is relevant to any party's claim or defense fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address … the importance of the issues at stake in the action, the amount in controversy … and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Samsung Electronics America, Inc., v. Chung*, 321 F.R.D. 250, 284 (N.D. Tex. 2017).  Regarding the objection that a request seeks information that is not in the possession custody or control of the Receiver, the Court stated, it is well settled that a responding party's obligations do not extend to non-existent materials.  Furthermore,

> If responsive documents do exist but the responsive party claims lack of possession, control, or custody, the party must so state with sufficient specificity to allow the Court (1) to conclude that the responses were made after a case-specific evaluation and (2) to evaluate the merit of that response.

*Heller v. City of Dallas* at 485.

The Receiver has also lodged more creative, but no less invalid, objections that (8) "the request characterizes a document as a valid or enforceable 'note,' 'loan,' or 'agreement,' which it is not …" (9) the request "purports to shift the burden of proving lack of value or reasonably equivalent value to the Receiver, when it is the Defendants who bear the burden of proving value and reasonably equivalent value;"  (10) the request "purports to shift the burden of proving lack of good faith to the Receiver, when it is the Defendants who bear the burden of proving good faith;"  (11) the request is "misleading or incomplete.[7]  These objections are so obscure that without further explanation they have little meaning—for example, what does it mean that a request for production is "misleading or incomplete"?  How does an interrogatory purport to shift the burden of proof?

---

[7] Appendix.

Both the former "boilerplate" objections (1-7) and the latter objections (8-11) merely obfuscate the fact that the Receiver has failed to comply with the Defendants' discovery requests. They have no basis, and they fail to apprise the Court what documents are being withheld based upon the objection. The Court should order the Receiver to amend his responses and remove the objections.

### III.    RECEIVER'S SUBSTANTIVE RESPONSES ARE INADEQUATE

The Receiver has been extremely aggressive in exacting discovery from the Defendants—discovery that is used largely designed to harass and intimidate as opposed to obtain information relating to claims and defenses.[8]  Consistent with this strategy the Receiver has refused to provide adequate responses to Defendants' discovery requests which seek discoverable information essential to the defense of their cases.  The Defendants request that the Court order the Receiver to adequately respond to the following discovery requests:

#### RECEIVER'S RESPONSES IN DOC. 2552

#### INTERROGATORY NOS. 1-2

Interrogatory no. 1 requests the total amount of damages the Receiver seeks from each defendant and a detailed calculation of that total.  This is similar to the information that the Receiver was required but failed to disclose in its Rule 26(a)(1)(iii) initial disclosures.  Similar to

---

[8] The Receiver's strategy is apparently to increase the cost and burden of litigation as a method of extracting settlements.  In addition to extensive written discovery propounded to each defendant, the deposition of each defendant has thus far taken approximately seven hours, very little of which time was spent gathering information related to claims and defenses.  At the end of the first defendant's deposition Receiver's counsel has stated what is superficially a truism—that if the defendants settle, we wouldn't have to do this—but the more subtle communication being that they would continue with this abusive practice as punishment for anyone who refused to settle.  In subsequent depositions when asked about time for planning purposes, Receiver's counsel has snapped, "we have seven hours and we're going to use it."  The associates conducting the depositions have clearly been instructed to use the entire seven hours allotted under the Rules for each deponent, regardless of the value of the information obtained.  This is an abuse of the discovery process which needlessly increases the cost of litigation and attorney fees, thus diminishing distributions to aggrieved investors.

the response in its Initial Disclosures, the Receiver responds to interrogatory no. 1 by providing

the same information contained in the Appendix in Support of Receiver's Third Amended

Complaint Against Former Stanford Employees (Doc. 1533).  While this does indeed provide the

total amount sought from each Defendant, it does not provide a "detailed calculation" of how the

Receiver arrived at that total.

      For example, with regard to Defendant James R. Alguire, the Receiver alleges that during

the years Alguire was employed with SGC he received $273,669 in SIBL CD commissions and

$223,119 in SIBL quarterly bonuses.  Presumably the commissions and quarterly bonuses were

not a single transfer but were a series of smaller transfers made over the period of his

employment.  Each specific transfer constituting the alleged $273,669 total is a separate transfer

under TUFTA.  The Defendant is entitled to discover the "detailed calculation" the Receiver

used to arrive at each of the specific damage figures.  As this Court stated in *Janvey v. Proskauer

Rose LLP*, "to prevail on a TUFTA claim, the creditor must 'offer evidence addressing the

elements of fraudulent transfer *as to each alleged transfer*.'" No. 3:13-cv-00477-N-BQ (N.D.

Tex. Jun. 19, 2017, ECF Doc 175) at p. 8., citing *Servicios Integrados Palazuelos S.A. de C.V. v.

Ryerson* 2015 U.S. Dist. LEXIS 182589 (W.D. Tex. 2015); *Corpus v. Arriaga*, 294 S.W.3d 629,

634 (Tex. App.—Houston [1st Dist.] 2009, no pet.)

      Presumably the Receiver did not pull the numbers necessary to arrive at its calculation of

damages from memory, but rather must have had documentary sources.  Interrogatory no. 2 asks

the Receiver to identify each document he used to substantiate and calculate his measure of

damages.  The Receiver was already required to have good-faith basis for alleging the damage

totals for each Defendant in the Appendix to the Third Amended Complaint and the Receiver

further verified those totals in his response to interrogatory no. 1.  It is the Receiver's burden to

identify each transfer for which it sues, and each Defendant is entitled to know the specific

source document the Receiver used to come up with each transfer which constitutes the total

amount of damages it seeks in this lawsuit.

In response to interrogatory no. 2, the Receiver treats the Defendants en masse and points

to tens of thousands of documents, most of which are not relevant, leaving each Defendant with

no knowledge of the specific transfers for which he has been sued and guessing how the

Receiver arrived at the number it claims as damages.

In response to interrogatories 1 and 2, each Defendant requests the Court to compel the

Receiver to provide *detailed* calculations for each of the categories of damages[9] sought from

each Defendant by providing the amount of each alleged transfer, the date of the alleged transfer,

any alleged subsequent transfer, and to identify by bates number for each transfer and subsequent

transfer the document(s) the Receiver used to substantiate the transfer.

INTERROGATORY NO. 3 AND RFP NO. 1

Interrogatory no. 3 requests the formula or criteria Stanford used to calculate any

Promissory Note Forgivable Loan (a/k/a "employee forgivable loan" or "EFL").  Request for

Production no. 1 asks for documents which show the formula or criteria or the actual calculation

of any EFL for each Defendant.  The EFL is, effectively, a sign-on bonus Stanford used to entice

financial advisors to leave their former employment and bring their clients with them.  In the

industry it is typically related to value of the "book of business" a financial advisor will bring to

the new employer.  This is relevant to the "reasonably equivalent value" issue in this lawsuit.

After making its litany of boilerplate objections to both the interrogatory and the request

---

[9] I.e., categories of damages refer to the "Loan(s), "SIBL CD Commissions," "SIBL Quarterly Bonuses," "PARS Payments," "Branch Managing Director Quarterly Compensation," "Severance Payments," "Total SIBL Account Payments," and "SIBL Account Payments Received in Excess of Investments" as indicated in the Receiver's Appendix in Support of Receiver's Third Amended Complaint Against Former Stanford Employees. (Doc. 1533).

for production, the Receiver states that "the burden of deriving or ascertaining the answer to this interrogatory no. 3 will be substantially the same for either party," and points to the tens of thousands of documents included in "documents bearing the Bates prefix of STAN INVSTR GENL, STAN BROKER, the Personnel Files, the Custodial Ringtail Documents, the Noncustodial Ringtail Documents, and the Warehouse Items."  This information is under the exclusive control of the Receiver and is integral to the claims and defenses in this case.

In response to interrogatory 3 and Request for Production no. 1, each Defendant requests the Court to compel the Receiver to provide the formula or criteria SFG used to calculate the EFL and to identify by bates number the document(s) the Receiver used to substantiate its answer to interrogatory no. 3.

INTERROGATORY NO. 4 AND RFP NO. 2

Interrogatory no. 4 requests that for each Defendant the Receiver state what amount of the total revenue generated by the Defendant was attributable to SIBL CDs and what amount was attributable to the sale of other products or services offered by SGC.

SGC was a "full service" brokerage firm in that it provided its clients with a large variety of financial services (including research and investment advice and fee based financial planning) and an array of financial products (including mutual funds, bonds, stocks, annuities, life insurance, hedge funds, direct investments in real estate and oil and gas, and of course, SIBL CDs).  Each SGC client was assigned to an individual financial advisor who was the main point of contact for the firm.  With a few exceptions each product was vetted by the SGC compliance department.  SGC recommended that each financial advisor follow the SGC "Standard Investment Model" or "SIM" which, depending on individual client circumstances, suggested that clients put 10-30% of their funds in SIBL CDs and the remainder of their funds in other

financial products offered by SGC.  In fact, each Defendant financial advisor sold products and, or services in addition to the SIBL CDs which are the subject of this lawsuit.

Information regarding the revenue generated by each Defendant through the sale of products and services other than SIBL CDs is relevant to the "reasonably equivalent value" issue in this lawsuit.

Similarly, request for production no. 2 requests documents to substantiate the Receiver's answer to interrogatory no. 4 and show how the revenue generated by each Defendant from the Defendant's book of business was allocated between SGC and the Defendant.

The Receiver lodges boilerplate objections to the interrogatory and adds that "the burden of deriving or ascertaining the answer to this interrogatory no. 4 will be substantially the same for either party."  He then points to the tens of thousands of documents referenced in response to Request for Production no. 2.  In response to Request no. 2 the Receiver points to "documents bearing the Bates prefix of STAN INVSTR GENL, STAN BROKER, KMVANTASSEL_, ESPYGMAG_, the Personnel Files, the Custodial Ringtail Documents, the Noncustodial Ringtail Documents, and the Warehouse Items."

The Receiver's responses to this (and other requests) amounts to a prohibited "data dump with an instruction to 'go fish.'"  *ReedHycalog UK, Ltd. v. United Diamond Drilling Servs.*, 2008 U.S. Dist. LEXIS 93177, at *9 (E.D. Tex. Oct. 3, 2008) citing *Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co,* 2006 U.S. Dist. LEXIS 36943 at *7, (D. Nev. 2006).  As the court further stated, "That this fishing is done electronically is of no consequence."  *Id*.

If the answer to an interrogatory can be fully ascertained by reviewing a document, Rule 33(d) gives the responding party the option to produce business records in lieu of setting forth a written response.  First, as a threshold matter, the business record must patently contain the

information requested in the interrogatory, second, the responding party must *specifically identify* the document or documents from which the answer can be derived, and third, the burden of deriving or ascertaining the answer must be the same for either party.  None of the Rule 33(d) requirements are satisfied by the Receiver's response.

The Receiver has not specified a document or set of documents which on its face answers the interrogatory.  Instead it provided a data dump of tens of thousands of irrelevant documents with an instruction to go fish.  The Federal Rules Advisory Committee has commented:

> The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by this subdivision. Such practices are an abuse of the option. . . .

Fed. R. Civ. P. 33, Notes of Advisory Committee, 1980 Amendment.  "Federal courts have strictly construed [Rule 33(d)(1)] to require a responding party to specifically direct the requesting party to the documents which contain the answer to the interrogatory."  *Ak-Chin Indian Cmty. v. United States*, 85 Fed. Cl. 397, 403 (2009) (*see also*, string citation of cases therein).  In *Ak-Chin* the United States responded to interrogatories stating that records maintained in the AIRR[10] document repository contain "relevant *boxes* of records from which the answer *may* be derived or ascertained are as set forth in the BISS[11] query results."  The Court stated, "it is well established under case law that a broad reference to a set of documents does not meet the specificity requirement of [Rule] 33(d)."  *Id*. (emphasis in original).

Further, just because the Receiver chose to sue more than 300 individuals in this lawsuit

---

[10] American Indian Records Repository ("AIRR") is a federal records center built to preserve and protect Indian trust records and to accommodate research of those records.  *Ak-Chin*, 85 Fed. Cl. 397, 398.

[11] Box Index Search System ("BISS") is software that captures information about the source, files, and documents in each box of documents maintained in the AIRR.  *Ak-Chin*, 85 Fed. Cl. 397, 398.

does not mean he is entitled to treat the Defendants en masse. The Receiver has the same burden of specificity to each *individual* Defendant in this lawsuit as if it had filed separate lawsuits against each individual.

In addition, Rule 33(d) requires that the burden of deriving or ascertaining the answer must be the same for either party. That is certainly not the case here as the burden on the Receiver is significantly less than on the Defendants. A typical example of where the burden would be the same for either party would be where documents identified were created and maintained by a third party, like a government agency, for which neither party is the custodian of records. In this case the mass of documents identified are *the Receiver's own records*, under his exclusive custody and control, for which he has spent millions of dollars to gather, examine and organize to his liking. Furthermore whatever specific documents from which a sufficient answer might be derived are documents which the Receiver should presumably be familiar with as part of making his claims in this lawsuit. The court in *In re Sulfuric Acid* found that the burden on the producing party to review the documents produced was "not as great [as the burden on the requesting party], since the [producing party was] more familiar with the documents than the [requesting party.]" 231 F.R.D. 351, 366 (N.D. Ill. 2005). Furthermore, as stated in *Ak-Chin,* "In addition, the [producing party] is not only more familiar with the documents that it stores at the AIRR, [it] is also much more familiar with the tools used to identify potentially responsive documents." As the court noted, the responding party created the database used to identify the documents and employs staff who have a working knowledge of the software associated with the documents and also contracts with outside firms which routinely perform searches on the store documents. *Ak-Chin Indian Cmty.* 85 Fed. Cl. at 403.

Virtually the identical circumstances exist with the Receiver, and clearly the burden of

ascertaining the answer from the records is not equal for either party.

With regard to the request for production, Rule 34(b)(2)(E) provides that a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.  The Receiver has done neither.  The Receiver is not entitled to vaguely reference some tens of thousands of documents in response to a request for production.  *See*, *Rothman v. Emory University*, 123 F.3d 446, 455 (7th Cir. 1997) (production of three large storage boxes, papers and numerous other unrelated, non-responsive materials was sanctionable);  *Wagner v. Dryvit Systems, Inc.* 208 F.R.D. 606, 610 (D. Neb. 2001) ("The court will not permit [responding party] to shift the burden of discovery by telling '[requesting party] that, if he wishes, he may hunt through all the documents and find the information for himself.'").

Neither has the Receiver produced documents as they are kept in the usual course of business.  The provision in the Rule that a party may produce records in the manner they are kept in the "usual course of business" was not adopted to ease the burden on the producing party, but rather "was intended primarily for the protection of the discovering party to prevent deliberate 'shifting of the materials from the sequence in which they were originally kept to somewhere else.'"  *Koninklijke Philips Electronics N.V. v. KXD Technology, Inc.,* 2007 U.S. Dist. LEXIS 20205, *9 (D. Nev. 2007) (quoting *In re Adelphia Communications Corp.* 338 B.R. 546, 553 (S.D.N.Y. 2005).

The documents referred to by the Receiver in its response are not kept in ordinary course of Stanford or SGC business and are certainly kept in a different order than when they were actually used in business.  "Once the documents are disassembled from their filing system at the [Stanford] office and reorganized to comport with the filing system [of the Receiver] they are no

longer kept 'in the usual course of business.'" *Ak-Chin Indian Cmty. v. United States*, 85 Fed. Cl. 397, 400 (2009).  In *In re Sulfuric Acid Antitrust Litigation* the court stated, "Storing documents may be a part of the usual course of business, but stored documents are not kept in the usual course of business within the meaning of the Rule."  331 F.R.D. 351, 363 (N.D. Ill., 2005).  The Court continued,

> A business has an obvious incentive to keep needed documents in a way that maximizes their usefulness in the day-to-day operations of the business.  That incentive … vanishes once documents not used with regularity are sent to a storage facility, for then it is no longer essential that they be kept with any degree of organization. … As to the documents in storage, they are no longer kept in the "usual course of *business*," they are kept in the usual course of "*storage*," and the option granted by the first clause of Rule 34(b) no longer exists.

*Id*.

Aside from being a pure "data dump" containing voluminous quantities of unresponsive material, the documents referenced in the Receiver's response are neither produced for inspection as kept in the ordinary course of business nor are they organized and labeled to correspond to the categories in the request.  The Defendants request that the Court compel the Receiver to fully and adequately respond interrogatory no. 4 by providing, for each Defendant a detailed calculation of the amount of the revenue generated by the Defendant that was attributable to SIBL CDs and what amount of revenue was attributable to the sale of other products or services, and likewise adequately respond to Request for Production no. 4 by specifically identifying documents used to substantiate the Receiver's answer to interrogatory no. 4 and to show how the revenue generated by each Defendant from the Defendant's book of business was allocated between SGC and the Defendant.

INTERROGATORY NO. 7

Interrogatory no. 7 requests information regarding the amounts that were withheld from each alleged transfer for taxes, Social Security, Medicare, etc.

After making its litany of boilerplate objections, the Receiver generally identifies some tens of thousands of documents and states that "the burden of deriving or ascertaining the answer to this interrogatory no. 7 will be substantially the same for either party."

Based on the same reasons and authority provided above, this response is woefully inadequate and does not represent a good faith effort to respond, and the Receiver should be compelled to provide this relevant information.

INTERROGATORY NOS. 8-9

Interrogatory Nos. 8 and 9 ask the Receiver to state in detail the facts which he asserts show that the Defendant had *actual notice* of Stanford's fraudulent intent in making the transfers at issue, (no. 8) or which would *cause a person of ordinary prudence to question* whether Stanford had fraudulent intent in making the alleged transfers (no. 9).  This information is, obviously, extremely relevant to the claims and defenses in this lawsuit.

The Receiver responds merely by pointing to the Third Amended complaint, the thousands of documents identified in request for production no. 12, and then states that "the burden of deriving or ascertaining the answer to this interrogatory no. 8 [and 9] will be substantially the same for either party."  Based on the same reasons and authority provided above, this response is inadequate and does not represent a good faith effort to respond.

As stated previously, each defendant the Receiver has sued is entitled to this information on an individual basis.  The Receiver must be compelled to provide a complete response, for each Defendant, the facts which in good-faith it asserts show that Defendant had *actual notice* of

Stanford's fraudulent intent in making the transfers at issue, (no. 8) or which would *cause a person of ordinary prudence to question* whether Stanford had fraudulent intent in making the alleged transfers.

REQUEST FOR PRODUCTION NOS. 3, 5, 6, 7, 11 AND 12

Request Nos. 3, 5, 6 and 7 seek documents which support specific allegations made by the Receiver in the Third Amended Complaint.  Requests 11 and 12 ask for documents which support the Receiver's assertion that each individual defendant had notice of the fraudulent intent of Stanford in making the alleged transfers to such Defendant.

The Receiver has sued each of these Defendants for their individual actions, even though they have been treated en masse in the Complaint. The Receiver was obligated to have a good faith basis for making each allegation against each Defendant.  Defendant's discovery requests are a legitimate attempt to learn the factual basis of these individual allegations, and the Receiver is obligated to provide this information for each individual Defendant.

Nevertheless each of the responses merely refers the Defendants to tens of thousands of documents, including documents bearing the Bates prefix of STAN INVSTR GENL, STAN BROKER, BASAGOITIA_, DEMARIA_, ROSSI_, KMVANTASSEL_, ESPYGMAG_, the Personnel Files, the Warehouse Items, the Custodial Ringtail Documents, the Noncustodial Ringtail Documents, the 2007 Investor Analysis Documents, the Bloomberg Documents and the Hewlett Documents, etc.

Based on the same reasons and authority provided above, this response is inadequate and does not represent a good faith effort to respond.  The Receiver is not entitled to "data dump" tens of thousands of documents it has arranged for its own purposes in the hope of obscuring the facts which form the basis of its claims.  This "data dump" response provides no insight into the

documentary basis, if any, for claims against the individual Defendant, and whether any individual Defendant was one of the Defendants who, for example, allegedly called on Stanford to use a "large reputable audit firm."  Furthermore, the Receiver's response that he "has or will" produce the documents does not provide any information as to what has been or has not been produced or when production will be complete.

The Receiver must be compelled to provide, for each Defendant, the documents requested in these six requests for production.

REQUEST FOR PRODUCTION NO. 8

Request no. 8 seeks documents "including notes and PowerPoint presentations" that Bernard Young used in meeting with financial advisors in 2009.  Bernard Young was SGC's chief compliance officer whose duties included ensuring that SIB CDs were an appropriate investment vehicle for the Defendant financial advisors to offer to investors.  He conducted several "roadshows," meeting with groups of financial advisors giving presentations which were purportedly intended to instill confidence in SIB CDs.

The request is limited to the year 2009, and on information and belief, the last presentation that Young gave to financial advisors was in February 2009.  Thus the request is very narrow and presumably would involve a limited number of responsive documents.  Nevertheless, after a series of unfounded objections, the Receiver points to the "Young Custodial Ringtail Files" and to twenty-four boxes of documents.

Again, for the reasons and authority cited above, the Receiver is not entitled to "data dump" tens of thousands of documents it has arranged for its own purposes in response to a simple request for production.  The Receiver must be compelled to produce the documents requested.

## RECEIVER'S RESPONSES IN DOCS. 2151, 2308, AND 2538

As stated in the introduction above, the thirty-seven requests for production and the Receiver's responses thereto in Documents 2151, 2308 and 2538 are substantially identical, and will be addressed as one.

### REQUEST FOR PRODUCTION NOS. 8-9

Request no. 8 seeks documents regarding "*SIBL* Account Payments" which are the subject of the Receiver's fraudulent transfer claims, and request no. 9 seeks documents regarding "subsequent transferees." The significance of this distinction is that virtually all of the Defendants were financial advisors employed by SGC and received the alleged fraudulent transfers directly from SGC in the form of compensation. However, the Receiver has chosen to bring claims on behalf of SIBL.[12] Thus the alleged fraudulent transfers at issue were from SIBL to SGC and the alleged transfer of funds from SGC to the Defendants was a *subsequent* transfer. This is a significant distinction and the Defendants are entitled to documents which trace the alleged transfers from SIBL to SGC, and any subsequent transfer from SGC to each individual Defendant. As this Court stated in *Janvey v. Proskauer Rose LLP*, "a creditor attempting to recover fraudulently transferred proceeds must trace those funds in the hands of the transferee." No. 3:13-cv-00477-N-BQ (N.D. Tex. Jun. 19, 2017, ECF Doc 175) at p. 11.

The Receiver's responses to Requests 8 and 9 each reference the same set of tens of thousands of documents, namely "STAN INVSTR GENL 000001-14329," "STAN BROKER 000001-0044335," the "Personnel Files," "Custodial Ringtail Documents, the "Noncustodial Ringtail Documents," and the "Warehouse Items." Each Defendant is entitled to a separate response identifying specific documents regarding each transfer and each alleged subsequent

---

[12] The Receiver chose to bring claims on behalf of SIBL instead of SGC in order to avoid arbitration agreements the Defendants have with SGC. *Janvey v. Alguire*, 847 F.3d 231, 240.

transfer to each Defendant.

REQUESTS FOR PRODUCTION 10, 11, 13, 14, 15, 16, 18 AND 19

These requests seek basic information relating to the case that is in the possession of the Receiver, including contracts (no. 10), pre-employment communications (no. 11), loans to the Defendant (no. 13), personal or family CD investments (no. 14), information regarding PARS payments made to the Defendants (no. 15), information about Defendant's accounts that are frozen and held by the Receiver (no. 16) and revenue generated for SGC by the Defendant (nos. 18 and 19).

The receiver gives essentially the identical "data dump" response to each of these requests by identifying tens of thousands of irrelevant documents among those labeled "STAN INVSTR GENL 000001-14329," "STAN BROKER 000001-0044335," the "Personnel Files," "Custodial Ringtail Documents, the "Noncustodial Ringtail Documents," and the "Warehouse Items."  Each Defendant is entitled to a separate response identifying specific documents regarding each category of documents described in the requests.

REQUEST NO. 17

Request no. 17 asks for e-mail communications sent and received using the Defendant's SGC e-mail address.  The Receiver does not provide the requested information, but merely refers its response to request no. 1 and the "Custodial Ringtail Documents" and the "Noncustodial Ringtail Documents."  This information is in the possession, custody and control of the Receiver and must be provided for each Defendant, individually.

REQUEST NO. 34

Request no. 34 asks for documents regarding the potential sale of SGC to Oppenheimer or other parties.  The Receiver objects for a number of reasons, including that the information is

not relevant to any party's claim or defense.  On information and belief Oppenheimer and other parties offered to purchase SGC operations after the Securities and Exchange Commission brought suit against Stanford in February 2009.  The fact that Oppenheimer was willing to purchase SGC before it was dismembered and the amount they were willing to pay are both extremely relevant to show that the Defendants provided value to SGC in exchange for any alleged fraudulent transfers.  Conversely and in comparison, the fact that SGC has no value as a dismembered entity without its financial advisors is extremely relevant to the value provided by the Defendant financial advisors.  This information contained in the requested documents are relevant to the core issues in this lawsuit and must be produced, and the Receiver's objections overruled.

**CONCLUSION**

Defendants request that the Court enter an order compelling the Receiver to provide, for each individual Defendant, full and complete responses to the discovery requests as stated herein within 14 days of entry of such order.


Respectfully Submitted,


**Stanley Law P.C.**


Michael J. Stanley ▪ TBN 19046600
mstanley@stanleylaw.com
W. Shawn Staples ▪ TBN 00788457
wsstaples@stanleylaw.com
230 Westcott St., Suite 120
Houston, Texas 77007
Tel: 713-980-4381
**Attorneys for Defendants**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2018 a true and correct copy of this document was filed via the Court's ECF system.  The notice of electronic filing generated by the ECF system constitutes service of the document on counsel who are registered users of the system.  Any other counsel of record will be served pursuant to FRCP 5(b) on this same date.

_____
W. Shawn Staples

**CERTIFICATE OF CONFERENCE**

I certify that on April 3, 2018 and on April 24, 2018 the undersigned sent detailed correspondence addressed to opposing counsel Brenden Day and David Arlington detailing the concerns which are the subject of this Motion to Compel.  Counsel duly responded, but no agreement could be reached.

_____
W. Shawn Staples

## APPENDIX OF RECEIVER'S OBJECTIONS TO DISCOVERY

| | RECEIVER'S OBJECTION | DOC 2552 RFP # | DOC 2552 RFA # | DOC 2552 INTEROG# | DOCS 2151/2308/2538 RFP # |
|---|---|---|---|---|---|
| 1 | Overbroad and Unduly Burdensome | 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13 | 7, 8, 9 | 1, 2, 3, 4, 5, 6, 7, 8, 9 | 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 17, 21, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33, 35, 36 |
| 2 | Purports to require the disclosure of information protected by the attorney-client privilege, the work product doctrine and/or the consulting-expert privilege | 1, 2, 3, 5, 6, 7, 10, 11, 12, 13 | | 1, 2, 3, 4, 5, 6, 7, 8, 9 | 1, 2, 6, 7, 8,9, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 23, 25, 26, 27, 28, 29, 30, 32, 33, 34 |
| 3 | Vague and Ambiguous | 2, 5, 8 | 7, 8, 9, 10, 11 | 1, 2, 3, 4, 7, | 1, 2, 3, 7, 9 13, 14, 15, 16, 18, 19, 20, 23, 34, 37 |
| 4 | Not Relevant and not proportional to Needs of the Case | 2 | 7, 8, 9, 10, 11 | 1, 2, 3, 7, | 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 31, 32, 33, 34, 35, 36, 37 |
| 5 | Discovery is not yet complete | 7, 11 | 1, 3, 4 | 8 | |
| 6 | Purports to require the disclosure of information not yet required to be disclosed under the Rules or the Scheduling Order | 1, 2, 3, 5, 6, 7, 10, 11, 12, 13 | | 1, 2, 3, 4, 5, 6, 7, 8, 9 | 1, 2, 12, 13, 14, 16, 18, 19, 20, 21, 23, 25, 26, 29, 32, 33, 34 |
| 7 | Seeks Information Not within the Possession Custody or Control of Receiver | 4, 6, 7, 8, 11 | 1, 3, 4 | 3, 8, | 2, 4, 5,6, 7, 8, 10, 11, 13, 14, 15, 18, 19, 20, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36 |
| 8 | Characterizes any document as a valid or enforceable "note" or "loan" or "agreement" | 1 | | 1, 2, 3, | 2, 10, 13, 15 |
| 9 | Purports to shift the burden of proving a lack of value or reasonably equivalent value to the Receiver | 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12 | 1, 2, 3, 4, 5, 6 9 | 1, 2, 3, 4, 5, 6, 7, 8, | 13, 15, 18 |
| 10 | Shifts burden of proving lack of good faith to the Receiver | | 9, 10, 11 | 8, 9 | 9, 25, 26, 27, 28, 29, 30 |
| 11 | Request is "misleading or incomplete" | 7, 8, 12 | 1, 5, 7 8, 9, 11 | 1, 2, 3, 7, 9 | 12, 13, 15, 16, 18, 19, 33, 34 |
| 12 | Contains discrete subparts and therefore comprises multiple interrogatories | | | 1, 2, 3, 4, 5, 6, 7, 9 | |