IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY, §
§
    Plaintiff, §
§
v. § Civil Action No. 3:09-CV-0724-N-BG
§
JAMES R. ALGUIRE, *et al.*, §
§
    Defendants. §

## **MEMORANDUM OPINION AND ORDER**

This Order addresses Defendants Jeffrey E. Adams ("Adams"), Timothy W. Baughman ("Baughman"), and Thomas G. Rudkin's ("Rudkin") Motion to Dismiss Receiver's Third Amended Complaint Against Former Stanford Employees (the "Employee Complaint") [2174]. For the reasons set forth below, the Court denies the motion in full.

### **I. ORIGINS OF THE RECEIVER'S ASSET RECOVERY ACTION**

This dispute arises out of the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control. As part of that litigation, this Court appointed a receiver (the "Receiver") and authorized him to commence any actions necessary to recover assets of the Receivership Estate. *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), in *SEC v. Stanford Int'l Bank Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). Pursuant to those powers, the Receiver filed this action to recover approximately $760 million in alleged Stanford International Bank, Ltd. ("SIB")

certificate of deposit ("CD") proceeds paid to certain Stanford investors and Stanford employees. First Am. Compl. Against Certain Stanford Investors ("the Investor Complaint") [128]; Investor Compl. App. [129]; Employee Compl. [1532]; Emp. Compl. App. [1533].

The Receiver alleges that Stanford made various transfers to Stanford employees to perpetuate and conceal its fraudulent Ponzi scheme. Employee Compl. at ¶ 34. Such transfers took the form of payments of loans, SIB CD Commissions, SIB Quarterly Bonuses, Performance Appreciation Rights Plan Payments, Branch Managing Director Quarterly Compensation, Severance Payments, and payments to Stanford Employees of purported CD interest and principal, redemptions, and/or loans from the Stanford Employees' SIB CD and/or other SIB accounts. Employee Compl. at ¶ 3. The Receiver alleges that Stanford made approximately $289 million in such transfers to the former Stanford employees named in the Employee Complaint. Employee Compl. at ¶ 68. Three former Stanford employees now move to dismiss the Employee Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II. THE RECEIVER STATES VALID CLAIMS

Defendants Adams, Baughman, and Rudkin (collectively, "Defendants") move to dismiss under Rule 12(b)(6), arguing that the Receiver fails to state fraudulent transfer and unjust enrichment claims.

### A. *The Rule 12(b)(6) Legal Standard*

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*,

42 F.3d 925, 931 (5th Cir. 1995). To survive dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy this standard, a plaintiff must plead factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint, however, need not contain "detailed factual allegations." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

In ruling on a 12(b)(6) motion, the court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). A court does not, however, accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

### B. The Receiver States a Fraudulent Transfer Claim

The Texas Uniform Fraudulent Transfer Act ("TUFTA") operates to void certain fraudulent "transfers," which the statute defines as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other

encumbrance." TEX. BUS. & COM. CODE ANN. § 24.002(12). TUFTA considers several types of transfers to be fraudulent. Under section 24.005(a)(1), a transfer is fraudulent where "the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Similarly, under section 24.005(a)(2), a transfer is fraudulent where the debtor did not receive reasonably equivalent value and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have belied that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

A transfer is also fraudulent where the debtor did not receive reasonably equivalent value and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." *Id.* at § 24.006(a).

In the Complaint, the Receiver alleges fraudulent transfer under section 24.005(a)(1) and alternatively under sections 24.005(a)(2) and 24.006(a). Because the Receiver states a claim under section 24.005(a)(1), the Court need not address these alternative grounds.

***1. The Receiver's TUFTA Claim Satisfies Rule 12(b)(6).*** — Defendants argue that the Complaint should be dismissed because the Receiver fails to allege any facts demonstrating that the severance payments Stanford paid to Defendants qualify as fraudulent transfers under TUFTA. Brief in Supp. at 7 [2175]. First, Defendants argue that the Employee Complaint contains only conclusory allegations that the severance payments were made with actual intent to hinder, delay, or defraud, or that they were made in furtherance

of any alleged Ponzi scheme. *Id* at 8. Second, Defendants allege that the Receiver makes no more than conclusory allegations that the debtor (Stanford) failed to receive reasonably equivalent value from Defendants. *Id*.

The Receiver pleads sufficient facts showing that Stanford transferred the severance payments with actual intend to defraud. In the Fifth Circuit, the Receiver may establish actual intent to defraud under section 24.005(a)(1) by showing that the Stanford enterprise operated as a Ponzi scheme. *Janvey v. Alguire*, 647 F.3d 585, 598 (5th Cir. 2011); *see also Janvey v. Brown*, 767 F.3d 430, 439 (5th Cir. 2014) ("In this circuit, proving that [a transferor] operated as a Ponzi scheme establishes the fraudulent intent behind the transfers it made.") (quotations and citations omitted).

In the Employee Complaint, the Receiver pleads that fraudulent "CD sales generated substantially all of the income" for Stanford and that the money generated from these sales funded the severance payments Stanford transferred to Defendants. Employee Compl. at ¶¶ 2–4. The Receiver alleges that "Stanford orchestrated and operated a wide-ranging Ponzi scheme" and that "transfers from the fraudulent Ponzi scheme . . . were transferred by Stanford to the Former Employees solely for the purpose of concealing and perpetuating the fraudulent scheme." *Id*. at ¶¶ 22, 34. The Receiver further alleges that Stanford made these transfers "with actual intent to hinder, delay, or defraud Stanford's creditors." Employee Compl. at ¶ 64. Accordingly, the Receiver alleged facts showing that Stanford transferred the severance payments to Defendants as part of a Ponzi scheme, satisfying the actual-intent-

to-defraud element necessary to state a claim under section 24.005(a)(1) of TUFTA. *Id*. at ¶¶ 22, 34, and 64.

Defendants next argue that the Receiver made only conclusory allegations that the debtor failed to receive reasonably equivalent value from Defendants. However, for Defendants facing a section 24.005(a)(1) "actual intent" to defraud claim, Defendants have the burden to show that they "took [the transfer] in good faith and for a reasonably equivalent value." TEX. BUS. & COM. CODE § 24.009(a). Defendants have the burden to show both objective good faith and the exchange of reasonably equivalent value. *See, e.g.*, *Hahn v. Love*, 321 S.W.3d 517, 526 (Tex. App. – Houston [1st Dist.] 2009, pet. denied) (citations omitted). The transferee's knowledge is irrelevant to determining whether transfers were made with an intent to defraud. *See, e.g.*, *Schonsky*, 247 F. App'x at 586. The Defendants do not establish that they qualify for TUFTA's affirmative defense. *Clark v. Amoco Prod. Inc.*, 794 F.2d 967, 970 (5th Cir. 1986) (nothing that a court should grand dismissal under Rule 12(b)(6) "if a successful affirmative defense appears clearly on the face of the pleadings") (citations omitted). The Receiver's fraudulent transfer claim survives Defendants' Rule 12(b)(6) challenge.

### C. *The Receiver Adequately Claims that He Is Entitled to Unjust Enrichment Disgorgement*

"Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits," regardless of whether the defendant engaged in any wrongdoing. *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. – Dallas 2009, pet. denied) (citations

omitted). "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Id*. (citation omitted). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citations omitted).

The Receiver pleads unjust enrichment as an equitable doctrine that entitles him to disgorgement pursuant to unspecified "applicable law." Employee Compl. at ¶ 65. Some Texas authorities hold that plaintiffs cannot state a claim for unjust enrichment as an independent cause of action under Texas law. *See, e.g.*, *Casstevens v. Smith*, 269 S.W.3d 222, 229 (Tex. App. – Texarkana 2008, pet. denied). However, other Texas courts – including the Supreme Court of Texas – have suggested otherwise. *See, e.g.*, *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 682–86 (Tex. 2000) (upholding summary judgment on some of plaintiff's unjust enrichment claims); *see also McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 828 (Tex. App. – Dallas 2010, pet. denied) (upholding trial court's grant of summary judgment on claims for both unjust enrichment and money had and received); *Texas Integrated*, 300 S.W.3d at 367, 380–81 (discussing plaintiff's "unjust enrichment claim" and "elements" comprising such a claim); *accord Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 773, 739 (N.D. Tex. 2008) (Godbey, J.) (noting that "it is unclear under Texas law whether unjust enrichment is an independent cause of action") (citations omitted).

Given this varied authority, the Receiver's failure to identify the specific cause of action that provides an unjust enrichment remedy is not fatal to his alternative claim. Texas courts have read claims for "unjust enrichment" as pleading an equitable common law claim for money had and received. *See, e.g.*, *London v. London*, 192 S.W.3d 6, 12–14 (Tex. App. – Houston [14th Dist.] 2005, pet. denied) (noting, in case where *pro se* plaintiff brought unjust enrichment claim, that an "action for money had and received is an equitable doctrine that courts apply to prevent unjust enrichment") (citation omitted). Indeed, the two claims are substantively identical. *See id.* ("[A claim for money had and received] is not premised on wrongdoing, but looks to the justice of the case and inquires whether the party has received money that rightfully belongs to another.") (citation omitted); *see also Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951) ("The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds the money which in equity and good conscience belongs to him." (quoting 58 C.J.S. MONEY RECEIVED § 4a, at 913) (internal quotations omitted)). Regardless of whether Texas law allows an "unjust enrichment" claim or requires pleading a claim for money had and received, the Receiver states claims under either "applicable law." Employee Compl. at ¶ 65.

***1. The Receiver's Unjust Enrichment Claim Satisfies Rule 12(b)(6).*** — Defendants argue that the Receiver fails to state a claim for unjust enrichment because the subject matter of the suit – the severance payments – were paid pursuant to an express separation agreement. Brief in Supp. at 8. Defendants next allege that the Receiver fails to allege any

facts showing fraud, duress, or the taking of undue advantage by Defendants. *Id*. The Court rejects both arguments.

Defendants' separation agreements do not bar the Receiver's claim for unjust enrichment. The Defendant cites to *Baxter v. PNC Bank Nat. Ass'n*, 541 Fed. Appx. 395, 397 (5th Cir. 2013) for the proposition that there can be no recovery based on unjust enrichment when the same subject matter is governed by an express contract. Brief in Supp. at 8. Under Texas law, generally speaking, "when a *valid*, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory . . . because parties should be bound by their express agreements." *Fortune Prod. Co.*, 52 S.W.3d at 684 ("When a *valid* agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement.") (emphasis added). Here, the Receiver alleges that Stanford's separation agreements with Defendants are "void and unenforceable," as Defendants "either performed no services in exchange for the [severance payments] or performed only services that were in furtherance of the Ponzi scheme . . . ." Employee Compl. at ¶¶ 35, 36. This Court rejected a similar argument that such contracts preclude a claim for unjust enrichment because fact issues existed as to the validity of the contracts. *See* Case No. 3:11-cv-00297-N-BG, Dkt. 62 at 2–3 (denying motion for summary judgment where defendant failed to demonstrate that employment contract precluded Receiver's unjust enrichment claim, stating "that genuine issues of material fact exist concerning Romero's involvement in promoting, protecting, and participating in the Stanford Ponzi scheme, which leaves multiple questions unanswered

relating to the validity of any such employment contract"). Accordingly, Defendants' separation agreements do not preclude Receiver's claim for unjust enrichment.

The Receiver likewise pleads sufficient facts showing that Defendants received the severance payments by fraud, duress, or undue advantage. Defendants allege that the Employee Complaint contains no facts showing any fraud, duress, or the taking of undue advantage by Defendants. Brief in Supp. at 8. Unjust enrichment, however, is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits, regardless of whether the defendant engaged in wrongdoing. *Texas Integrated*, 300 S.W.3d at 367 ("Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."). The Receiver alleges that proceeds from fraudulent CD sales funded the transfers Stanford made to Defendants and that such transfers "from the fraudulent Ponzi scheme . . . were paid by Stanford to the Former Stanford Employees solely for the purpose of concealing and perpetuating the fraudulent scheme." Employee Compl. at ¶¶ 2–4, 34. Thus, according to the Receiver, the Defendants' severance payments effectively constituted "little more than stolen money" properly belonging to the Receivership Estate. *Id.* at ¶ 3. These claims allege that Defendants obtained a benefit from the Stanford Ponzi scheme that equity dictates they cannot retain justly.

## CONCLUSION

In this action, the Receiver represents creditors defrauded by Stanford's scheme in their recovery efforts. The Receiver states claims under Rule 12(b)(6). Accordingly, the Court denies the Defendants' motion to dismiss.

Signed September 11, 2018.

_____
David C. Godbey
United States District Judge