IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:09-CV-0724-N-BG |
| VIRGIL HARRIS, *et al.*, | § § | |
| Defendant/Third Party Plaintiff | § § | |
| v. | § § | |
| MARY T. HARRIS, | § § | |
| Third Party Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Third Party Defendant Mary T. Harris's Motion to Dismiss Third Party Plaintiff Virgil Harris's Third Party Complaint [2191]. For the reasons set forth below, the Court grants the motion.

### I. ORIGINS OF THE RECEIVER'S ASSET RECOVERY ACTION

This dispute arises out of the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control. As part of that litigation, this Court appointed a receiver (the "Receiver") and authorized him to commence any actions necessary to recover assets of the Receivership Estate. *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), in *SEC v. Stanford Int'l Bank Ltd.*, Civil Action No. 3:09-CV-0298-N

MEMORANDUM OPINION AND ORDER – PAGE 1                                    (rev. 1/08)

(N.D. Tex. filed Feb. 17, 2009). Pursuant to those powers, the Receiver filed this action to recover approximately $760 million in alleged Stanford International Bank, Ltd. ("SIB") certificate of deposit ("CD") proceeds paid to certain Stanford investors and Stanford employees. First Am. Compl. Against Certain Stanford Investors (the "Investor Complaint") [128]; Investor Compl. App. [129]; Emp. Compl. (the "Employee Complaint") [1532]; Emp. Compl. App. [1533].

The Receiver alleges that Stanford made various transfers to Stanford employees to perpetuate and conceal its fraudulent Ponzi scheme. Emp. Compl. at ¶ 34. Such transfers took the form of payments of loans, SIB CD Commissions, SIB Quarterly Bonuses, Performance Appreciation Rights Plan Payments, Branch Managing Director Quarterly Compensation, Severance Payments, and payments to Stanford Employees of purported CD interest and principal, redemptions, and/or loans from the Stanford Employees' SIB CD and/or other SIB accounts. Emp. Compl. at ¶ 3. The Receiver alleges that Stanford made approximately $289 million in such transfers to the former Stanford employees named in the Employee Complaint. Emp. Compl. at ¶ 68.

Virgil Harris, a former Stanford employee named in the Employee Complaint, filed a Third Party Complaint (the "Complaint") against his ex-wife Mary T. Harris. Mr. Harris alleges that Ms. Harris is liable for contribution or indemnity because she received a portion of the fraudulently transferred funds in their Agreed Final Decree of Divorce. Compl. at ¶ 11–12. Ms. Harris now moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. THE COURT LACKS JURISDICTION OVER MR. HARRIS'S CLAIM

Third Party Defendant Ms. Harris moves to dismiss under Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction over Mr. Harris's contribution and indemnity claim.

### A. The Rule 12(b)(1) Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "When a party files a Rule 12(b)(1) motion in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id*. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id*. "The court's dismissal of a plaintiff's case because the plaintiff lacks subject jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

### B. The Court Lacks Subject Matter Jurisdiction

The Court does not have original jurisdiction over Mr. Harris's claim for contribution or indemnity. Federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Mr.

Harris asserts that the Court has jurisdiction over his claim pursuant to: (1) Section 22(a) of the Securities Act (15 U.S.C. § 77v(a)); (2) Section 27 of the Exchange Act (15 U.S.C. § 78aa); and (3) Chapter 49, Title 28 of Judiciary and Judicial Procedure (28 U.S.C. § 754). Compl. at ¶ 3, . None of these statutes conveys jurisdiction over this dispute.

Section 22(a) of the Securities Act and Section 27 of the Exchange Act provide for jurisdiction in federal courts "of all suits in equity and actions at law brought to enforce any liability or duty created by" the respective Acts. 15 U.S.C. § 77v(a); 15 U.S.C. § 78aa(a). As the party asserting jurisdiction, Mr. Harris has the burden of establishing that this Court has jurisdiction. *Ramming*, 281 F.3d at 161. Mr. Harris, however, offers no facts showing that this Court has jurisdiction under either statute. Mr. Harris merely asserts a claim for contribution or indemnity, citing only to the Texas Civil Practice and Remedies Code. Compl. at ¶ 15; Resp. at 8. Accordingly, Mr. Harris fails to allege facts establishing jurisdiction under either of these statutes.

Mr. Harris further alleges that the Court has jurisdiction under 28 U.S.C. § 754 because a "receiver appointed in any civil action . . . shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof." 28 U.S.C. § 754. Section 754 grants jurisdiction to a district court to hear suits brought by court-appointed receivers. And while this Court previously held that section 754 extends its jurisdictional grant to claims brought by a creditor's committee on behalf of a receiver, such holding does not apply here. *Stanford Inv'rs Comm. v. Am. Lebanese Syrian Associated*

*Charities, Inc.*, 3:11-CV-0303-N, 2015 WL 13739835, at *3 (N.D. Tex. July 22, 2015). Section 754 therefore does not extend jurisdiction over Mr. Harris's claim.

Accordingly, the Court does not have original jurisdiction over Mr. Harris's claim for contribution or indemnity.

### B. The Court Declines to Exercise Supplemental Jurisdiction

The Court also declines to exercise supplemental jurisdiction over Mr. Harris's claim for contribution or indemnity because it would require the Court to embroil itself in family law matters that are more appropriate for state court.

Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Welch v. Jannereth*, 496 F. App'x 411, 413 (5th Cir. 2012). These statutory factors guide the district court, and no single factor is dispositive. *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 601–02 (5th Cir. 2009). In addition to these statutory factors, the district court considers "judicial economy, convenience, fairness, and comity." *Smith v. Amedisys Inc.*, 298 F.3d 434, 477 (5th Cir. 2002). Federal courts, however, traditionally abstain from cases involving domestic relations because of the strong state interest in handling such issues. *Chandler v. Commander, Army Fin. & Accounting Ctr.*, 863 F.2d 13, 15 (5th Cir. 1989).

***1. Mr. Harris's Claim Involves Family Law Issues*** — Mr. Harris's claim implicates a bevy of family law issues, including allocation of community property and interpretation and enforcement of a divorce decree. Mr. Harris alleges that Ms. Harris is liable for contribution or indemnity because she possesses a portion of fraudulently transferred funds. Mr. Harris specifically avers that in their final divorce decree Ms. Harris "was awarded fifty percent (50%) of the community property portion of the Performance Appreciation Rights," which Mr. Harris originally received from Stanford during "his tenure as an employee . . . ." Compl. at ¶¶ 5, 12. Mr. Harris essentially asks the Court to exercise jurisdiction over his claim so that in the event the Receiver prevails, Ms. Harris will be required to hand over her share of the already allocated community property. *See* Resp. at 8–9. Such an action, however, would effectively require the Court to upset the divorce decree by requiring disgorgement of already allocated community property.

The former spouses also contest the interpretation and application of the divorce decree. Mr. Harris, for example, cites multiple portions of the divorce decree, alleging that the "clear intent of the divorce decree is for the former spouses to receive both the benefits and the costs of their portions of the PARS payments" and that Ms. Harris misinterprets and incorrectly relies on "the indemnification provision of the divorce decree." Resp. at 12. Conversely, Ms. Harris argues that "[r]egardless of [Mr. Harris's] sentiments, he agreed . . . to hold [Ms. Harris] harmless" and his interpretation of the divorce decree "would completely vitiate the Indemnification Provision rendering it toothless." Reply at 5–6. Thus, exercising jurisdiction over Mr. Harris's claim would require the Court to interpret and

enforce provisions of the state court divorce decree — a task more appropriately left to the state court, which expressly "reserve[d] the right to make orders necessary to clarify and enforce this Decree." Compl. Ex. A at 17.

Accordingly, because of "the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts," the Court finds that there are exceptional circumstances for declining to exercise supplemental jurisdiction over Mr. Harris's claim for contribution or indemnity. *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978); *see also DuBroff v. DuBroff*, 833 F.2d 557, 561–62 (5th Cir. 1987) ("[T]here is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law. 'Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in domestic matters.'") (citing *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986)).

## CONCLUSION

In this action, Mr. Harris filed a third party complaint against his former spouse Ms. Harris. The Court does not have original jurisdiction over Mr. Harris's claim, and it declines to exercise supplemental jurisdiction for the reasons discussed above. Because the Court finds that it does not have jurisdiction, the Court grants Ms. Harris's motion to dismiss without prejudice and does not reach the parties' additional arguments.

Signed September 13, 2018.

_____
David C. Godbey
United States District Judge